BRUCE A. WAGMAN (CSB No. 159987)
BWagman@rshc-law.com
Riley Safer Holmes & Cancila LLP
456 Montgomery Street
Sixteenth Floor
San Francisco, CA  94104
Telephone:   (415) 275-8540
Facsimile:   (415) 275-8551

*Attorneys for Proposed Defendant-Intervenors*
*The Humane Society of the United States and*
*Animal Legal Defense Fund*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL FUR TRADE FEDERATION,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, *et al.*<br><br>                    Defendants. | Case No. 3:20-cv-00242-RS<br><br>**NOTICE OF MOTION, MOTION, AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**<br><br>The Honorable Richard Seeborg<br>Date: April 16, 2020<br>Courtroom 3 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD,**

**PLEASE TAKE NOTICE** that on April 16, 2020 or as soon thereafter as

the matter may be heard before the Honorable Richard Seeborg in Courtroom 3,

San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco CA 94102,

Proposed Defendant-Intervenors the Humane Society of the United States and

Animal Legal Defense Fund (collectively "Proposed Defendant-Intervenors") will

and hereby do move this Court to grant their intervention in the above-titled action

under Rule 24 of the Federal Rules of Civil Procedure.

Proposed Defendant-Intervenors are nonprofit organizations that support and

advocated for the law challenged by Plaintiff and are dedicated to preventing animal cruelty and the sale of products created as a result of animal cruelty, such as the fur products at issue in this matter. Proposed Defendant-Intervenors seek to intervene as Defendant-Intervenors and to submit the Proposed Answer (Ex. 1).

Proposed Defendant-Intervenors are entitled to intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure because (1) their application to intervene is timely, (2) they have interests relating to the subject matter of this action, (3) they are so situated that the disposition of this action may, as a practical matter, impede their ability to protect their interests, and (4) their interests are not adequately represented by the Defendants.

Alternatively, Proposed Defendant-Intervenors are entitled to permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure because (1) this Court has an independent ground for jurisdiction over Proposed Defendant-Intervenors' defenses based on the federal questions raised in the Plaintiff's complaint, (2) this application to intervene is timely, (3) the defenses Proposed Defendant-Intervenors seek to assert have questions of law or fact in common with the present action, and (4) allowing Proposed Defendant-Intervenors to intervene at this early stage of proceedings will not unduly delay or prejudice this Court's adjudication of the original parties' rights.

Counsel for Proposed-Defendant Intervenors have conferred with counsel for the current parties to the litigation. Defendants City and County of San Francisco and Dr. Grant Colfax do not oppose this motion. Plaintiff International Fur Trade Federation opposes this motion. In order to ensure that Proposed Defendant-Intervenors do not in any way disrupt the litigation, if intervention is granted, Intervenors will not delay or expand the scope of proceedings. To that end, if the Court grants this motion in time, Proposed Defendant-Intervenors are prepared to adhere to the same deadline as Defendants and file any motions to dismiss or motions for judgment on the pleadings by March 23, 2020.

1       This Motion is based on this Notice of Motion, Motion, and Memorandum of

2   Points and Authorities, the supporting Declarations of PJ Smith and Carter Dillard,

3   all pleadings, records and papers filed in this action, such matters as the Court may

4   judicially notice, and such further evidence or argument as may be presented at or

5   before the hearing of this motion.

6       **POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

7   **I.    INTRODUCTION**

8       Pursuant to Federal Rule of Civil Procedure 24, Proposed Defendant-

9   Intervenors respectfully move for leave to intervene in the above-captioned matter,

10  a constitutional challenge to a San Francisco animal protection ordinance which, if

11  overturned, will cause certain harm to the interests of HSUS, ALDF, and both

12  organizations' members in promoting the humane treatment of animals and

13  preventing animal cruelty.

