1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   WAYNE SNODGRASS, State Bar #148137
    AILEEN M. McGRATH, State Bar # 280846
3   Deputy City Attorneys
    City Hall, Room 234
4   1 Dr. Carlton B. Goodlett Place
    San Francisco, California 94102-4682
5   Telephone:    (415) 554-4691
    Facsimile:    (415) 554-4699
6   E-Mail:        aileen.mcgrath@sfcityatty.org

7   Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO; and
8   DR. GRANT COLFAX, an individual, in his official capacity as
    Director of the San Francisco Department of Public Health

9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12

13  INTERNATIONAL FUR TRADE                Case No. 3:20-cv-00242-RS
    FEDERATION, an unincorporated association,
                                           **DEFENDANTS' NOTICE OF MOTION AND**
14          Plaintiff,                     **MOTION TO DISMISS COMPLAINT FOR**
                                           **DECLARATORY AND INJUNCTIVE RELIEF;**
15          vs.                            **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES**
16  CITY AND COUNTY OF SAN
    FRANCISCO; and DR. GRANT COLFAX, an    Hearing Date:   May 7, 2020
17  individual, in his official capacity as Director  Time:          1:30 p.m.
    of the San Francisco Department of Public  Place:         Honorable Judge Richard Seeborg
18  Health,                                               United States District Court
                                                          Courtroom 3 – 17th Floor
19          Defendants.                                   450 Golden Gate Avenue
                                                          San Francisco, CA 94102
20
                                           Action Filed:   January 13, 2020
21                                         Trial Date:     None set.

22                                         Attached documents:
                                           --Memorandum of Points and Authorities
23                                         --Request for Judicial Notice
                                           --[Proposed] Order
24

25  THE HUMANE SOCIETY OF THE UNITED
    STATES and ANIMAL LEGAL DEFENSE
26  FUND,

27          [Proposed] Defendant-Intervenors.

28

DEFTS. NTC OF MOT. & MTD; MPA                              n:\govlit\li2020\200633\01435623.docx
CASE NO. 3:20-cv-00242-RS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 2

INTRODUCTION ............................................................................................................... 2

BACKGROUND ................................................................................................................. 3

    I.      The San Francisco Animal Fur Products Ordinance ............................................. 3

    II.     The Allegations In The Complaint ........................................................................ 5

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.      Plaintiff Has Not Alleged Sufficient Facts To Establish Article III Standing. ........ 7

    II.     Plaintiff Is Not Entitled To A Declaratory Judgment (Count One). ........................ 9

    III.    The Fur Products Ordinance Satisfies The Dormant Commerce Clause (Counts Two, Three, and Four). ...................................................................................... 12

        A.      Legal Standard ............................................................................................. 12

        B.      Plaintiff Concedes That The Fur Products Ordinance Does Not Discriminate Against Interstate Commerce. ............................................... 14

        C.      The Fur Products Ordinance Does Not Substantially Burden Interstate Commerce—And Even If It Did, That Burden Would Not Exceed The Benefits To San Francisco. ........................................................................ 15

            1.      Because Plaintiff Has Failed To Allege A Substantial Burden On Interstate Commerce, *Pike* Balancing Is Not Required. ................ 16

            2.      The Fur Products Ordinance Serves Important Local Interests And Its Putative Benefits Outweigh Any Burden On Interstate Commerce. ......................................................................................... 20

CONCLUSION ................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Antilles Cement Corp. v. Acevedo Vila*
  408 F.3d 41 (1st Cir. 2005) ....................................................................................13

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..........................................................................................7, 22

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013) ........................................................................ *passim*

*Associated Gen. Contractors of Am., San Diego Chapter v. Cal. Dep't of Transp.*
  713 F.3d 1187 (9th Cir. 2013) ...................................................................................9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
  459 U.S. 519 (1983) ...................................................................................................7

*Balistreri v. Pacifica Police Dep't*
  901 F.2d 696 (9th Cir. 1988) .....................................................................................7

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................................................7

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
  476 U.S. 573 (1986) .................................................................................................13

*C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*
  511 U.S. 383 (1994) .........................................................................................13, 19

*Carroll v. Nakatani*
  342 F.3d 934 (9th Cir. 2003) .....................................................................................9

*Cavel Int'l, Inc. v. Madigan*
  500 F.3d 551 (7th Cir. 2007) .................................................................3, 17, 21, 22

*Chinatown Neighborhood Ass'n v. Harris*
  794 F.3d 1136 (9th Cir. 2015) ..................................................................... *passim*

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) .....................................................................................................8

*Clapper v. Amnesty Int'l USA et al.*
  568 U.S. 398 (2013) ...................................................................................................8

*Corrie v. Caterpillar, Inc.*
  503 F.3d 974 (9th Cir. 2007) .....................................................................................7

*Cresenzi Bird Importers, Inc. v. State of N.Y.*
  658 F. Supp. 1441 (S.D.N.Y. 1987) ........................................................................21

*CTS Corp. v. Dynamics Corp. of Am.*
    481 U.S. 69 (1987).................................................................................16, 18, 22

*Empacadora de Carnes de Fresnillo, S.A. v. Curry*
    476 F.3d 326 (5th Cir. 2007) ..........................................................3, 13, 21, 22

*Exxon Corp. v. Governor of Md.*
    437 U.S. 117 (1978)....................................................................................18, 19

*Gen. Motors Corp. v. Tracy*
    519 U.S. 278 (1997)............................................................................................16

*Great Atl. & Pac. Tea Co. v. Cottrell*
    424 U.S. 366 (1976)............................................................................................19

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982)........................................................................................7, 9

*Healy v. Beer Inst.*
    491 U.S. 324 (1989)....................................................................................12, 15

*Huron Portland Cement Co. v. Detroit*
    362 U.S. 440 (1960)............................................................................................19

*Hyde Park Partners L.P. v. Connolly*
    839 F.2d 837 (1st Cir. 1988)............................................................................18

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994)..............................................................................................6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) ......................................................................8, 9

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
    416 F.3d 940 (9th Cir. 2005) .............................................................................7

*Maine v. Taylor*
    477 U.S. 131 (1986)....................................................................................13, 14

*Mayfield v. United States*
    599 F.3d 964 (9th Cir. 2010) .............................................................................8

*N. Am. Meat Inst. v. Becerra*
    No. 2-19-CV-08569, 2019 WL 6253701 (C.D. Cal. Nov. 22, 2019) .......................22

*N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*
    850 F.3d 79 (2d Cir. 2017) ...............................................................................21

*Nat'l Ass'n of Optometrists & Opticians v. Brown*
    567 F.3d 521 (9th Cir. 2009) ...........................................................................13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) ................................................... *passim*

*Nat'l Council of La Raza v. Cegavske*
    800 F.3d 1032 (9th Cir. 2015) ...........................................................9

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
    272 F.3d 104 (2d Cir. 2001) .............................................................19

*Nat'l Paint Coatings Ass'n v. City of Chicago*
    45 F.3d 1124 (7th Cir. 1995) ...........................................................19

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*
    511 U.S. 93 (1994) ...........................................................................14