14      Proposed Defendant-Intervenors satisfy the standards for both intervention as

15  a matter of right and permissive intervention. Intervention is appropriate because

16  this motion is timely filed and Proposed Defendant-Intervenors have significant

17  interests in the outcome of this case that will only be adequately protected if

18  intervention is granted. Moreover, Proposed Defendant-Intervenors can provide

19  unique legal and factual perspectives on the matter - as they have done as

20  intervenors in numerous similar matters, including in cases before this Court.[1]

---

21  [1] For example, Proposed Defendant-Intervenor HSUS has previously intervened in

22  many other federal and state cases that challenged animal protection laws in
    California on constitutional grounds, in cooperation with and without duplicating

23  the State and/or city defendants' efforts. *See, e.g.*, *National Meat Ass'n v. Harris, et al.*, No. 1:08-cv-01963 (E.D. Cal. 2012) *Cramer v. Brown, et al.*, No. 2:12-cv-

24  03130 (C.D. Cal. 2012); *Asian Am. Rights Comm. v. Brown et al.*, No. 12-517723
    (Cal. Sup. Ct., San Francisco County 2012); *Nat'l Audubon Soc'y, et al. v. Gray*

25  *Davis, et al.*, No. 3:98-cv-04610 (N.D. Cal. 2002); *Mary Mendibourne, et al. v. John McCamman, et al.*, No. 46349 (Cal. Sup. Ct. Lassen County 2009);

26  *Chinatown Neighborhood Assoc. et al., v. Edmund Brown, et al.*, No. 4:12-cv-
    03759 (N.D. Cal. 2012); *State of Missouri, et al. v. Kamala D. Harris, et al.*, No.

27  2:14-cv-00341 (E.D. Cal. 2016); ); *Ivory Education Inst. v. State of California*, No.
    BC 602584 (Cal. Sup. Ct., Los Angeles County 2016); *N. American Meat Institute*

28  *v. Becerra, et al.*, No. 2:19-cv-08569 (C.D. Cal. 2019) (joined by ALDF); *Nat'l Pork Producers Council* v. *Ross*, No. 19-cv-02324 (S.D. Cal. 2020) (same).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**II.   BACKGROUND**

   **A.   Passage of San Francisco Ordinance 55-18.**

   On March 20, 2018, the San Francisco Board of Supervisors voted to enact Ordinance 55-18 (the "Ordinance"), an "Ordinance amending the Health Code to ban the sale and manufacture in San Francisco of animal fur products." The Ordinance was codified as Article 1D of the San Francisco Health Code. The Ordinance prohibits the sale and manufacture of "fur products," defined as "any article of clothing or covering for any part of the body, or any fashion accessory….that is made in whole or in part of fur" in the City of San Francisco. 1D S.F. Health Code §§ 1D.3, 1D.4. The Ordinance became effective on January 1, 2019, but included a provision allowing retailers to sell off any remaining inventory of fur products through December 31, 2019. *Id*., § 1D.4(a)-(b), (e).

   The express purpose of the Ordinance is to "promote community awareness of animal welfare, bolster the City's stance against animal cruelty, and, in turn, foster a more humane environment in San Francisco." *Id.* § 1D.2(i). Upon passing the Ordinance, San Francisco became the third California city to prohibit the sale of fur products, following West Hollywood and Berkeley. West Hollywood Muni. Code § 9.51; Berkeley Muni. Code § 9.22. Los Angeles became the fourth when it enacted a fur sales ban ordinance in February 2019. L.A. Muni. Code § 53.75.

   **B. The Passage of AB 44.**

   On October 12, 2019, California Governor Gavin Newsom signed Assembly Bill 44 ("AB 44") into law, making California the first state in the country to prohibit the sale and manufacture of animal fur products. Like the Ordinance, AB 44 prohibits the sale and manufacture of "fur products" in the State of California. Cal. Fish and Game Code § 2023(b). AB 44 defines "fur product" identically to the Ordinance, except that it also includes "toys," "trinkets," and "home accessories and décor." *Compare id.* § 2023(a)(2)(A) *to* 1D S.F. Health Code § 1D.3. AB 44