*Pac. Nw. Venison Producers v. Smitch*
    20 F.3d 1008 (9th Cir. 1994) ..................................................... *passim*

*Paulson v. CNF, Inc.*
    559 F.3d 1061 (9th Cir. 2009) ...........................................................7

*Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*
    768 F.3d 1037 (9th Cir. 2014) .........................................................15

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) ................................................................. *passim*

*Principal Life Ins. Co. v. Robinson*
    394 F.3d 665 (9th Cir. 2005) ...........................................................12

*Rocky Mountain Farmers Union v. Corey*
    730 F.3d 1070 (9th Cir. 2013) ...................................................14, 18

*Rocky Mountain Farmers Union v. Corey*
    913 F.3d 940 (9th Cir. 2019) ...........................................................18

*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2019) ...........................................................14

*Safari Club Int'l v. Becerra*
    702 F. App'x 607(9th Cir. 2017) ..............................................3, 15, 20

*Scott v. Pasadena Unified Sch. Dist.*
    306 F.3d 646 (9th Cir. 2002) .............................................................9

*Sellers v. Regents of Univ. of Cal.*
    432 F.2d 493 (9th Cir. 1970) ...........................................................12

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) .............................................................7

*Summers v. Earth Island Inst.*
  555 U.S. 488 (2009) ................................................................................8, 9

*UFO Chuting of Haw., Inc. v. Smith*
  508 F.3d 1189 (9th Cir. 2007) ...........................................................20

*Union Pac. R.R. Co. v. Sacks*
  309 F. Supp. 3d 908 (W.D. Wa. 2018) ..............................................11

*United States v. Salerno*
  481 U.S. 739 (1987)..............................................................................14

*United States v. Stevens*
  559 U.S. 460 (2010)..............................................................................21

*Warren v. Fox Family Worldwide, Inc.*
  328 F.3d 1136 (9th Cir. 2003) ...............................................................6

*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 (2008)..............................................................................14

*White Mountain Apache Tribe v. Williams*
  810 F.2d 844 (9th Cir. 1985) ...............................................................11

*Whitmore v. Arkansas*
  495 U.S. 149 (1990)................................................................................6

*Zimmerman v. City of Oakland*
  255 F.3d 734 (9th Cir. 2001) .................................................................6

**State Cases**
*Viva! Int'l Voice for Animals v. Adidas Promotional Retail Operations, Inc.*
  41 Cal. 4th 929 (2007)..........................................................................21

**Constitutional Provisions**
U.S. Const., art. I, § 8, cl. 3 [Commerce Clause]................................... *passim*

U.S. Const., art. III .................................................................................1, 7, 8, 9

**Federal Statutes**
28 U.S.C. §§ 2201, *et seq.* [Declaratory Judgment Act]...................................1

**Rules**
Fed. R. Civ. P.
  12(b)(1) ..............................................................................................1, 6
  12(b)(6) ...........................................................................................1, 6, 7

**State Statutes & Codes**
Cal. Comm. Code
  § 2102 .....................................................................................................10
  § 2106(1)..................................................................................................10

§ 2401 ..................................................................................................................10
§ 24102(2)(a) .......................................................................................................10

**San Francisco Statutes, Codes & Ordinances**
S.F. Board of Supervisor Ordinance No. 171317
    [San Francisco Animal Fur Products Ordinance] ........................................... *passim*

S.F. Health Code
§ 1D. .......................................................................................................................3
§ 1D.2. ........................................................................................................2, 21, 22
§ 1D.2(a) ...........................................................................................................4, 20
§ 1D.2(c) ..................................................................................................................4
§ 1D.2(d) ...............................................................................................................20
§ 1D.2(e) ..................................................................................................................4
§ 1D.2(f) ..................................................................................................................4
§ 1D.2(i) ..................................................................................................................4
§ 1D.3. .....................................................................................................................3
§ 1D.4. ..............................................................................................................3, 15
§ 1D.4(a) ...............................................................................................2, 10, 11, 14
§ 1D.4(c) ..................................................................................................................4
§ 1D.4(e) ..................................................................................................................4
§ 1D.5(a) ..................................................................................................................5

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO PLAINTIFF, PLAINTIFF'S ATTORNEYS OF RECORD AND TO THIS COURT:

Please take notice that at 1:30 p.m. on Thursday, May 7, 2020, or as soon thereafter as the matter may be heard, before the Honorable Richard Seeborg, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 3, 17th Floor, San Francisco, California 94102, Defendants CITY AND COUNTY OF SAN FRANCISCO and DR. GRANT COLFAX, in his official capacity as Director of the San Francisco Department of Public Health ("Defendants"), will move, and hereby move, to dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief ("Complaint") in its entirety, and to dismiss the City and County of San Francisco and Dr. Grant Colfax as defendants in this action, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because the Plaintiff lacks standing and because the Complaint fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the papers and pleadings on file in this action, and upon such other and further matters as may be considered by the Court at the hearing on the motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff International Fur Trade Federation lacks Article III standing.

2.      Whether Plaintiff has failed to state a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, for a declaratory judgment that the San Francisco Animal Fur Products Ordinance does not apply to fur products that are shipped from locations outside San Francisco to persons in San Francisco.

3.      Whether Plaintiff has failed to state a claim that the San Francisco Animal Fur Products Ordinance violates the federal dormant Commerce Clause under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

To promote animal welfare, protect the environment, and express condemnation of a practice that unnecessarily takes the lives of tens of millions of animals every year, the San Francisco Animal Fur Products Ordinance makes it unlawful to "sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute" most animal fur products "by any means in San Francisco."  S.F. Health Code § 1D.4(a).  The Ordinance reflects the San Francisco Board of Supervisors' considered judgment that the harvesting and sale of animal fur products is "damaging to the environment," "consumes significant quantities of energy," and contributes to the "unnecessary killing and cruel treatment of animals."  *Id.* § 1D.2.

Plaintiff International Fur Trade Federation ("Plaintiff"), a trade association headquartered in the United Kingdom and representing unspecified fur manufacturers, traders, farmers, and other industry members, seeks to enjoin the City and County of San Francisco[1] from enforcing the Ordinance on the ground that it violates the dormant Commerce Clause of the U.S. Constitution. Plaintiff alleges that the Ordinance's total ban—subject to certain exceptions—on fur sales in San Francisco substantially burdens interstate commerce without furthering a legitimate local interest. Plaintiff further argues that notwithstanding the Ordinance's limitation to sales that occur "in San Francisco," the City is in fact enforcing the Ordinance against out-of-state internet-based transactions. Plaintiff seeks a declaratory judgment that the Ordinance does not extend this far.