NOTICE OF MOTION, MOTION, AND POINTS AND AUTHORITIES ISO MOTION FOR LEAVE TO INTERVENE

1    does not become effective until January 1, 2023; until that time, it remains legal to

2    sell and manufacture fur products in California except in jurisdictions, like San

3    Francisco, where such activities are unlawful under local ordinance.

4    ### C. **The Interests of the Proposed Defendant-Intervenors.**

5    Proposed Defendant-Intervenor HSUS is a national nonprofit animal

6    protection organization headquartered in Washington, D.C., with millions of

7    members and supporters, including over one million members and supporters in

8    California and many in the City and County of San Francisco. Declaration of PJ

9    Smith ("Smith Decl.") ¶ 2. HSUS actively advocates against the inhumane

10   treatment of animals farmed or trapped for their fur, *id.* ¶ 3, and HSUS' Fur-Free

11   Campaign works to inform its members and the public about the cruelty of the fur

12   industry and promote humane alternatives to fur garments. *Id*. To advance these

13   goals, HSUS devotes substantial organizational resources toward advocating for

14   federal, state, and local laws prohibiting or restricting the sale of fur products in

15   California and in other jurisdictions that are significant markets for fur products

16   across the nation. *Id*. ¶¶ 3,4. HSUS was a supporter of the Ordinance and advocated

17   for its passage. *Id*. ¶ 6. HSUS' support for the Ordinance in San Francisco aligned

18   with its involvement advocating for fur sales bans in other California municipalities

19   like West Hollywood and Los Angeles. *Id*. ¶¶ 5, 7. Most recently, HSUS was a

20   registered sponsor and chief advocate of AB 44, California's 2019 state-level fur

21   sales prohibition, devoting substantial organizational resources to secure its

22   passage. *Id*. ¶ 8. HSUS continues to sponsor, support, and advocate for new state

23   and municipal fur sales prohibitions in other significant markets for fur outside of

24   California. *Id*. ¶ 9.

25   Proposed Defendant-Intervenor ALDF is a national nonprofit animal

26   protection organization founded in 1979 that uses education, public outreach,

27   investigations, legislation, and litigation to protect the lives and advance the

28   interests of animals, including those raised for the use of their fur. Declaration of

Carter Dillard ("Dillard Decl.") ¶ 2. Headquartered in Cotati, California, ALDF is supported by hundreds of dedicated volunteer attorneys and more than 200,000 members and supporters nationwide, including approximately 35,000 in California. *Id.* ALDF files high-impact lawsuits to protect animals from harm, provides free legal assistance and training to prosecutors in their fight against animal cruelty, supports animal protection legislation, and provides resources and opportunities to law students and professionals to advance the field of animal law. *Id.* For the past decade, ALDF has been actively involved in matters pertaining to the protection of animals raised and killed for their fur, working to educate the public about the cruelty of the fur industry and advocating for laws prohibiting the sale of fur products. *Id.* ¶ 3. ALDF has directed substantial time and organizational resources toward achieving these goals in California. *Id.* ¶¶ 3, 8. ALDF expended organizational funds lobbying the San Francisco Board of Supervisors in support of the Ordinance. *Id.* ¶¶ 5-6, 8. ALDF was also instrumental to the passage of West Hollywood's fur ordinance in 2011 and California's AB 44 in 2019. *Id.* ¶¶ 7-8.

Each Proposed Defendant-Intervenor expended significant time and resources supporting the Ordinance by lobbying for it, providing support to other organizations advocating for it, educating members and supporters about it, and publicizing it upon passage. Smith Decl. ¶ 6, Dillard Decl. ¶¶ 5-6. The relief requested by Plaintiff – a declaratory judgment that the Ordinance violates the Commerce Clause and an injunction barring its enforcement – would harm Proposed Defendant-Intervenors' interest in the Ordinance's enforcement; render their efforts to support the Ordinance wasted and irrecoverably lost; and deprive them of the opportunity to use the Ordinance as a "springboard" to promote protections for animals used for their fur in other jurisdictions. Smith Decl. ¶¶ 10-11; Dillard Decl. ¶ 9.