Plaintiff fails to state a claim for declaratory or injunctive relief.  The Ordinance does not implicate the dormant Commerce Clause, let alone violate it, as controlling Ninth Circuit precedent makes clear.  The San Francisco Animal Fur Products Ordinance is one of many laws that states and localities have passed in recent years prohibiting the sale or manufacture of products that compromise animal welfare and threaten the environment.  Various other jurisdictions have passed laws banning animal products ranging from horsemeat to shark fins to mountain lion parts.  The Ninth Circuit and other courts have uniformly upheld these bans against dormant Commerce Clause challenges raising

---

[1] This brief uses "Defendants" to refer to the named defendants in the case and "San Francisco" or "the City" to refer to the City and County of San Francisco more generally.

near-identical claims to the ones Plaintiff makes here. *See, e.g.*, *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015) (shark fins); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) (foie gras); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994) ("deleterious exotic wildlife"); *see also Safari Club Int'l v. Becerra*, 702 F. App'x 607 (9th Cir. 2017) (mountain lion parts); *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551 (7th Cir. 2007) (horsemeat); *Empacadora de Carnes de Fresnillo, S.A. v. Curry*, 476 F.3d 326 (5th Cir. 2007) (horsemeat). This Court should do the same, and dismiss Plaintiff's dormant Commerce Clause claims.

Plaintiff's request for declaratory relief fares no better. The Director of San Francisco's Department of Public Health—who is charged with enforcing the Ordinance—has clarified that the Department will not enforce the Ordinance against the internet-based transactions Plaintiff describes. In light of this clarification, Plaintiff does not and cannot show a dispute about the Ordinance's meaning that this Court needs to resolve.

Defendants therefore respectfully request that this Court dismiss Plaintiff's complaint without leave to amend.

## BACKGROUND

### I.     The San Francisco Animal Fur Products Ordinance

In April 2018, the San Francisco Board of Supervisors voted to approve the San Francisco Animal Fur Products Ordinance ("Fur Products Ordinance"), which amended the San Francisco Health Code to ban the sale and manufacture of animal fur products in San Francisco. S.F. Health Code Article 1D, also set forth in Defs.' Request for Judicial Notice in Support of Motion to Dismiss ("RJN") Exh. A. The Fur Products Ordinance went into effect on January 1, 2019, and made it unlawful to manufacture, sell, offer for sale, display for sale, give, donate, or otherwise distribute fur products in San Francisco. *Id.* § 1D.4. The Fur Products Ordinance defines "fur" as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state." *Id.* § 1D.3. The Ordinance's restrictions apply to "any article of clothing or covering for any part of the body, or any fashion accessory" made of fur. *Id.*

Although the Ordinance went into effect in January 2019, it gave entities engaged in the business of selling fur products an additional year to come into full compliance—entities who purchased or obtained fur products before March 20, 2018 could sell or distribute those products until December 31, 2019.  S.F. Health Code § 1D.4(e).  The Fur Products Ordinance also contains exemptions for certain fur products and certain fur distributors.  For instance, the Ordinance does not apply to used fur products sold or distributed by non-profit organizations, second-hand stores, or people not normally engaged in the business of selling fur products.  *Id.* § 1D.4(c).  It also exempts products made from the fur of animals obtained through certain California Fish and Game Code trapping licenses, as well as products made exclusively from used fur products.  *Id.*

As the findings cited in support of the Fur Products Ordinance demonstrate, the Board of Supervisors enacted the law to further a number of objectives related to public health, animal welfare, and the environment.  The findings state that while fur products were at one point necessary to "provide protective clothing" and "warmth," "civilizations and technology have developed such that fur is less of a necessity and more of a luxury."  S.F. Health Code § 1D.2(a).  "More than 50 million animals are violently killed for their fur every year," with "[m]ore than 85 [percent] of the pelts in the world's fur trade com[ing] from fur farms."  *Id.* § 1D.2(c).  The findings note that "[f]ur farming can be damaging to the environment and contributes to water and air pollution," in part because "[f]ur processing often involves use of harmful chemicals including chromium and formaldehyde."  *Id.* § 1D.2(e).  Further, the findings determine that "[f]ur farming also consumes significant quantities of energy.  The amount of energy required to produce a coat made of real fur from ranch-raised animal skins is over 15 times that needed to produce a fake fur garment."  *Id.* § 1D.2(f).  The findings thus conclude that:

> The sale of fur products in San Francisco is inconsistent with the City's ethos of treating all living beings, humans and animals alike, with kindness.  In light of the wide array of faux fur and other alternatives for fashion and apparel, the demand for fur products does not justify the unnecessary killing and cruel treatment of animals.  Eliminating the sale of fur products in San Francisco will promote community awareness of animal welfare, bolster the City's stance against animal cruelty, and, in turn, foster a more humane environment in San Francisco.

*Id.* § 1D.2(i).

The Fur Products Ordinance gives the Director of the San Francisco Department of Public Health ("DPH") authority to enforce the Ordinance.  S.F. Health Code § 1D.5(a).  The Ordinance empowers the Director to issue rules, regulations, or guidelines "necessary or appropriate for the implementation and enforcement" of the Fur Products Ordinance.  *Id.*  Consistent with this authority, the Director of DPH has published a page on the official DPH website titled "Animal Fur Products Frequently Asked Questions," ("FAQs") which is designed "to address some of the most common questions about its enforcement of the Ordinance." RJN Exh. B.

## II.    The Allegations In The Complaint

On January 13, 2020, Plaintiff filed this lawsuit.  The Complaint contains four causes of action. Count One seeks a declaratory judgment that San Francisco may not enforce the Fur Products Ordinance against parties to a transaction in which a fur product is shipped to a San Francisco address from a location outside San Francisco.  Dkt. No. 1 ("Compl.") ¶¶ 34-46.  Count One relies on a former version of DPH's FAQs to argue that DPH intends to enforce the Ordinance against products purchased from an out-of-state retailer's website and shipped to an address in San Francisco.  *Id.* ¶ 39. Counts Two through Four all assert claims under the dormant Commerce Clause to the U.S. Constitution.  *Id.* ¶¶ 47-70.  Count Two asserts that the Fur Products Ordinance violates the dormant Commerce Clause because it creates a substantial burden on interstate and foreign commerce without a "legitimate local purpose."  *Id.* ¶¶ 47-56.  Count Three alleges that the Fur Products Ordinance imposes a burden on interstate commerce that exceeds any "putative local benefits."  *Id.* ¶¶ 57-63. And Count Four asserts that the Ordinance creates a substantial burden on foreign commerce that exceeds any "putative local benefits."  *Id.* ¶¶ 64-70.  Plaintiff seeks a declaration that the Fur Products Ordinance "violates the Commerce Clause as an unconstitutional burden on interstate and foreign commerce that clearly exceeds any putative local benefits" and a permanent injunction enjoining Defendants from enforcing the Ordinance.[2]  *Id.* at 18-19.

---

[2] Although the Complaint contains a cause of action for a declaratory judgment that the Ordinance does not apply to transactions involving products shipped from outside San Francisco, the prayer for relief does not request this form of alternative declaratory relief.  *See* Compl. at 18-19.