Moreover, invalidation of the Ordinance would undermine both organizations' efforts to support state and local laws prohibiting fur sales in other

jurisdictions. Over the past decade, Proposed Defendant-Intervenors have devoted tremendous organizational resources advocating for fur sales legislation, beginning with West Hollywood's ordinance in 2011 and culminating in California's AB 44 (for which HSUS was a registered sponsor) in 2019. Smith Decl. ¶¶ 4-9; Dillard Decl. ¶¶ 3-9. Though each of these laws have some differences owing to the specific policy choices each jurisdiction has deemed appropriate for its local market, these other state and local laws operate substantially similarly to the Ordinance, such that a judgment declaring the Ordinance unconstitutional would directly and gravely implicate their own constitutionality and enforceability. An adverse opinion in this case would therefore not only harm Proposed Defendant-Intervenors' interests in the Ordinance itself, but an entire constellation of state and local fur sales prohibitions supported or sponsored by HSUS and ALDF at great organizational expense.

Proposed Defendant-Intervenors' specific interests in supporting the Ordinance and other fur sales laws are grounded in each organization's mission to combat animal cruelty, including cruelty inflicted on animals killed for their fur. Invalidation of the Ordinance would, in addition to harming Proposed Defendant-Intervenors' interests in the Ordinance and other specific fur sales laws, cause harm to the missions of both organizations. Smith Decl. ¶¶ 10-11; Dillard Decl. ¶ 9. Proposed Defendant-Intervenors thus have direct and substantial interests in the outcome of this litigation.

## III.   ARGUMENT

### A.   Proposed Defendant-Intervenors Are Entitled to Intervene As a Matter of Right.

Proposed Defendant-Intervenors meet the standard for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). In the Ninth Circuit, intervention as of right is warranted if four conditions are met:

(1) [T]he motion must be timely; (2) the applicant must

claim a "significantly protectable" interest relating to the
property or transaction which is the subject of the action;
(3) the applicant must be so situated that the disposition of
the action may as a practical matter impair or impede its
ability to protect that interest; and (4) the applicant's
interest must be inadequately represented by the parties to
the action.

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 440-41 (9th Cir. 2006)

(quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on*

*other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir.

2011)). The requirements of Rule 24 are to be "construed broadly in favor of

intervention." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

### 1.     The Motion to Intervene is Timely.

In determining whether a motion for intervention is timely, courts in the

Ninth Circuit consider three factors: "(1) the stage of the proceeding at which an

applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for

and length of the delay." *Orange County v. Air California*, 799 F.2d 535, 537 (9th

Cir. 1986) (quotation omitted). "Mere lapse of time alone is not determinative,"

rather, this "timeliness" factor serves to prevent intervention at prejudicially late

stages in the litigation. *Id.*, at 537-38 (denying intervention five years into litigation,

after settlement had been reached); *see also Alaniz v. Tillie Lewis Foods*, 572 F.2d

657, 658-59 (9th Cir. 1978) (denying intervention after consent decree resolving

claims had been approved).

Because this Motion is filed at the earliest stage of the litigation, generates no

prejudice to other parties, and was not unduly delayed, Proposed Defendant-

Intervenors meet this standard. First, no party would be prejudiced by intervention

because this Motion is filed at the earliest stage of the litigation possible, before the

State Defendants have filed a responsive pleading, before any substantive decisions

have been rendered, and before any scheduling orders have been issued or hearing

dates set. Second, upon learning of the lawsuit, Proposed Defendant-Intervenors

acted expeditiously to secure counsel and conduct the necessary fact-gathering to

1    support a motion to intervene. Dillard Decl. ¶ 11. Finally, to further insulate against

2    the possibility of prejudice to any party, and to conserve the Court's and the parties'

3    resources, ALDF and HSUS conferred and agreed to joint representation in order to

4    avoid multiple intervention motions.