Plaintiff largely repeats the following allegations with respect to its dormant Commerce Clause claims:  Plaintiff alleges that the Fur Products Ordinance burdens interstate and foreign commerce by placing a "total ban" on commerce in fur products in San Francisco.  Compl. ¶¶ 50, 59, 66.  Plaintiff further alleges that the Ordinance does not serve a legitimate interest, or further local benefits, because the Ordinance is merely an "exercise in virtue-signaling" (*id.* ¶¶ 62, 69) that will not actually enhance the welfare of animals in San Francisco (*id.* ¶ 52).  Plaintiff also generally alleges that the Ordinance will have impermissibly far-reaching effects (*id.* ¶ 9 ("And San Francisco even purports to ban the distribution in San Francisco of fur products sold *outside* the city—whether in neighboring Oakland or faraway Oslo—thus further interfering with interstate and foreign commerce.")), and that the Ordinance will "place a dam in the stream of interstate and foreign commerce of tens of millions of dollars of products" (*id.* ¶ 10; *see also id.* ¶ 25 (alleging that "fur products may not even be transported through the city, whether through the Port of San Francisco or even on a UPS truck")).  In addition, Plaintiff repeatedly alleges that San Francisco could have taken different steps to express its disapproval of the fur trade, such as issuing "a resolution stating that its Board of Supervisors disapproves of the purchase of fur products" (*id.* ¶ 10), or "offer[ing] public education about fur products that would reflect its dislike of them" (*id.* ¶ 62).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over the asserted claims.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  A district court accepts allegations of fact in the complaint as true and construes them favorably to the plaintiff.  *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).  But the party seeking to invoke federal jurisdiction still bears the burden of establishing the district court's subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  To meet this burden, "[t]he litigant must clearly and specifically set forth facts sufficient to satisfy . . . Art[icle] III standing requirements."  *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the complaint.  The complaint must allege facts establishing "a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Dismissal may be warranted based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In evaluating a Rule 12(b)(6) motion, the court accepts the factual allegations as true, and construes them in the light most favorable to the plaintiff.  *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 977 (9th Cir. 2007).  The court is not, however, required to assume the truth of legal conclusions merely because they are cast in the form of factual allegations.  *Paulson v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).  Similarly, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Further, a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that defendants have violated . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  A court need not permit an attempt to amend to cure a deficient complaint if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

### ARGUMENT

I. **Plaintiff Has Not Alleged Sufficient Facts To Establish Article III Standing.**

The Court need not reach the merits of Plaintiff's claims because, as a threshold matter, Plaintiff has not alleged facts sufficient to establish that it has associational standing.  In determining whether an organization has standing, the inquiry is the "same . . . as in the case of an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (internal quotation marks and citations omitted).  Organizations, like individuals, must satisfy the "irreducible constitutional minimum of standing consist[ing] of three elements: (1) injury in fact; (2) causation; and (3) redressability." *La Asociacion de Trabajadores de Lake Forest v. City of Lake*

*Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (internal quotation marks omitted).  An organization can do so by alleging that (1) it has at least one member who has suffered an injury in fact, *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009), or (2) it has suffered a legally redressable injury in its own right, *e.g., Havens Realty Corp.*, 455 U.S. at 378-79.

The Article III inquiry is particularly demanding in a case, like this one, where the plaintiff seeks "prospective relief" like a declaratory judgment or an injunction.  *See Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiffs seeking this relief must show a likelihood of future injury.  *See Lyons*, 461 U.S. at 108, 111 (holding that plaintiff who was subject to an unlawful chokehold in the past lacked standing to obtain injunctive relief in the absence of an "allegation of further unfortunate encounters between Lyons and the police").  That future injury must be "certainly impending" to constitute injury-in-fact sufficient to pursue prospective relief.  *Clapper v. Amnesty Int'l USA et al.*, 568 U.S. 398, 401 (2013).

The few vague, conclusory allegations related to standing in Plaintiff's Complaint do not satisfy these requirements because they do not show that any of Plaintiff's members have been, or will be, injured by the Fur Products Ordinance.  Plaintiff alleges that it represents members in "all parts of the fur trade," and that those members "whose fur products have been sold in San Francisco face an immediate threat of liability and fines if they sell *any* of their fur products there today."  Compl. ¶ 15. But this carefully-worded allegation does not demonstrate that any of Plaintiff's members either (1) would attempt to sell fur products in San Francisco in the absence of the Fur Products Ordinance, or (2) otherwise wish to sell fur products in San Francisco in the future.  Plaintiff also alleges that "it is impossible that none of the fur products that have been sold in San Francisco are from IFF members' farming operations in other states and countries."  *Id.* ¶ 19.  But this conjectural hypothesis regarding past conduct is not enough to satisfy Plaintiff's burden to show an impending injury to its members. Instead, this allegation appears to attempt to shift the burden to Defendants to show that it is impossible that any of Plaintiff's members' fur products have been sold in San Francisco.  That is not what Article III requires.  *Clapper*, 568 U.S. at 411-12.  Finally, Plaintiff alleges that it is injured directly because it "must devote its resources to trying to ascertain and educate its members as to the scope of the Fur Ban's application to them and their customers."  Compl. ¶ 15.  But while monetary

injury to an organization can give rise to subject matter jurisdiction, *Havens Realty Corp.*, 455 U.S. at 379, the Complaint's allegations are insufficient unless Plaintiff's members are potentially impacted by the Fur Products Ordinance.  This is because an organization "cannot manufacture [an] injury by . . . choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088.

Simply put, the Complaint does not set forth the "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers*, 555 U.S. at 498.  Alleging that Plaintiff's members *would be* injured *if* they attempted to sell fur products in San Francisco is not enough to make it "relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).  At most Plaintiff asserts broad assertions of apprehension of possible injury—but such allegations are not enough to establish standing.  *Associated Gen. Contractors of Am., San Diego Chapter v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1195 (9th Cir. 2013) (organization's general allegations that its members would suffer harm were insufficient to establish standing).  And the total absence of any allegations of Plaintiff's members' future intent to sell or distribute fur products in San Francisco means there is no "immediate threat" that the Ordinance will be enforced against them, as is necessary to show standing for prospective relief.  *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 661 (9th Cir. 2002).  At bottom, Plaintiff's Complaint reflects little more than a policy disagreement with San Francisco about how local governments should curb fur product sales.  *E.g.*, Compl. ¶ 62.  This "generalized grievance" is insufficient to create Article III standing, *see, e.g., Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003), so the Complaint should be dismissed in its entirety.

## II.     Plaintiff Is Not Entitled To A Declaratory Judgment (Count One).

Even if Plaintiff had standing to seek declaratory relief, its declaratory judgment claim should still be dismissed because there is no dispute between the parties about the Fur Products Ordinance's reach.  Plaintiff seeks a declaration that the Fur Products Ordinance does not apply to internet-based fur product transactions where a product is shipped from an out-of-state retailer to a person in San Francisco.  Compl. ¶¶ 35, 39.  Plaintiff claims—correctly—that the Fur Products Ordinance by its

terms applies only to fur products that are sold or otherwise distributed in San Francisco.  *Id.*; *see also*

S.F. Health Code § 1D.4(a) (making it unlawful "to sell, offer for sale, display for sale, trade, give,

donate, or otherwise distribute a Fur Product by any means *in San Francisco*") (emphasis added).