5    **2.    Proposed Defendant-Intervenors Have a Significantly**
     **Protectable Interest in Defending the Ordinance.**

6         Proposed Defendant-Intervenors meet the second intervention factor because

7    they have a "significantly protectable interest relating to the . . . transaction which is

8    the subject of the action." *California ex rel. Lockyer*, 450 F.3d at 440-41. The Ninth

9    Circuit applies this factor liberally, in order to serve the practical purpose of

10   "disposing of lawsuits by involving as many apparently concerned persons as is

11   compatible with efficiency and due process." *S. Cal. Edison Co. v. Lynch*, 307 F.3d

12   794, 803 (9th Cir. 2002) (quoting *United States v. City of Los Angeles*, 288 F.3d

13   391, 398 (9th Cir. 2002)). Accordingly, proposed intervenors need not demonstrate

14   a "specific legal or equitable interest" in the suit. *City of Los Angeles*, 288 F.3d at

15   398. Rather, they need only show "an interest that is protected under some law" and

16   "a relationship between [the] legally protected interest in the plaintiff's claims." *Id.*

17   (quotation omitted). These requirements are met if proposed intervenors make the

18   simple showing that "resolution of the plaintiff's claims actually will affect the

19   applicant." *Id.* (quotation omitted).

20        Proposed Defendant-Intervenors have shown a "significant protectable

21   interest" in upholding the Ordinance because both HSUS and ALDF actively

22   worked to support it. *See* Smith Decl. ¶ 6; Dillard Decl. ¶¶ 5-6, 8. The Ninth Circuit

23   has consistently held that proponents and active supporters of legislative measures

24   have a "significant protectable interest" to support intervention in defense of those

25   measures. Specifically, a "public interest group [i]s entitled as a matter of right to

26   intervene in an action challenging the legality of a measure which it has supported."

27   *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); *see also Prete*

28   *v. Bradbury*, 438 F.3d 949, 955 (9th Cir. 2006); *Wash. State Bldg. & Const. Trades*

1    *Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982); *Vivid*

2    *Entertainment, LLC v. Fielding*, 2013 WL 1628704, at *4 (C.D. Cal. 2013).

3         Under established Ninth Circuit precedent, Proposed Defendant-Intervenors

4    should be granted intervention because they are "public interest group[s]" seeking

5    to defend "the legality of a measure which [they] had supported," and "a cause

6    which [they] had championed." *Sagebrush Rebellion*, 713 F.2d at 526-27 (groups

7    that "participated actively in the administrative process" leading to the challenged

8    regulatory action were entitled to intervene as of right). HSUS issued a public

9    statement of support for the Ordinance, met with its chief sponsor on the San

10   Francisco Board of Supervisors to encourage its passage, and used its media

11   presence to publicize and educate members about its enactment. Smith Decl. ¶ 6.

12   Likewise, ALDF actively supported the passage of the Ordinance, expended

13   organizational funds to hire a lobbying firm to advocate for its passage before the

14   San Francisco Board of Supervisors, and devoted time and resources educating

15   members and supporters following its enactment. Dillard Decl. ¶¶ 5-6, 8. Because

16   Proposed Defendant-Intervenors were active supporters of the Ordinance both

17   before and after its enactment, they have a "significant protectable interest"

18   sufficient to support intervention as of right. *Sagebrush Rebellion*, 713 F.2d at 526-

19   27.

20        In addition to their protectable interest in the defense of the Ordinance itself,

21   Proposed Defendant-Intervenors have an even stronger interest in the defense of the

22   other state and local fur sales laws in California and nationwide whose legality will

23   be directly implicated by the outcome of this suit because they operate substantially

24   similarly to the Ordinance and contain similar statutory language. HSUS served as

25   an architect, registered sponsor, and chief proponent of AB 44, California's state-

26   level prohibition on fur sales. HSUS invested substantial organizational resources

27   by assisting in the drafting of the legislation, lobbying for its passage, providing