Relying on portions of the California Uniform Commercial Code, Plaintiff asserts that where a

customer purchases a product from an out-of-state retailer over the internet, title to that product passes

outside of San Francisco at the moment the internet transaction takes place.  Compl. ¶ 42.[3]  Plaintiff

thus claims that as a matter of law these sales occur outside of San Francisco and are not subject to the

Fur Products Ordinance.  *Id.*

To show that there is a putative dispute between the parties on this topic, Plaintiff cites a

former version of DPH's online FAQs.  Compl.  ¶ 39.  At the time Plaintiff filed its Complaint, the

relevant portion of the FAQs read as follows:

> **5.  Would a retailer that is not physically located in the City violate the Ordinance if a customer purchases a fur product through the retailer's website and the fur product is physically distributed to the City?**
>
> Yes.  Article 1D section 1D.4(a) prohibits the distribution of a fur product by any means in the City.  A retailer that sells a fur product and arranges for a fur product to be distributed to or from the City, violates section 1D.4(a) for distributing a fur product in the City.

*Id.*  Plaintiff alleges that this interpretation is at odds with other interpretations of the Ordinance.  *Id.* ¶

41 (citing San Francisco Controller report stating that the Ordinance does not affect out-of-town and

online sales).

---

[3] Plaintiff's declaratory relief claim should be dismissed on the merits even if there were an actual dispute about the Fur Products Ordinance's reach.  Plaintiff relies on the California Uniform Commercial Code (California UCC) to suggest that a fur product sale takes place "outside San Francisco" if title passes outside San Francisco.  Compl. ¶ 42 (citing Cal. Comm. Code §§ 2106(1) ("a 'sale' consists in passing of title from the seller to the buyer for a price") & 24102(2)(a) ("If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at designation, title passes to the buyer at the time and place of shipment.")).  But Plaintiff's reliance on the California UCC is incorrect.

Whether a product is sold "in San Francisco" for purposes of the Fur Products Ordinance is not governed by the California UCC.  The California UCC by its express terms does not "impair or repeal any statute regulating sales to consumers."  Cal. Comm. Code § 2102.  That is because the California UCC addresses the "rights, obligations and remedies" between buyers and sellers in transactions to sell goods, but does not govern what can be sold in the first place.  *Id.* § 2401.  The Fur Products Ordinance *does* govern what can be sold.  It is a law "regulating sales to consumers" that is expressly outside the California UCC's scope.  *Id.* § 2102.  The California UCC's provisions regarding the passage of title are therefore irrelevant and do not bear on the proper interpretation of the Fur Products Ordinance.

But since Plaintiff's Complaint was filed, DPH has modified the Fur Products Ordinance FAQs to clarify its enforcement position and to resolve uncertainties about its interpretation of the Ordinance.  RJN Exh. B.  The FAQs clarify that DPH will not enforce the Ordinance against online retailers with no physical presence in the City.  Thus, when a person or entity purchases a fur product over the internet from a retailer based outside the City, DPH will not enforce the Fur Products Ordinance against them even if the fur product is shipped to a San Francisco address.  The revised FAQ states as follows:

> **5.  Does the Ordinance prohibit the sale of fur products purchased through a retailer's website and physically distributed to a location in San Francisco?**
>
> Article 1D section 1D.4(a) prohibits the sale or distribution of a fur product by any means in the City, directly or indirectly, including through a retailer's website.  A retailer with a physical location in the City that sells or distributes a fur product to any location, including to an address in the City, violates section 1D.4(a) for selling or distributing a fur product in the City.  The Department is not enforcing the ordinance against retailers with no physical presence in the City.  If the Department decides in the future to pursue enforcement against retailers with no physical presence in the City, the Department will provide the public with advance notice regarding the Department's change in enforcement policy.

RJN Exh. B.

DPH's statement regarding its enforcement policy and practice establishes that there is no dispute for this Court to resolve.  DPH has made clear it will not enforce the Fur Products Ordinance against customers using the internet—or other similar means of communication—to "have a fur product sold elsewhere in the world shipped to him or her . . . in San Francisco," as Plaintiff alleges.  Compl. ¶ 39.  There is consequently no disagreement between the parties about whether the Ordinance applies to "products that are shipped to persons in San Francisco . . . from a seller outside San Francisco" (*id.* ¶ 43), and no need for the Court's involvement on this issue.  *See White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 856 (9th Cir. 1985) (finding declaratory judgment improper where state had made clear "that it did not intend to impose any of the disputed taxes on" the plaintiff); *see also Union Pac. R.R. Co. v. Sacks*, 309 F. Supp. 3d 908, 922 (W.D. Wa. 2018) (granting motion to dismiss declaratory judgment claim regarding interpretation of state law on breaks and meal periods where state had made clear it will "not enforce its break rule" in the challenged manner).  Given DPH's clarified position, there is no "present danger" the Ordinance will be enforced against these

types of transactions, and therefore "no cause or controversy of sufficient immediacy or definiteness"

to warrant a declaratory judgment.  *Sellers v. Regents of Univ. of Cal.*, 432 F.2d 493, 500 (9th Cir.

1970).

Because there is no "actual . . .  controversy" between the parties, Plaintiff's request for a

declaratory judgment should be dismissed.  *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669

(9th Cir. 2005) (stating that a district court must determine at the outset whether a plaintiff has

identified an actual case or controversy sufficient to request declaratory relief).

### III.   The Fur Products Ordinance Satisfies The Dormant Commerce Clause (Counts Two, Three, and Four).

Plaintiff's remaining causes of action are various statements of Plaintiff's contention that the

Fur Products Ordinance facially violates the dormant Commerce Clause.  Plaintiff asserts that because

the Fur Products Ordinance effects a "total ban" on fur products commerce in San Francisco, it

necessarily imposes a substantial burden on interstate commerce.  *E.g.*, Compl. ¶ 50.  Plaintiff argues

that this burden is excessive because it "does not advance any legitimate local purpose" or further any

"putative local benefits" in promoting animal welfare or conserving the environment.  *Id.* ¶¶ 52-70.

The Complaint consists of little more than criticisms of the purposes and effects of the Fur

Products Ordinance, allegations regarding possible harm to the business interests of individuals

engaged in the fur trade, and musings about various other ways the City could purportedly have

expressed its views on the sale of fur products.  These allegations do not state plausible claims—facial

or otherwise—for relief under the dormant Commerce Clause.  Every court to have considered similar

allegations, in dormant Commerce Clause challenges to product bans, has rejected them.  *See* p. 3,

*supra*.  This Court should do the same and dismiss the Complaint in its entirety without leave to

amend.

#### A.    Legal Standard

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and

among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It includes an implied limitation on the

regulatory authority of the States and localities, often referred to as the dormant Commerce Clause.

*Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).  The purpose of the dormant Commerce Clause is to

"prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994). Its restrictions are "by no means absolute" and "[s]tates retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected." *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citations and quotation marks omitted). "As long as a State does not needlessly obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources." *Id.* at 151

The Supreme Court has adopted a two-tiered approach to determine whether a law violates the dormant Commerce Clause. *Ass'n des Eleveurs*, 729 F.3d at 948 (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986)). A statute is essentially per se invalid if it directly regulates or discriminates against interstate commerce or if its effect is to favor in-state economic interests over out-of-state interests. *Id.*; *see also Nat'l Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521, 524 (9th Cir. 2009). But if a statute has neither of those effects, a different test applies. The court must first assess whether the statute, although nondiscriminatory, nonetheless imposes a "substantial burden on interstate commerce." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). If so, the court must apply the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). That text examines "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman*, 476 U.S. at 578-79; *see also Pike*, 397 U.S. at 142 ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").[4]

---

[4] Plaintiff's Foreign Commerce Clause allegations do not change this analysis. Compl. ¶¶ 48, 65-70. Courts in other circuits have held that product bans like the Fur Products Ordinance do not implicate the Foreign Commerce Clause at all. *See, e.g., Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 335 (holding that state law prohibiting the processing, sale, or transfer of horsemeat for human consumption "does not implicate the Foreign Commerce Clause as statutes placing import and export restrictions do"). To the extent the Foreign Commerce Clause is relevant, this Court should analyze Plaintiff's Foreign Commerce Clause claims under the same framework as the dormant

Because Plaintiff has brought a facial challenge to the Fur Products Ordinance, its claims must satisfy an additional hurdle: the requirement that Plaintiff "establish that no set of circumstances exists under which the [Ordinance] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) ("To succeed on her facial challenge under the dormant Commerce Clause, Rosenblatt must establish that no set of circumstances exists under which the ordinance would be valid."). To support a finding of facial unconstitutionality, Plaintiff cannot prevail by suggesting that some future hypothetical application of the Ordinance may create constitutional problems. Rather, Plaintiff must show that the Ordinance is unconstitutional in all its applications. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

**B.      Plaintiff Concedes That The Fur Products Ordinance Does Not Discriminate Against Interstate Commerce.**

Plaintiff does not allege, nor could it legitimately do so, that the Fur Products Ordinance discriminates against interstate commerce or regulates extraterritorially. For purposes of the dormant Commerce Clause, discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). A law is unconstitutional if it "discriminates against out-of-state entities on its face, in its purpose, or in its practical effect . . . unless it 'serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Maine*, 477 U.S. at 138).

The Fur Products Ordinance does not privilege in-state interests or single out out-of-state commerce for burdensome treatment. Rather, the Ordinance prohibits—subject to limited exceptions—the sale, offer for sale, display for sale, trade, gift, donation, or other distribution of for products *in San Francisco*. S.F. Health Code § 1D.4(a). The Fur Products Ordinance regulates even-

domestic Commerce Clause claims. *See Antilles Cement Corp. v. Acevedo Vila*, 408 F.3d 41, 46 (1st Cir. 2005) ("Although the language of dormant Commerce Clause jurisprudence most often concerns interstate commerce, essentially the same doctrine applies to international commerce.").

handedly and treats all fur products equally, regardless of their point of origin.  The Ninth Circuit has

uniformly agreed that laws like this, which ban the sale or distribution of a product within a particular

state or local jurisdiction, are not discriminatory.  *Ass'n des Eleveurs*, 729 F.3d at 948; *Pac. Nw.*

*Venison Producers*, 20 F.3d at 1012; *Safari Club Int'l*, 702 F. App'x at 607; *see also Pharm. Research*

*& Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1042 (9th Cir. 2014) ("[A]n ordinance that applies

across-the-board provides no geographic advantages" and thus "does not discriminate at all . . . .").

Likewise, the Fur Products Ordinance does not, either directly or indirectly, control commerce

occurring wholly outside of San Francisco.  To the contrary, by its terms the Fur Products Ordinance

regulates conduct—for instance, the sale or other distribution of most fur products—only in and into

San Francisco.  S.F. Health Code § 1D.4.  It thus is not an impermissible extraterritorial regulation.

*See Healy*, 491 U.S. at 336.  Again, the Ninth Circuit has spoken clearly on this point.  *Chinatown*

*Neighborhood Ass'n*, 794 F.3d at 1145-46 (rejecting argument that "Shark Fin Law is per se invalid

under the Commerce Clause because it regulates extraterritorially by curbing commerce in shark fins

between California and out-of-state destinations").

### C.    The Fur Products Ordinance Does Not Substantially Burden Interstate Commerce—And Even If It Did, That Burden Would Not Exceed The Benefits To San Francisco.

Instead, Plaintiff argues that under the balancing test set forth in *Pike v. Bruce Church, Inc.*,

397 U.S. at 142, the Fur Products Ordinance's "substantial burden" on interstate commerce exceeds its

putative local benefits and that these local benefits are illusory.  Compl. ¶¶ 47-70.  Plaintiff's Second,

Third, and Fourth Causes of Action are all variations of this argument.  *Id.*  But these causes of action

all fail as a matter of law.  Plaintiff does not allege a substantial burden on interstate commerce, as

necessary to trigger *Pike*'s balancing analysis.  Thus, an inquiry into the Ordinance's putative benefits

is neither required nor appropriate.  But in any case, because any potential burdens on interstate

commerce caused by the Fur Products Ordinance are not "clearly excessive" when compared to its

putative benefits, the Ordinance is valid under *Pike*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1. Because Plaintiff Has Failed To Allege A Substantial Burden On Interstate Commerce, *Pike* Balancing Is Not Required.

Plaintiff's *Pike*-related causes of action all fail at the threshold because Plaintiff is not entitled to balancing under *Pike*. *Pike* balancing only comes into play after a plaintiff has first shown a substantial burden on interstate commerce. *See, e.g., Ass'n des Eleveurs*, 729 F.3d at 952; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147. Plaintiff has not done so here. The mere fact that a state or local law touches upon interstate commerce is not enough for a plaintiff to invoke *Pike*. As the Ninth Circuit has held, a "state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148. Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*." *Id.* (emphasis in original). Where a substantial burden is not shown, it is inappropriate for a court to assess the putative benefits of a challenged law. *Id.*; *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 ("Our precedents, however, preclude any judicial 'assessment of the benefits of [a state] law[] and the . . . wisdom in adopting' it unless the statute either discriminates in favor of in-state commerce or imposes a 'significant burden on interstate commerce.'") (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1156) (alterations in original).

The Ninth Circuit has also identified two ways that plaintiffs may demonstrate that a law imposes a substantial burden: (1) by showing that the law is discriminatory, or (2) by demonstrating that it creates "inconsistent regulation of activities that are inherently national or require a uniform system of regulation," such as transportation or professional sports leagues. *Ass'n des Eleveurs*, 729 F.3d at 951-52 (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146-47. Most regulations that have been struck down under *Pike* have been discriminatory. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146; *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997) (citing cases and concluding that "several cases that have purported to apply the undue burden test (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the challenged state regulations"). The "small number" of dormant Commerce Clause cases in which courts have

invalidated state or local statutes all involved inherently national activities. *Ass'n des Eleveurs*, 729 F.3d at 952; *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987).