28   expert testimony before legislative committees, mobilizing support for the bill

among members and supporters, and publicizing its passage in October 2019. Smith
Decl. ¶ 8. ALDF engaged in a concerted campaign in support of AB 44 as well,
drafting a letter of support to encourage its adoption and mobilizing California
members and supporters to advocate for its passage through media updates, action
alerts, and in-person at its first-ever California Humane Lobbying Day. Dillard
Decl. ¶¶ 7-8. Proposed Defendant-Intervenors were similarly engaged as active
supporters of fur ban ordinances in West Hollywood and Los Angeles. Smith Decl.
¶¶ 5,7; Dillard Decl. ¶ 4. And Proposed Defendant-Intervenors continue to advance
their organizational missions by promoting fur sales ordinances in other
jurisdictions across the country. Smith Decl. ¶ 9.

There is no question that Proposed Defendant-Intervenors were, and remain,
"main supporters and chief proponents" of these fur sales laws, particularly AB 44.
*Prete*, 438 F.3d at 955. Accordingly, Proposed Defendant-Intervenors have a
"significant protectable interest" sufficient to support intervention. *Id.*; *see also*
*Wash. State Bldg. & Const. Trades Council,* 684 F.2d at 630.

### 3.   Proposed Defendant-Intervenors' Interests Will Be Impaired If Plaintiff's Requested Remedy is Granted.

Proposed Defendant-Intervenors satisfy the third intervention factor because
"disposition of the action may as a practical matter impair or impede" their "ability
to protect [their] interest" in both the Ordinance and other California state and local
fur sales laws. Fed. R. Civ. P. 24(a). Rule 24(a) does not require that the applicant's
interest be *actually* or legally impaired, only that the applicant "be substantially
affected in a practical sense." *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d
810, 822 (9th Cir. 2001) (quotation omitted). Here, Plaintiff's lawsuit threatens far-
reaching effects that could undo the results of Proposed Defendant-Intervenors'
extensive efforts advocating for the passage of the Ordinance, California AB 44,
and other fur sales laws across the country.

Support of the Ordinance is a key component of Proposed Defendant-

1   Intervenors' broader campaign to educate the public about the cruelty of the fur

2   industry, advocate for laws prohibiting the sale of fur products, and promote

3   humane alternatives to animal fur. Smith Decl. ¶¶ 3-4, 6; Dillard Decl. ¶¶ 3, 9.

4   Protecting animals used for their fur is central to the missions of both organizations,

5   and in furtherance of these missions the Proposed Defendant-Intervenors spent

6   significant time and resources to help secure passage of the Ordinance and

7   substantially similar fur sales laws like AB 44. Smith Decl. ¶¶ 3-9; Dillard Decl. ¶¶

8   5-8. If the Court enjoins the Ordinance or issues a judgment declaring it

9   unconstitutional, Proposed Defendant-Intervenors' efforts to support the Ordinance

10  would be nullified. *See* Smith Decl. ¶ 10; Dillard Decl. ¶ 9; *see also Sagebrush*

11  *Rebellion*, 713 F.2d at 528 ("no serious dispute" that applicant's interest might be

12  impaired if proponents of measure were not allowed to intervene in challenge to

13  that measure); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398

14  (9th Cir. 1995) (finding impairment where action could lead to reversal of

15  administrative decision actively supported by proposed intervenors).

16        Judgment in Plaintiff's favor in this case could also jeopardize Proposed

17  Defendant-Intervenors' efforts to pass and preserve fur sales laws (such as AB 44)

18  in other jurisdictions, undercutting each organization's institutional campaigns and

19  impairing Proposed Defendant-Intervenors' protectable interest in the preservation

20  of those laws. Smith Decl. ¶¶ 10-11; Dillard Decl. ¶ 9. For example, a finding that

21  the Ordinance imposes a substantial burden on interstate commerce, or that the

22  Ordinance advances no legitimate local purpose, could impact the implementation

23  and enforcement of similarly drafted fur sales prohibitions at the municipal and

24  state level. *See, e.g.*, Cal. Fish and Game Code § 2023; West Hollywood Municipal