Plaintiff has failed to allege a cognizable "substantial burden" under this framework. The Complaint does not allege that the regulation of fur products is "inherently national," and it is not; or that the fur products trade requires a "uniform system of regulation," which it does not. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also Pac. Nw. Venison Producers*, 20 F.3d at 1014. Plaintiff does not even attempt to fit the Fur Products Ordinance into these categories

Instead, Plaintiff repeatedly argues that because the Fur Products Ordinance effects "a total ban" on commerce in fur products in San Francisco, it necessarily "imposes a substantial burden on interstate and foreign commerce." Compl. ¶¶ 50, 59, 66. Plaintiff emphasizes the alleged breadth of the Fur Products Ordinance, which Plaintiff complains "lumps together *every* fur product from *every* fur animal" and applies to "fur products from all animals raised or trapped everywhere else in the world." *Id.* ¶¶ 6, 9. But even taken as true, these allegations do not establish a viable dormant Commerce Clause claim. A "blanket prohibition" or "import ban that simply effectuates a complete ban on commerce" does not violate the dormant Commerce Clause where it "does not make distinctions based on the origin of the items." *Pac. Nw. Venison Producers*, 20 F.3d at 1012; *see also Ass'n des Eleveurs*, 729 F.3d at 948. By conceding that the Fur Products Ordinance applies equally to all fur products regardless of where they originate (Compl. ¶¶ 6, 9), Plaintiff concedes that the Ordinance does not make such distinctions. As a result, the Ordinance does not substantially burden interstate commerce even by imposing a total ban on the sale or distribution of fur products in San Francisco. The Ninth Circuit, and various other circuits, have made this clear in upholding numerous other laws that impose similar jurisdiction-wide bans on the sale or distribution of particular products. *See, e.g., Ass'n des Eleveurs*, 729 F.3d at 948; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison*, 20 F.3d at 1012; *see also Cavel Int'l, Inc.,* 500 F.3d at 556 (affirming Illinois statute making it illegal to import or export horse meat for human consumption). Even the complete ban on the sale of a product is not enough to suggest a substantial burden on interstate commerce.

Plaintiff's allegations that the Ordinance reaches fur products that originate elsewhere in the world, and therefore impacts companies located outside of San Francisco, does not change the analysis.  Compl. ¶¶ 9-10 (alleging that the Fur Products Ordinance reaches fur from animals trapped elsewhere in the world); *id.* ¶ 26 ("For San Francisco to completely ban the sale of fur products . . . all of which come from outside San Francisco and virtually all of which come from outside California, with a large percentage originating outside the United States[,] is for San Francisco to more than substantially burden interstate and foreign commerce.").  San Francisco may seek to regulate products sold within its own market, even if doing so affects upstream out-of-state producers.  *See Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013) (holding that states and localities are "free to regulate commerce and contracts within their boundaries with the goal of influencing the out-of-state choices of market participants").  As the Ninth Circuit has held, laws with such aims are "a traditional use of the State's police power." *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019).  Indeed, the Ninth Circuit has held that even a *complete ban* that will disproportionately affect *out-of-state* producers does not substantially burden interstate commerce.  *Ass'n des Eleveurs*, 729 F.3d at 942 (upholding California's foie gras ban notwithstanding the plaintiff's assertion that the ban would only affect out-of-state producers).  In doing so, the Ninth Circuit has relied on controlling Supreme Court authority upholding state laws that apply *entirely* to out-of-state conduct because there are no comparable in-state businesses.  *Id.* at 948 (citing *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 119-20 (1978)); *see also CTS Corp.*, 481 U.S. at 88 (rejecting the argument that a statute violates the dormant Commerce Clause where it affects a market composed primarily of out-of-state participants).  Allegations that fur products travel from out-of-state locations to San Francisco do not show that the Fur Products Ordinance substantially burdens interstate commerce.  *See Hyde Park Partners L.P. v. Connolly*, 839 F.2d 837, 844 (1st Cir. 1988) ("A state may impose certain nondiscriminatory regulations on sales of goods within its borders, even if those goods originated out of state."); *see also Pac. Nw. Venison Producers*, 20 F.3d at 1015 ("Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet this burden.").

Nor can Plaintiff show a substantial burden by pointing to the financial impact the Fur Products Ordinance may have on members of the fur industry.  Plaintiff focuses heavily on the loss of profits and income the fur industry will allegedly experience from the Fur Products Ordinance.  Compl. ¶¶ 22-23.  But Plaintiff appears to confuse the possible diminution of commerce in fur products with a substantial burden on interstate commerce.  The financial impact, whatever the dollar amount may be, to Plaintiff, its members, and the fur product industry in general (*id.*), does not amount to a *substantial burden* on *interstate commerce* within the meaning of the dormant Commerce Clause.  The point of the dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-state interests—not to protect the economic interests of businesses engaged in interstate commerce.  *See Carbone*, 511 U.S. at 390.  The Supreme Court has made this clear: The dormant Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."  *Exxon Corp.*, 437 U.S. at 127-28; *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1152 & n.11 ("the dormant Commerce Clause does not protect a particular company's profits").  Rather, for "a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce."  *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1148-49.  Put another way, it is not the *amount* of burden on commerce, but the *type* of burden, and specifically whether a statute discriminates against interstate commerce or regulates in an area where national uniformity is required, that is dispositive.  *See Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448 (1960).  Plaintiff does not allege that the Fur Products Ban has these effects.  *See* pp. 14-15, *supra*; *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison Producers*, 20 F.3d at 1015.  Its allegations about the Ordinance's financial impact on the fur industry as a whole are thus insufficient as a matter of law.

The Court should also disregard Plaintiff's allegation that the Fur Products Ordinance will "place a dam in the stream of interstate and foreign commerce."  Compl. ¶ 10.  Plaintiff asserts that the Director of DPH has taken the position that fur products "may not even be transported through the city, whether through the Port of San Francisco or even on a UPS truck."  *Id.* ¶ 25.  This is a baseless assertion.  Despite Plaintiff's misleading citation of the DPH Fur Ordinance FAQs, those FAQs do not

remotely suggest that the City will enforce the Fur Products Ordinance to prevent the mere transport of fur products within the City.  RJN Exh. B.  In any event, the Ordinance would be no less constitutional even if it applied in this manner.  The Ninth Circuit has long made clear that a statute is not "invalid merely because it affects in some way the flow of commerce between the States."  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)); *see also Nat'l Paint Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[T]he ordinance affects interstate shipments, but it does not discriminate against interstate commerce in either terms or effect.").  And specifically, the Ninth Circuit has recognized that animal product bans like the Fur Products Ordinance do not substantially burden interstate commerce even if they affect the "flow" of a product through a particular jurisdiction.  *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1145-46 (rejecting argument that California's shark fin ban violates the dormant Commerce Clause "by preventing the flow of shark fins through California from one out-of-state destination to another").  Plaintiff's allegations about the Ordinance placing a "dam in the stream" of commerce do not show a substantial burden on interstate commerce.

> ### 2.     The Fur Products Ordinance Serves Important Local Interests And Its Putative Benefits Outweigh Any Burden On Interstate Commerce.