25  Code § 9.51; Berkeley Muni. Code § 9.22; L.A. Muni. Code § 53.75. Such an

26  outcome could also thwart Defendant-Intervenors' efforts to support adoption of

27  proposed fur sales prohibitions in other important markets, including ALDF's

28  efforts in New York City, *see* City of N.Y. Int. No. 1476-2019, and HSUS' efforts

in Rhode Island, Minneapolis, and elsewhere. Smith Decl. ¶ 9. In addition to harming Defendant-Intervenors' interests in passing and preserving these laws, this outcome would render wasted the substantial organizational resources Defendant-Intervenor has invested in them and necessitate the redirection of funds and staff time to developing and advocating for substitute legislation to address the conduct that would otherwise be covered by these laws. Smith Decl. ¶¶ 10-11; Dillard Decl. ¶ 9.

### 4.   Proposed Defendant-Intervenors Interests Are Not Adequately Represented by Any of the Parties.

Proposed Defendant-Intervenors satisfy the fourth and final factor for intervention as of right because their interests diverge in important respects from those of Defendants and are therefore not "adequately represented by existing parties." Fed. R. Civ. P. 24(a). First, while Defendants' interest is in the administration of their legal obligations on behalf of the general public, Proposed Defendant-Intervenors have a narrower interest in advocating for prevention of cruelty to animals and the interests of their members. Second, Defendants' interest is limited to upholding the Ordinance itself, while Proposed Defendant-Intervenors have broader protectable interests in the impact of this lawsuit on state and local fur sales laws in other jurisdictions, and in preventing harm to their organizational missions.

This test is a low bar: a proposed intervenor need only demonstrate that representation of its interest by existing parties "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Jackson v. Abercrombie*, 282 F.R.D. 507, 517-19 (D. Haw. 2012). "The burden of making this showing is minimal," *Sagebrush Rebellion*, 713 F.2d at 528, and "intervention of right does not require an absolute certainty…that existing parties will not adequately represent [the proposed intervenor's] interests." *Jackson*, at 517 (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897

(9th Cir. 2011)). In determining whether a proposed intervenor is adequately represented, the Court should

> consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceeding that the other parties would neglect.

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

The Ninth Circuit frequently grants intervention where, as here, the proposed intervenors have an interest that is different than that of the governmental defendant, such that the government may not make all the proposed intervenor's arguments. *See, e.g., California ex rel. Lockyer*, 450 F.3d at 440-41 (granting intervention where government defendant could offer limiting construction in defense of state); *Sw. Ctr. For Biological Diversity*, 268 F.3d at 822 (government did not adequately represent interests of building trade association because of government's broader range of considerations); *Forest Conservation Council*, 66 F.3d at 1499 (noting that the federal government represents a "broader view" than the interest of a state and county).

Proposed Defendant-Intervenors' interests are not coextensive with those of the Defendants in the present case. Defendants' interest lies in the administration of their legal obligations on behalf of the public at large (a public that includes San Francisco retailers and consumers who may be affected by the Ordinance). But Defendants have no specific mandate to advocate for the humane treatment of animals, nor do they represent humane interests above others. For example, Defendants could elect to downplay the legitimacy of "promoting community awareness of animal welfare" as a local purpose that may properly underpin the exercise of municipal authority, and instead tie their defense of the Ordinance to other municipal purposes. Defendants' interests could also be motivated by

financial and political pressures unrelated to the Ordinance itself. On the other hand, defense of the Ordinance is central to the basic missions of Proposed Defendant-Intervenors to ensure that cruelty to animals used for their fur is prevented and prohibited. *See California Trucking Ass'n v. Becerra*, No. 318-CV-02458-BENBLM, 2019 WL 202313, at *3 (S.D. Cal. Jan. 14, 2019) ("courts recognize that the interests of . . . intervenors in protecting their members are more 'narrow' and 'parochial' than California State officials' broad and more abstract interest in defending the laws of the State"); *see also Allied Concrete and Supply Co. v. Baker*, 905 F.3d 1053, 1068 (9th Cir. 2018) (proposed intervenor's "interests are potentially more narrow than the public's at large, and the State's representation of those interests *may have been inadequate*.") (quotation omitted) (emphasis in original).