Because Plaintiff has not alleged and cannot allege any facts to establish a cognizable burden on interstate commerce, *Pike* balancing is not warranted and Plaintiff's dormant Commerce Clause claim fails.  *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155-56; *see also Safari Club Int'l*, 702 F. App'x at 608 ("Only after determining that the state law is discriminatory and there is an undue burden on interstate commerce do we need to undertake a full *Pike* analysis.")  But even if the Court were to engage in the *Pike* balancing analysis, Plaintiff's Complaint would still fail to state a claim.  The allegations in Plaintiff's Complaint do not show that the Fur Products Ordinance's incidental burdens on interstate commerce, if any, would clearly outweigh its considerable benefits.

"A facially neutral statute may violate the Commerce Clause if 'the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational.'"  *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (citation omitted).  A statute is unreasonable

or irrational when "the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." *Id.*

Plaintiff's conclusory allegations do not satisfy this standard. The Fur Products Ordinance was enacted to conserve and protect populations of fur-producing animals in the United States and elsewhere. S.F. Health Code § 1D.2(a)-(d). The Ordinance reflects the City's considered judgment that the harm to animals from being "violently killed" for their pelts, as well as the negative impact on the environment that fur farming and fur processing cause, outweighed any societal benefits from the use of fur products for "fashion and apparel." *Id.* § 1D.2. It is well-settled that protecting wildlife and the environment, preventing animal cruelty, and enhancing animal welfare are legitimate state interests. *See United States v. Stevens*, 559 U.S. 460, 469 (2010) ("[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies."); *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Ass'n des Eleveurs*, 729 F.3d at 952; *Pac. Nw. Venison Producers*, 20 F.3d at 1013; *N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 850 F.3d 79, 92 (2d Cir. 2017); *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336-37.

Plaintiff does not suggest otherwise, but instead alleges that these interests are not sufficiently "*local*" in this case because the Ordinance reaches products "from animals raised or trapped entirely in other states and countries." Compl. ¶¶ 27-32 (alleging that the Ordinance's findings all "pertain to fur farming that does not even take place anywhere in San Francisco"); *id.* ¶ 53 ("Improving the welfare of fur animals in Wisconsin or Denmark, for example, is certainly a legitimate local purpose of the people and their governments *in Wisconsin or Denmark*. But it is not one as to which San Francisco—which does not even have any fur farming or commercial trapping operations within its own jurisdiction—can legislate."). But even accepting these allegations as true, they do not undermine the legitimacy or the locality of San Francisco's interests. States and local governments may target a harmful practice that occurs elsewhere by reducing the local market for the fruits of that practice. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1140 (California could seek to decrease shark finning elsewhere based on the finding "that 'California is a market for shark fin' that 'helps drive the practice of shark finning'") (citation omitted); *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336 (concluding that a state ban on selling horsemeat for human consumption may preserve horses

because it "remov[es] the significant monetary incentives in the horsemeat market").  And they may "constitutionally conserve wildlife elsewhere by refusing to accept local complicity in its destruction." *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987); *see also Cavel Int'l*, 500 F.3d at 557 ("States have a legitimate interest in prolonging the lives of animals that their population happens to like."); *cf. Viva! Int'l Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal. 4th 929, 952 (2007) (upholding California's ban on import of kangaroo pelts and products, based on the State's desire to protect the species from harm).  Here, San Francisco can constitutionally decide to reduce or eliminate the local market for a product it believes contributes to the unnecessary death of animals and environmental degradation.  S.F. Health Code § 1D.2.

These benefits outweigh any minor burdens on interstate commerce.  As described above, the Ninth Circuit has routinely concluded that complete bans on products are not clearly excessive in relation to the government's interests.  *See, e.g., Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Ass'n des Eleveurs*, 729 F.3d at 953; *Pac. Nw. Venison Producers*, 20 F.3d at 1015.  Other district courts in this Circuit have done the same.  *See, e.g., N. Am. Meat Inst. v. Becerra*, No. 2-19-CV-08569, 2019 WL 6253701, at *11 (C.D. Cal. Nov. 22, 2019) (upholding California law prohibiting the sale in California of meat from an animal not housed in compliance with certain confinement standards).  Other circuits have also held that the benefits from laws banning the sale of certain animal products exceed any burdens those laws impose.  *See, e.g., Cavel Int'l*, 500 F.3d at 555-59; *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336-37.

None of Plaintiff's additional allegations state a plausible claim that the Fur Products Ordinance fails the *Pike* balancing test.  Plaintiff repeatedly asserts that San Francisco's interests in wildlife, animal welfare, and the environment are illusory and irrational (Compl. ¶¶ 29-32); that the Ordinance will be ineffective because consumers will be unaware of its message (*id.* ¶ 60); and that other San Francisco policies undermine the Ordinance's proffered "ethos of treating all living beings, humans and animals alike, with kindness," (*id.* ¶¶ 29-30).  Plaintiff's repeated, unsupported legal conclusions about the irrationality of the Fur Products Ordinance are insufficient to meet its pleading burden.  *Iqbal*, 556 U.S. at 678.  And its contention that the Ordinance is unwise, ineffective, or inconsistent with other City policies are political questions that are immaterial to Plaintiff's

constitutional claims.  When conducting the *Pike* analysis, courts disregard a law's *actual* effectiveness and instead consider only its *putative* benefits.  *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (noting that *Pike* "does not mention actual benefits as part of the test for determining when a regulation violates the dormant Commerce Clause").  Whether legislation will effectively further those benefits is a question for the San Francisco Board of Supervisors, not a court, to decide.  *CTS Corp.*, 481 U.S. at 92 (courts reviewing dormant Commerce Clause challenges should not "second guess the empirical judgments of lawmakers concerning the utility of legislation"); *Pac. Nw. Venison Producers*, 20 F.3d at 1016 (similar).

Finally, Plaintiff's allegations that San Francisco's interests in promoting animal welfare and protecting the environment could be achieved through means that would have a "lesser impact"—such as "passing a resolution expressing whatever feelings the Board of Supervisors has about fur" or "offer[ing] public education about fur products that would reflects its dislike of them," (Compl. ¶¶ 62, 69)—are legally irrelevant.  Where, as here, a law is not discriminatory and places no significant burden on interstate commerce, the Ninth Circuit has instructed that courts should "not consider any evidence regarding alternative means for the State to achieve its goals." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157.  This is because "it is inappropriate for [a court] to set [such a law] aside based on a conclusion that the State's purposes could be served as well with alternative laws." *Id.*; *see also Ass'n des Eleveurs*, 729 F.3d at 953.

The Complaint contains no allegations plausibly suggesting that San Francisco's interests are illegitimate or that any burden from the Fur Products Ordinance's impact on interstate commerce clearly exceeds its local benefits.  *See Pike*, 397 U.S. at 142.  Accordingly, Plaintiff has not stated, and cannot state, a claim for relief under the dormant Commerce Clause, and its Second, Third, and Fourth Causes of Action should be dismissed without leave to amend.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiff's Complaint without leave to amend.

Dated:  March 16, 2020

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
AILEEN M. MCGRATH
Deputy City Attorneys


By:   /s/Aileen M. McGrath

AILEEN M. MCGRATH
Attorneys for Defendants

CITY AND COUNTY OF SAN FRANCISCO; and
DR. GRANT COLFAX, an individual, in his official
capacity as Director of the San Francisco Department of
Public Health