Furthermore, even if Defendants and Proposed Defendant-Intervenors share an interest in preserving the Ordinance, the Proposed Defendant-Intervenors have additional protectable interests at stake in the litigation. As described in subsections 2 and 3 above, the outcome of this litigation carries direct implications for the Proposed Defendant-Intervenors' efforts to preserve and support other state and local fur sales laws and to continue to advocate for other, similar laws – interests that Defendants do not possess. Beyond mere defense of the law, Proposed Defendant-Intervenors seek intervention because of the potentially precedential nature of this case and the attendant impact it could have on their work promoting their organizational missions elsewhere. Thus, it is not just the Court's ultimate decision to uphold or invalidate the Ordinance that is of significant consequence to Proposed Defendant-Intervenors, but also the specific nuances of the Court's reasoning and its implications for legal challenges to other laws. Defendant does not represent this interest.

Finally, Proposed Defendant-Intervenors bring to the Court an extensive factual and legal knowledge borne from decades of experience litigating and

advocating for the humane treatment of animals used for their fur. This highly specialized expertise may not be fully shared by Defendants.

Because Proposed Defendant-Intervenors meet the "minimal" burden of showing necessary on this factor, *Trbovich*, 404 U.S. at 538 n.10, and also satisfy all other requirements for intervention pursuant to Rule 24(a), this Court should grant their motion to intervene as of right.

### B.   In the Alternative, Proposed Defendant-Intervenors Should Be Granted Permissive Intervention.

Although Proposed Defendant-Intervenors meet the criteria for intervention of right under Rule 24(a), in the alternative, this Court should exercise its discretion to grant permissive intervention under Rule 24(b). A court may grant permissive intervention "where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403 (citations omitted). However, this Court need not assess the first factor because "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases" like the instant case "when the proposed intervenor is not raising new claims." *Freedom from Religion Foundation, Inc. v. Geithner,* 644 F.3d 836, 844 (9th Cir. 2011).

Regarding the second factor, Proposed Defendant-Intervenors' application is timely and will not prejudice any party for the reasons stated in subsection A(1) above.

Finally, the third factor is met because Proposed Defendant-Intervenors' defenses and the main action have a "question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403. Indeed, Proposed Defendant-Intervenors' defenses present *only* questions of law in common with the "main action," because Proposed Defendant-Intervenors' intended involvement in this case is limited to the presentation of legal arguments as to the insufficiency of the

claims raised by the Plaintiff. Thus, even if intervention as of right is not granted, Proposed Defendant-Intervenors should be granted permissive intervention under Rule 24(b).

## IV.     **CONCLUSION**

For the foregoing reasons, Proposed Defendant-Intervenors' motion to intervene should be granted.

Dated: March 9, 2020

RILEY SAFER HOLMES & CANCILA LLP

*/s/ Bruce A. Wagman*
Bruce A. Wagman (CSB No. 159987)
BWagman@rshc-law.com
RILEY SAFER HOLMES & CANCILA LLP

*Attorneys for Proposed Defendant-Intervenors The Humane Society of the United States and Animal Legal Defense Fund*

Nicholas Arrivo (CSB No. 296173)
*N.D. Cal. admission pending*
narrivo@humanesociety.org
THE HUMANE SOCIETY OF THE UNITED STATES

*Attorney for Proposed Defendant-Intervenor The Humane Society of the United States*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2020, I electronically filed the foregoing

document and all attachments thereto with the Clerk of the Court using the

CM/ECF system, which will send notification of this filing to the attorneys of

record and all registered participants.

/s/ Bruce A. Wagman
Bruce A. Wagman

4849-6666-4119, v. 1

NOTICE OF MOTION, MOTION, AND POINTS AND AUTHORITIES ISO MOTION FOR LEAVE TO INTERVENE