1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  WAYNE SNODGRASS, State Bar #148137
   AILEEN M. McGRATH, State Bar # 280846
3  Deputy City Attorneys
   City Hall, Room 234
4  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
5  Telephone:    (415) 554-4691
   Facsimile:    (415) 554-4699
6  E-Mail:       aileen.mcgrath@sfcityatty.org

7  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO; and
8  DR. GRANT COLFAX, an individual, in his official capacity as
   Director of the San Francisco Department of Public Health

9

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13 INTERNATIONAL FUR TRADE                     Case No. 3:20-cv-00242-RS
   FEDERATION, an unincorporated association,
                                               **DEFENDANTS' NOTICE OF MOTION AND**
14        Plaintiff,                           **MOTION TO DISMISS FIRST AMENDED**
                                               **COMPLAINT FOR DECLARATORY AND**
15        vs.                                  **INJUNCTIVE RELIEF; MEMORANDUM OF**
                                               **POINTS AND AUTHORITIES**
16 CITY AND COUNTY OF SAN
   FRANCISCO; and DR. GRANT COLFAX, an         Hearing Date:   July 2, 2020
17 individual, in his official capacity as Director  Time:           1:30 p.m.
   of the San Francisco Department of Public    Place:          Hon. Richard Seeborg
18 Health,                                                       United States District Court
                                                                Courtroom 3 – 17th Floor
19        Defendants.                                           450 Golden Gate Avenue
                                                                San Francisco, CA 94102
20
                                               Action Filed:   January 13, 2020
21                                             Trial Date:     None set.

22                                             Attached documents:
                                               --Memorandum of Points and Authorities
23                                             --Request for Judicial Notice
                                               --[Proposed] Order
24

25 THE HUMANE SOCIETY OF THE UNITED
   STATES and ANIMAL LEGAL DEFENSE
26 FUND,

27        Defendant-Intervenors.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION AND MOTION TO DISMISS ................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

    I.     The San Francisco Animal Fur Products Ordinance.................................. 3

    II.    The Allegations In The First Amended Complaint.................................... 5

LEGAL STANDARD...................................................................................................... 6

ARGUMENT .................................................................................................................. 7

    I.     Plaintiff Is Not Entitled To A Declaratory Judgment Because There Is No Dispute Between The Parties About The Ordinance's Meaning (Count One)....... 7

    II.    The Fur Products Ordinance Satisfies The Dormant Commerce Clause (Counts Two, Three, and Four). ..................................................................................... 12

         A.    Legal Standard ................................................................................ 12

         B.    Plaintiff Concedes That The Fur Products Ordinance Does Not Discriminate Against Interstate Commerce. ............................................... 14

         C.    The Fur Products Ordinance Does Not Substantially Burden Interstate Commerce—And Even If It Did, That Burden Would Not Exceed The Benefits To San Francisco. ........................................................................ 15

             1.    Because Plaintiff Has Failed To Allege A Substantial Burden On Interstate Commerce, *Pike* Balancing Is Not Required. ............... 16

             2.    The Fur Products Ordinance Serves Important Local Interests And Its Putative Benefits Outweigh Any Burden On Interstate Commerce. ..................................................................................... 20

CONCLUSION............................................................................................................... 24

1

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Antilles Cement Corp. v. Acevedo Vila*
    408 F.3d 41 (1st Cir. 2005) ................................................................. 14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................. 6, 22

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013) ................................................. passim

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
    459 U.S. 519 (1983) ................................................................. 7

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1988) ................................................. 6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................. 6

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
    476 U.S. 573 (1986) ................................................................. 13

*C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*
    511 U.S. 383 (1994) ................................................................. 13, 19

*Cavel Int'l, Inc. v. Madigan*
    500 F.3d 551 (7th Cir. 2007) ................................................. 3, 17, 22

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (9th Cir. 2015) ............................................. passim

*Citizens for Honesty and Integrity in Regional Planning v. Cty. of San Diego*
    399 F.3d 1067 (9th Cir. 2005) ............................................. 9, 10

*Clapper v. Amnesty Int'l USA et al.*
    568 U.S. 398 (2013) ................................................................. 11

*Congress of Indus. Org. v. McAdory*
    325 U.S. 472 (1945) ................................................................. 10

*Corrie v. Caterpillar, Inc.*
    503 F.3d 974 (9th Cir. 2007) ................................................. 6

*Cresenzi Bird Importers, Inc. v. State of N.Y.*
    658 F. Supp. 1441 (S.D.N.Y. 1987) ................................... 22

*CTS Corp. v. Dynamics Corp. of Am.*
    481 U.S. 69 (1987) ................................................................. 17, 18, 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Empacadora de Carnes de Fresnillo, S.A. v. Curry*
    476 F.3d 326 (5th Cir. 2007) ........................................................3, 13, 21, 22

*Exxon Corp. v. Governor of Md.*
    437 U.S. 117 (1978)..............................................................................18, 19

*Gen. Motors Corp. v. Tracy*
    519 U.S. 278 (1997)...................................................................................16

*Great Atl. & Pac. Tea Co. v. Cottrell*
    424 U.S. 366 (1976))..................................................................................20

*Healy v. Beer Inst.*
    491 U.S. 324 (1989)..............................................................................13, 15

*Huron Portland Cement Co. v. Detroit*
    362 U.S. 440 (1960)...................................................................................19

*Hyde Park Partners L.P. v. Connolly*
    839 F.2d 837 (1st Cir. 1988).......................................................................18

*Knox v. Serv. Employees Int'l Union*
    567 U.S. 298 (2012)...................................................................................10

*Laird v. Tatum*
    408 U.S. 1 (1972)......................................................................................11

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
    416 F.3d 940 (9th Cir. 2005) ........................................................................7

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010) ......................................................................11

*Maine v. Taylor*
    477 U.S. 131 (1986)..............................................................................13, 14

*Md. Cas. Co. v. Pac. Coal & Oil Co.*
    312 U.S. 270 (1941)...............................................................................7, 11

*N. Am. Meat Inst. v. Becerra*
    No. 2-19-CV-08569, 2019 WL 6253701 (C.D. Cal. Nov. 22, 2019), .................22

*N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*
    850 F.3d 79 (2d Cir. 2017) ..........................................................................21

*Nat'l Ass'n of Optometrists & Opticians v. Brown*
    567 F.3d 521 (9th Cir. 2009) ......................................................................13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) .............................................................. *passim*

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
    272 F.3d 104 (2d Cir. 2001) ...................................................................19

*Nat'l Paint Coatings Ass'n v. City of Chicago*
    45 F.3d 1124 (7th Cir. 1995) .................................................................20

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*
    511 U.S. 93 (1994) ................................................................................14

*Pac. Nw. Venison Producers v. Smitch*
    20 F.3d 1008 (9th Cir. 1994) ...................................................... *passim*

*Paulson v. CNF, Inc.*
    559 F.3d 1061 (9th Cir. 2009) .................................................................6

*Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*
    768 F.3d 1037 (9th Cir. 2014) ...............................................................15

*Pieczenik v. Comm'r N.J. Dep't of Envt'l Protection*
    715 F. App'x 205 (3d Cir. 2017) ............................................................10

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) ..................................................................... *passim*

*Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*
    40 F.3d 1454 (3d Cir. 1994) ..................................................................10

*Principal Life Ins. Co. v. Robinson*
    394 F.3d 665 (9th Cir. 2005) .................................................................12

*Pub. Util. Comm'n of State of Cal. v. FERC*
    100 F.3d 1451 (9th Cir. 1996) ...............................................................11

*Pustell v. Lynn Pub. Sch.*
    18 F.3d 50 (1st Cir. 1994) ...............................................................10, 11

*Rocky Mountain Farmers Union v. Corey*
    730 F.3d 1070 (9th Cir. 2013) ..........................................................14, 18

*Rocky Mountain Farmers Union v. Corey*
    913 F.3d 940 (9th Cir. 2019) .................................................................18

*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2019) .................................................................14

*Safari Club Int'l v. Becerra*
    702 F. App'x 607 (9th Cir. 2017) ..................................................3, 15, 20

*Sellers v. Regents of Univ. of Cal.*
    432 F.2d 493 (9th Cir. 1970) ..............................................................9, 12

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ...................................................................................7

*Steffel v. Thompson*
415 U.S. 452 (1974) ...................................................................................11

*UFO Chuting of Haw., Inc. v. Smith*
508 F.3d 1189 (9th Cir. 2007) ...................................................................................20

*Union Pac. R.R. Co. v. Sacks*
309 F. Supp. 3d 908 (W.D. Wa. 2018) ...................................................................................9

*United States v. Salerno*
481 U.S. 739 (1987) ...................................................................................14

*United States v. Stevens*
559 U.S. 460 (2010) ...................................................................................21

*Wash. State Grange v. Wash. State Republican Party*
552 U.S. 442 (2008) ...................................................................................14

*White Mountain Apache Tribe v. Williams*
810 F.2d 844 (9th Cir. 1985) ...................................................................................9

**State Cases**
*Viva! Int'l Voice for Animals v. Adidas Promotional Retail Operations, Inc.*
41 Cal. 4th 929 (2007) ...................................................................................22

**Constitutional Provisions**
U.S. Const., art. I, § 8, cl. 3 [Commerce Clause] ................................................ *passim*

U.S. Const., amend. I ...................................................................................11

**Federal Statutes**
28 U.S.C. §§ 2201, *et seq.* [Declaratory Judgment Act] ...................................................1

**State Statutes & Codes**
Cal. Comm. Code
§ 2102 ...................................................................................8
§§ 2106(1) ...................................................................................8
§ 2401 ...................................................................................8
§ 24102(2)(a) ...................................................................................8

**Rules**
Fed. R. Civ. Proc.
12(b)(1) ...................................................................................5
12(b)(6) ...................................................................................1, 5, 6

**San Francisco Statutes, Codes & Ordinances**
S.F. Board of Supervisor Ordinance No. 171317
[San Francisco Animal Fur Products Ordinance] ...................................................1, 2, 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

S.F. Health Code

§ 1D.................................................................................................3

§ 1D.2.......................................................................................2, 21, 22

§ 1D.2(a)..................................................................................4, 21

§ 1D.2(c)...........................................................................................4

§ 1D.2(d)..........................................................................................21

§ 1D.2(e)...........................................................................................4

§ 1D.2(f)............................................................................................4

§ 1D.2(i)............................................................................................4

§ 1D.3................................................................................................3

§ 1D.4...........................................................................................3, 15

§ 1D.4(a)..................................................................................2, 7, 8, 15

§ 1D.4(c)...........................................................................................4

§ 1D.4(e)...........................................................................................4

§ 1D.5(a)...........................................................................................4

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

TO PLAINTIFF, PLAINTIFF'S ATTORNEYS OF RECORD AND TO THIS COURT:

3       Please take notice that at 1:30 p.m. on Thursday, July 2, 2020, or as soon thereafter as the

4   matter may be heard, before the Honorable Richard Seeborg, of the United States District Court for the

5   Northern District of California, located at 450 Golden Gate Avenue, Courtroom 3, 17th Floor, San

6   Francisco, California 94102, Defendants CITY AND COUNTY OF SAN FRANCISCO and DR.

7   GRANT COLFAX, in his official capacity as Director of the San Francisco Department of Public

8   Health ("Defendants"), will move, and hereby move, to dismiss Plaintiff's First Amended Complaint

9   for Declaratory and Injunctive Relief in its entirety and without leave to amend, and to dismiss the

10   City and County of San Francisco and Dr. Grant Colfax as defendants in this action, pursuant to Rule

11   12(b)(6) of the Federal Rules of Civil Procedure because the First Amended Complaint fails to state a

12   claim upon which relief can be granted.

13       This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the

14   accompanying Request for Judicial Notice, the papers and pleadings on file in this action, and upon

15   such other and further matters as may be considered by the Court at the hearing on the motion.

16

## STATEMENT OF ISSUES TO BE DECIDED

17       1.       Whether Plaintiff has failed to state a claim under the Declaratory Judgment Act, 28

18   U.S.C. §§ 2201 *et seq.*, for a declaratory judgment that the San Francisco Animal Fur Products

19   Ordinance does not apply to fur products that are shipped from locations outside San Francisco to

20   persons in San Francisco.

21       2.       Whether Plaintiff has failed to state a claim that the San Francisco Animal Fur Products

22   Ordinance violates the federal dormant Commerce Clause under the balancing test set forth in *Pike v.*

23   *Bruce Church, Inc.*, 397 U.S. 137 (1970).

24

25

## MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

26

27       To promote animal welfare, protect the environment, and express condemnation of a practice

28   that unnecessarily takes the lives of tens of millions of animals every year, the San Francisco Animal

Fur Products Ordinance makes it unlawful to "sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute" most animal fur products "by any means in San Francisco." S.F. Health Code § 1D.4(a). The Ordinance reflects the San Francisco Board of Supervisors' considered judgment that the harvesting and sale of animal fur products is "damaging to the environment," "consumes significant quantities of energy," and contributes to the "unnecessary killing and cruel treatment of animals." *Id.* § 1D.2.

Plaintiff International Fur Trade Federation ("Plaintiff"), a trade association headquartered in the United Kingdom, seeks to enjoin the City and County of San Francisco[1] from enforcing the San Francisco Animal Fur Products Ordinance on the ground that it violates the dormant Commerce Clause of the U.S. Constitution. Plaintiff alleges that the Ordinance's total ban—subject to certain exceptions—on fur sales in San Francisco substantially burdens interstate commerce without furthering a legitimate local interest. Plaintiff further argues that notwithstanding the Ordinance's limitation to sales that occur "in San Francisco," the City may enforce the Ordinance against out-of-state internet-based transactions—despite the City's express statement to the contrary. Plaintiff seeks a declaratory judgment that the Ordinance does not extend this far.

Plaintiff fails to state a claim for declaratory or injunctive relief. The San Francisco Animal Fur Products Ordinance does not implicate the dormant Commerce Clause, let alone violate it, as controlling Ninth Circuit precedent makes clear. The Ordinance is one of many laws that States and localities have passed in recent years prohibiting the sale or manufacture of products that compromise animal welfare and threaten the environment. Various other jurisdictions have enacted laws banning animal products ranging from horsemeat to shark fins to mountain lion parts. The Ninth Circuit and other courts have uniformly upheld these bans against dormant Commerce Clause challenges raising near-identical claims to the ones Plaintiff makes here. *See, e.g.*, *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015) (shark fins); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) (foie gras); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994) ("deleterious exotic wildlife"); *see also Safari Club Int'l v. Becerra*, 702 F.

---

[1] This brief uses "Defendants" to refer to the named defendants in the case and "San Francisco" or "the City" to refer to the City and County of San Francisco more generally.

App'x 607 (9th Cir. 2017) (mountain lion parts); *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551 (7th Cir. 2007) (horsemeat); *Empacadora de Carnes de Fresnillo, S.A. v. Curry*, 476 F.3d 326 (5th Cir. 2007) (horsemeat).  This Court should do the same, and dismiss Plaintiff's dormant Commerce Clause claims.

Plaintiff's request for declaratory relief should also be dismissed.  The Director of San Francisco's Department of Public Health—who is charged with enforcing the San Francisco Animal Fur Products Ordinance—has stated that the Department will not enforce the Ordinance against the internet-based (or similar) transactions Plaintiff describes.  In light of this directive, Plaintiff does not and cannot show a dispute about the Ordinance's meaning that this Court needs to resolve.  There is no controversy between the parties over the Ordinance's meaning, and therefore no basis for this Court to exercise declaratory judgment jurisdiction over this claim.

Defendants therefore respectfully request that this Court dismiss Plaintiff's First Amended Complaint in its entirety, without leave to further amend.

**BACKGROUND**

**I.    The San Francisco Animal Fur Products Ordinance**

In April 2018, the San Francisco Board of Supervisors voted to approve the San Francisco Animal Fur Products Ordinance ("Fur Products Ordinance"), which amended the San Francisco Health Code to ban the sale and manufacture of animal fur products in San Francisco.  S.F. Health Code Article 1D, also set forth in Defs.' Request for Judicial Notice in Support of Motion to Dismiss ("RJN") Exh. A.  The Fur Products Ordinance went into effect on January 1, 2019, and made it unlawful to manufacture, sell, offer for sale, display for sale, give, donate, or otherwise distribute fur products in San Francisco.  *Id.* § 1D.4.  The Fur Products Ordinance defines "fur" as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state."  *Id.* § 1D.3.  The Ordinance's restrictions apply to "any article of clothing or covering for any part of the body, or any fashion accessory" made of fur.  *Id.*

Although the Fur Products Ordinance went into effect in January 2019, it gave entities engaged in the business of selling fur products an additional year to come into full compliance.  Specifically, entities who purchased or obtained fur products before March 20, 2018 could sell or

distribute those products until December 31, 2019.  S.F. Health Code § 1D.4(e).  The Ordinance also contains exemptions for certain fur products and certain fur distributors.  For instance, the Ordinance does not apply to used fur products sold or distributed by non-profit organizations, second-hand stores, or people not normally engaged in the business of selling fur products.  *Id.* § 1D.4(c).  It also exempts products made from the fur of animals obtained through certain California Fish and Game Code trapping licenses, as well as products made exclusively from used fur products.  *Id.*

As the findings cited in support of the Fur Products Ordinance demonstrate, the Board of Supervisors enacted the law to further a number of objectives related to public health, animal welfare, and the environment.  The findings state that while fur products were at one point necessary to "provide protective clothing" and "warmth," "civilizations and technology have developed such that fur is less of a necessity and more of a luxury."  S.F. Health Code § 1D.2(a).  "More than 50 million animals are violently killed for their fur every year," with "[m]ore than 85 [percent] of the pelts in the world's fur trade com[ing] from fur farms."  *Id.* § 1D.2(c).  The findings note that "[f]ur farming can be damaging to the environment and contributes to water and air pollution," in part because "[f]ur processing often involves use of harmful chemicals including chromium and formaldehyde."  *Id.* § 1D.2(e).  Further, the findings determine that "[f]ur farming also consumes significant quantities of energy.  The amount of energy required to produce a coat made of real fur from ranch-raised animal skins is over 15 times that needed to produce a fake fur garment."  *Id.* § 1D.2(f).  The findings thus conclude that:

> The sale of fur products in San Francisco is inconsistent with the City's ethos of treating all living beings, humans and animals alike, with kindness.  In light of the wide array of faux fur and other alternatives for fashion and apparel, the demand for fur products does not justify the unnecessary killing and cruel treatment of animals.  Eliminating the sale of fur products in San Francisco will promote community awareness of animal welfare, bolster the City's stance against animal cruelty, and, in turn, foster a more humane environment in San Francisco.

*Id.* § 1D.2(i).

The Fur Products Ordinance gives the Director of the San Francisco Department of Public Health ("DPH") authority to enforce the Ordinance.  S.F. Health Code § 1D.5(a).  The Ordinance empowers the Director to issue rules, regulations, or guidelines "necessary or appropriate for the implementation and enforcement" of the Fur Products Ordinance.  *Id.*  Consistent with this authority,

the Director of DPH has published a page on the official DPH website titled "Animal Fur Products Frequently Asked Questions," ("FAQs") which is designed "to address some of the most common questions about its enforcement of the Ordinance."  RJN Exh. B.

## II.   The Allegations In The First Amended Complaint

On January 13, 2020, Plaintiff filed this lawsuit.  Dkt. No. 1.  Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) on March 16, 2020.  Dkt. No. 15.  In response, Plaintiff elected to amend its complaint.  Dkt. No. 25 (First Amended Complaint ("FAC")).  This Court denied Defendants' initial Rule 12 motion without prejudice due to the filing of an amended complaint.  Dkt. No. 26.

The FAC contains four causes of action.  Count One seeks a declaratory judgment that San Francisco may not enforce the Fur Products Ordinance against parties to a transaction in which a fur product is shipped to a San Francisco address from a location outside San Francisco.  FAC ¶¶ 38-52. Count One relies on a former version of DPH's FAQs to argue that DPH intends to—or may at some point in the future seek to—enforce the Ordinance with respect to products purchased from an out-of-state retailer's website and shipped to an address in San Francisco.  *Id.* ¶ 43.  Counts Two through Four all assert claims under the dormant Commerce Clause to the U.S. Constitution.  *Id.* ¶¶ 53-76. Count Two asserts that the Fur Products Ordinance violates the dormant Commerce Clause because it creates a substantial burden on interstate and foreign commerce without a "legitimate local purpose." *Id.* ¶¶ 53-62.  Count Three alleges that the Fur Products Ordinance imposes a burden on interstate commerce that exceeds any "putative local benefits."  *Id.* ¶¶ 63-69.  And Count Four asserts that the Ordinance creates a substantial burden on foreign commerce that exceeds any "putative local benefits."  *Id.* ¶¶ 70-76.  Plaintiff seeks a declaration that the Fur Products Ordinance "violates the Commerce Clause as an unconstitutional burden on interstate and foreign commerce that clearly exceeds any putative local benefits" and a permanent injunction enjoining Defendants from enforcing the Ordinance.  *Id.* at 21-22.

Throughout its FAC, Plaintiff largely repeats the following allegations with respect to its dormant Commerce Clause claims:  Plaintiff alleges that the Fur Products Ordinance burdens interstate and foreign commerce by placing a "total ban" on commerce in fur products in San Francisco.  FAC

¶¶ 33, 56, 65, 68, 72, 75. Plaintiff further alleges that the Ordinance does not serve a legitimate

interest, or further local benefits, because the Ordinance is merely an "exercise in virtue-signaling" (*id.*

¶¶ 35, 60, 66, 68, 73), that will not actually enhance the welfare of animals in San Francisco (*id.* ¶ 59).

Plaintiff also generally alleges that the Ordinance will have impermissibly far-reaching effects (*id.* ¶ 9

("And San Francisco even purports to ban the distribution in San Francisco of fur products sold

*outside* the city—whether in neighboring Oakland or faraway Oslo—thus further interfering with

interstate and foreign commerce.")), and that the Ordinance will "place a dam in the stream of

interstate and foreign commerce of tens of millions of dollars of products" (*id.* ¶ 10; *see also id.* ¶ 29

(alleging that "fur products may not even be transported through the city, whether through the Port of

San Francisco or even on a UPS truck")). In addition, Plaintiff repeatedly alleges that San Francisco

could have taken different steps to express its disapproval of the fur trade, such as issuing "a resolution

stating that its Board of Supervisors disapproves of the purchase of fur products" (*id.* ¶ 10), or

"offer[ing] public education about fur products that would reflect its dislike of them" (*id.* ¶¶ 68, 75).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the

complaint. The complaint must allege facts establishing "a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted). Dismissal may be warranted based on either the "lack of a cognizable legal theory" or

on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In evaluating a Rule 12(b)(6) motion, the court accepts the factual allegations as true, and

construes them in the light most favorable to the plaintiff. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974,

977 (9th Cir. 2007). The court is not, however, required to assume the truth of legal conclusions

merely because they are cast in the form of factual allegations. *Paulson v. CNF, Inc.*, 559 F.3d 1061,

1071 (9th Cir. 2009). Similarly, a court need not "accept as true allegations that contradict matters

properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979,

988 (9th Cir. 2001).  Further, a court must not "assume that the [plaintiff] can prove facts that it has

not alleged or that defendants have violated . . . laws in ways that have not been alleged." *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  A court

need not permit an attempt to amend to cure a deficient complaint if "it is clear that the complaint

could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d

940, 946 (9th Cir. 2005).

## ARGUMENT

I. **Plaintiff Is Not Entitled To A Declaratory Judgment Because There Is No Dispute Between The Parties About The Ordinance's Meaning (Count One).**

Although the heart of Plaintiff's claims concerns the Fur Products Ordinance's

constitutionality, Plaintiff also seeks, in the alternative, a declaration regarding the meaning and scope

of the Ordinance itself.  FAC ¶¶ 38-52.  But declaratory judgment jurisdiction is only appropriate

when "the facts alleged, under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance

of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941).  This

standard is not met here, because there is no dispute between the parties about the Ordinance's scope.

Plaintiff seeks a declaration that the Fur Products Ordinance does not apply to internet-based

fur product transactions—or transactions using a similar mode of communication—where a product is

shipped from an out-of-state retailer to a person in San Francisco.  FAC ¶¶ 41, 52.  Plaintiff claims—

correctly—that the Fur Products Ordinance by its terms applies only to fur products that are sold or

otherwise distributed in San Francisco.  *Id.* ¶¶ 40-41; *see also* S.F. Health Code § 1D.4(a) (making it

unlawful "to sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute a Fur

Product by any means *in San Francisco*") (emphasis added).  Relying on portions of the California

Uniform Commercial Code, Plaintiff asserts that where a customer purchases a product from an out-

of-state retailer over the internet, title to that product passes outside of San Francisco at the moment

the internet transaction takes place.  FAC ¶ 46.[2]  Plaintiff thus claims that as a matter of law these sales

occur outside of San Francisco and are not subject to the Fur Products Ordinance.  *Id.*

---

[2] Plaintiff's declaratory relief claim should be dismissed on the merits even if there were an
actual dispute about the Fur Products Ordinance's reach.  Plaintiff relies on the California Uniform

1  To show that there is a putative dispute between the parties on this topic, Plaintiff cites a

2  former version of DPH's online FAQs.  FAC ¶ 43.  Plaintiff acknowledges that this version of the

3  FAQs is no longer in effect.  *Id.* ¶ 47.  The relevant portion of the earlier version of the FAQs read as

4  follows:

5  **5.  Would a retailer that is not physically located in the City violate the
   Ordinance if a customer purchases a fur product through the retailer's
6  website and the fur product is physically distributed to the City?**

7  Yes.  Article 1D section 1D.4(a) prohibits the distribution of a fur product by
   any means in the City.  A retailer that sells a fur product and arranges for a fur
8  product to be distributed to or from the City, violates section 1D.4(a) for
   distributing a fur product in the City.

9  *Id.* ¶ 43.

10  But DPH has subsequently modified the Fur Products Ordinance FAQs to clarify its

11  enforcement position and to resolve uncertainties about its interpretation of the Ordinance.  RJN Exh.

12  B; *see also* FAC ¶ 47.  The FAQs clarify that DPH will not enforce the Ordinance against retailers

13  with no physical presence in the City.  Thus, when a person or entity purchases a fur product over the

14  internet—or through a similar means of communication—from a retailer based outside the City, DPH

15  will not enforce the Fur Products Ordinance against them or the retailer itself, even if the fur product is

16  shipped to a San Francisco address.  The revised FAQ states as follows:

17  **5.  Does the Ordinance prohibit the sale of fur products purchased through
   a retailer's website and physically distributed to a location in San
18  Francisco?**

19  Article 1D section 1D.4(a) prohibits the sale or distribution of a fur product by
   any means in the City, directly or indirectly, including through a retailer's

20

21  Commercial Code (California UCC) to suggest that a fur product sale takes place "outside San
   Francisco" if title passes outside San Francisco.  FAC ¶ 46 (citing Cal. Comm. Code §§ 2106(1) ("a
22  'sale' consists in passing of title from the seller to the buyer for a price") & 24102(2)(a) ("If the
   contract requires or authorizes the seller to send the goods to the buyer but does not require him to
23  deliver them at designation, title passes to the buyer at the time and place of shipment."")).  But
   Plaintiff's reliance on the California UCC is incorrect.

24  Whether a product is sold "in San Francisco" for purposes of the Fur Products Ordinance is not
   governed by the California UCC.  The California UCC by its express terms does not "impair or repeal
25  any statute regulating sales to consumers."  Cal. Comm. Code § 2102.  That is because the California
   UCC addresses the "rights, obligations and remedies" between buyers and sellers in transactions to sell
26  goods, but *does not* govern what can be sold in the first place.  *Id.* § 2401.  The Fur Products
   Ordinance *does* govern what can be sold.  It is a law "regulating sales to consumers" that is expressly
27  outside the California UCC's scope.  *Id.* § 2102.  The California UCC's provisions regarding the
   passage of title are therefore irrelevant and do not bear on the proper interpretation of the Fur Products
28  Ordinance.

website.  A retailer with a physical location in the City that sells or distributes a fur product to any location, including to an address in the City, violates section 1D.4(a) for selling or distributing a fur product in the City.  The Department is not enforcing the ordinance against retailers with no physical presence in the City.  If the Department decides in the future to pursue enforcement against retailers with no physical presence in the City, the Department will provide the public with advance notice regarding the Department's change in enforcement policy.

RJN Exh. B; *see also* FAC ¶ 47.  As Plaintiff acknowledges, this interpretation is consistent with the views of other City departments.  FAC ¶ 45 (citing San Francisco Controller report from March 2018 stating that the Ordinance does not affect out-of-town and online sales).

DPH's statement regarding its enforcement policy and practice establishes that there is no dispute for this Court to resolve.  DPH has made clear it will not enforce the Fur Products Ordinance against customers using the internet—or other similar means of communication—to "have a fur product sold elsewhere in the world shipped to him or her . . . in San Francisco," as Plaintiff alleges. FAC ¶ 43.  There is consequently no disagreement between the parties about whether the Ordinance applies to "products that are shipped to persons in San Francisco . . . from a seller outside San Francisco" (*id.* ¶ 52), and no need for the Court's involvement on this issue.  Both the Ninth Circuit and other courts have repeatedly recognized that declaratory relief is improper in these circumstances. *See, e.g., Citizens for Honesty and Integrity in Regional Planning v. Cty. of San Diego*, 399 F.3d 1067 (9th Cir. 2005) (finding there to be 'no case or controversy' where plaintiff did not allege that "County intends to employ" a challenged provision against the plaintiff); *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 856 (9th Cir. 1985) (finding declaratory judgment improper where State had made clear "that it did not intend to impose any of the disputed taxes on" the plaintiff); *Union Pac. R.R. Co. v. Sacks*, 309 F. Supp. 3d 908, 922 (W.D. Wa. 2018) (granting motion to dismiss declaratory judgment claim regarding interpretation of state law on breaks and meal periods where state defendant had explained it will "not enforce its break rule" in the challenged manner).  Given DPH's clarified position, there is no "present danger" the Ordinance will be enforced against these types of transactions, and therefore "no cause or controversy of sufficient immediacy or definiteness" to warrant a declaratory judgment.  *Sellers v. Regents of Univ. of Cal.*, 432 F.2d 493, 500 (9th Cir. 1970).

1    Plaintiff concedes that DPH has advised it will not enforce the Fur Products Ordinance in the

2    manner Plaintiff describes (FAC ¶ 47), but nonetheless makes two arguments why this Court should

3    still decide its request for declaratory relief.  Both arguments are wrong.

4    First, Plaintiff argues that its request for declaratory relief is not "moot" because San Francisco

5    could begin enforcing the Ordinance in the challenged manner at any point.  FAC ¶ 48.  Plaintiff

6    appears to attempt to invoke the voluntary cessation exception to the mootness doctrine, under which a

7    court can still evaluate the legality of a particular governmental practice even when the government

8    has ceased engaging in it.  *Knox v. Serv. Employees Int'l Union*, 567 U.S. 298, 307 (2012).  But this

9    argument misses the point.  The question is not whether Plaintiff's challenge to a particular practice is

10   moot; rather, it is whether Plaintiff can show the "actual antagonistic assertion of rights" necessary to

11   invoke this Court's declaratory judgment jurisdiction.  *See Congress of Indus. Org. v. McAdory*, 325

12   U.S. 472, 475 (1945).  As various other courts have recognized, a plaintiff cannot make this showing

13   when a government entity has stated that it will not enforce a law in the challenged manner.  *See* p. 9,

14   *supra*; *see also Pieczenik v. Comm'r N.J. Dep't of Envt'l Protection*, 715 F. App'x 205, 206 (3d Cir.

15   2017) (holding that plaintiff could not seek declaratory relief where "defendants had expressly

16   disavowed that any enforcement action would be taken against Pieczenik based on the provisions of

17   the [challenged administrative consent order]"); *Pustell v. Lynn Pub. Sch.*, 18 F.3d 50, 52 (1st Cir.

18   1994) (stating that there can be no "actual, ongoing controversy" where "the record indicated that the

19   town of Lynn never planned to take action against the Pustells, and had never taken enforcement

20   action against other parents in a similar situation").  This is because declaratory relief is inappropriate

21   unless there is a "substantial threat of real harm . . . .  Where intervening events remove the possibility

22   of harm, the court must not address the now-speculative controversy."  *Presbytery of N.J. of Orthodox*

23   *Presbyterian Church v. Florio*, 40 F.3d 1454, 1463, 1471 (3d Cir. 1994) (affirming that church could

24   not seek declaratory relief where government stated it "has no intention to prosecute . . . churches").

25   Contrary to Plaintiff's allegation (FAC ¶ 48), the "mere possibility of future local regulatory action . . .

26   is not sufficient for declaratory judgment jurisdiction."  *Citizens for Honesty and Integrity in Regional*

27   *Planning*, 399 F.3d at 1067.  Plaintiff's unfounded speculation that San Francisco could change its

28

1   enforcement position is not enough to show a "substantial controversy, between parties having adverse

2   legal interests, of sufficient immediacy" to warrant declaratory relief.  *Md. Cas. Co.*, 312 U.S. at 274.

3   In any event, even if the mootness doctrine did play some role in this case, voluntary cessation

4   would not apply because San Francisco never *ceased* engaging in any *challenged conduct*.  Plaintiff

5   does not, and cannot, allege that San Francisco ever actually *enforced* the Fur Products Ordinance

6   against any internet-based transactions, let alone transactions occurring with out-of-state parties.  This

7   is therefore not a case in which San Francisco, in response to litigation, ceased enforcing a law in a

8   challenged manner.  *See Pub. Util. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir.

9   1996) (voluntary cessation refers to the "cessation of allegedly illegal conduct") (internal quotation

10  marks omitted).  At most, the allegations show that DPH clarified and reconciled conflicting

11  statements about the Fur Products Ordinance's scope—conflicting statements that Plaintiff itself

12  emphasizes.  FAC ¶¶ 43-45.  Because San Francisco has never actually enforced the Ordinance in the

13  manner Plaintiff alleges, voluntary cessation does not apply.  *See Pustell*, 18 F.3d at 52.

14  Second, Plaintiff claims that declaratory relief is necessary because Plaintiff's members still

15  subjectively "fear prosecution from Defendants" for shipping out-of-state products to San Francisco

16  residents (FAC ¶ 48)—despite DPH's clear statement that it will not enforce the Fur Products

17  Ordinance in this way (*id.* ¶ 47).  But this is not a basis for Plaintiff to seek declaratory relief.

18  Threatened enforcement, and consequent injury, must not be merely "possible" but rather "certainly

19  impending" to support declaratory relief.  *Clapper v. Amnesty Int'l USA et al.*, 568 U.S. 398, 401

20  (2013).  A person's "subjective belief that he may now or in the future be prosecuted" under a

21  particular law does not "authoriz[e] the invocation of federal declaratory judgment jurisdiction."

22  *Steffel v. Thompson*, 415 U.S. 452, 475 (1974) (Stewart, J., concurring).  Even in the First Amendment

23  context—where the prospect of chilled speech is far more constitutionally significant than the

24  possibility that Plaintiff's members "cannot engage in any meaningful business planning" (FAC

25  ¶ 48)—the Supreme Court has held that "[a]llegations of a subjective 'chill' are not an adequate

26  substitute for a claim of specific present objective harm or a threat of specific future harm."  *Laird v.*

27  *Tatum*, 408 U.S. 1, 13-14 (1972); *see also Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010)

28  (plaintiff's allegation that his "speech was chilled by the existence of [a] sexual harassment policy"

was insufficient to allow him to challenge that policy, where the defendant "had not taken any steps to enforce the sexual harassment policy against" him).  Plaintiff's members' subjective, unsubstantiated fears that DPH will enforce the Ordinance in a way the City has expressly disavowed do not create a controversy where one does not otherwise exist.

"[D]eclaratory relief cannot be granted where the alleged controversy is hypothetical," as it is with respect to the declaratory judgment Plaintiff seeks.  *Sellers*, 432 F.2d at 500.  Plaintiff's request for a declaratory judgment should accordingly be dismissed.  *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (stating that a district court must determine at the outset whether a plaintiff has identified an actual case or controversy sufficient to request declaratory relief).

## II.   The Fur Products Ordinance Satisfies The Dormant Commerce Clause (Counts Two, Three, and Four).

Plaintiff's remaining causes of action are various statements of Plaintiff's contention that the Fur Products Ordinance facially violates the dormant Commerce Clause.  Plaintiff asserts that because the Fur Products Ordinance effects a "total ban" on fur products commerce in San Francisco, it necessarily imposes a substantial burden on interstate commerce.  *E.g.*, FAC ¶ 56.  Plaintiff argues that this burden is excessive because it "does not advance any legitimate local purpose" or further any "putative local benefits" in promoting animal welfare or conserving the environment.  *Id.* ¶¶ 58-76.

The FAC consists of little more than criticisms of the purposes and effects of the Fur Products Ordinance, allegations regarding possible harm to the business interests of individuals engaged in the fur trade, and musings about various other ways the City could purportedly have expressed its views on the sale of fur products.  These allegations do not state plausible claims—facial or otherwise—for relief under the dormant Commerce Clause.  Every court to have considered similar allegations, in dormant Commerce Clause challenges to product bans, has rejected them.  *See* pp. 2-3, *supra*.  This Court should do the same and dismiss the FAC in its entirety without leave for Plaintiff to further amend.

### A.   Legal Standard

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It includes an implied limitation on the

1    regulatory authority of the States and localities, often referred to as the dormant Commerce Clause.

2    *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).  The purpose of the dormant Commerce Clause is to

3    "prohibit state or municipal laws whose object is local economic protectionism, laws that would excite

4    those jealousies and retaliatory measures the Constitution was designed to prevent." *C&A Carbone,*

5    *Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994).  Its restrictions are "by no means

6    absolute" and "States retain authority under their general police powers to regulate matters of

7    legitimate local concern, even though interstate commerce may be affected." *Maine v. Taylor*, 477

8    U.S. 131, 138 (1986) (citations and quotation marks omitted).  "As long as a State does not needlessly

9    obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad

10   regulatory authority to protect the health and safety of its citizens and the integrity of its natural

11   resources." *Id.* at 151.

12        The Supreme Court has adopted a two-tiered approach to determine whether a law violates the

13   dormant Commerce Clause.  *Ass'n des Eleveurs*, 729 F.3d at 948 (citing *Brown-Forman Distillers*

14   *Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986)).  A statute is essentially per se invalid

15   if it directly regulates or discriminates against interstate commerce or if its effect is to favor in-state

16   economic interests over out-of-state interests.  *Id.*; *see also Nat'l Ass'n of Optometrists & Opticians v.*

17   *Brown*, 567 F.3d 521, 524 (9th Cir. 2009).  But if a statute has neither of those effects, a different test

18   applies.  The court must first assess whether the statute, although nondiscriminatory, nonetheless

19   imposes a "substantial burden on interstate commerce." *Nat'l Ass'n of Optometrists & Opticians v.*

20   *Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012).  If so, the court must apply the balancing test set forth in

21   *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  That text examines "whether the State's interest is

22   legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-*

23   *Forman*, 476 U.S. at 578-79; *see also Pike*, 397 U.S. at 142 ("Where the statute regulates even-

24   handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only

25   incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in

26   relation to the putative local benefits.").[3]

27        [3] Plaintiff's Foreign Commerce Clause allegations do not change this analysis.  FAC ¶¶ 54, 70-

28   76.  Courts in other circuits have held that product bans like the Fur Products Ordinance do not
     implicate the Foreign Commerce Clause at all. *See, e.g., Empacadora de Carnes de Fresnillo, S.A. de*

1    Because Plaintiff has brought a facial challenge to the Fur Products Ordinance, its claims must

2    satisfy an additional hurdle: the requirement that Plaintiff "establish that no set of circumstances exists

3    under which the [Ordinance] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see

4    also Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) ("To succeed on her facial

5    challenge under the dormant Commerce Clause, Rosenblatt must establish that no set of circumstances

6    exists under which the ordinance would be valid.").  To support a finding of facial unconstitutionality,

7    Plaintiff cannot prevail by suggesting that some future hypothetical application of the Ordinance may

8    create constitutional problems.  Rather, Plaintiff must show that the Ordinance is unconstitutional in

9    all its applications.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450

10   (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the

11   statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

**B.      Plaintiff Concedes That The Fur Products Ordinance Does Not Discriminate
         Against Interstate Commerce.**

13        Plaintiff does not allege, nor could it legitimately do so, that the Fur Products Ordinance

14   discriminates against interstate commerce or regulates extraterritorially.  For purposes of the dormant

15   Commerce Clause, discrimination "simply means differential treatment of in-state and out-of-state

16   economic interests that benefits the former and burdens the latter."  *Or. Waste Sys., Inc. v. Dep't of

17   Envtl. Quality*, 511 U.S. 93, 99 (1994).  A law is unconstitutional if it "discriminates against out-of-

18   state entities on its face, in its purpose, or in its practical effect . . . unless it 'serves a legitimate local

19   purpose, and this purpose could not be served as well by available nondiscriminatory means.'"  *Rocky

20   Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Maine*, 477 U.S. at

21   138).

22        The Fur Products Ordinance does not privilege in-state interests or single out out-of-state

23   commerce for burdensome treatment.  Rather, the Ordinance prohibits—subject to limited

---

25   *C.V.*, 476 F.3d at 335 (holding that state law prohibiting the processing, sale, or transfer of horsemeat
26   for human consumption "does not implicate the Foreign Commerce Clause as statutes placing import
     and export restrictions do").  To the extent the Foreign Commerce Clause is relevant, this Court should
     analyze Plaintiff's Foreign Commerce Clause claims under the same framework as the dormant
27   domestic Commerce Clause claims.  *See Antilles Cement Corp. v. Acevedo Vila*, 408 F.3d 41, 46 (1st
     Cir. 2005) ("Although the language of dormant Commerce Clause jurisprudence most often concerns
28   interstate commerce, essentially the same doctrine applies to international commerce.").

exceptions—the sale, offer for sale, display for sale, trade, gift, donation, or other distribution of fur products *in San Francisco*. S.F. Health Code § 1D.4(a). The Fur Products Ordinance regulates even-handedly and treats all fur products equally, regardless of their point of origin. The Ninth Circuit has uniformly agreed that laws like this, which ban the sale or distribution of a product within a particular state or local jurisdiction, are not discriminatory. *Ass'n des Eleveurs*, 729 F.3d at 948; *Pac. Nw. Venison Producers*, 20 F.3d at 1012; *Safari Club Int'l*, 702 F. App'x at 607; *see also Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1042 (9th Cir. 2014) ("[A]n ordinance that applies across-the-board provides no geographic advantages" and thus "does not discriminate at all . . . .").

Likewise, the Fur Products Ordinance does not, either directly or indirectly, control commerce occurring wholly outside of San Francisco. To the contrary, by its terms the Fur Products Ordinance regulates conduct—for instance, the sale or other distribution of most fur products—only in San Francisco. S.F. Health Code § 1D.4. It thus is not an impermissible extraterritorial regulation. *See Healy*, 491 U.S. at 336. Again, the Ninth Circuit has spoken clearly on this point. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1145-46 (rejecting argument that "Shark Fin Law is per se invalid under the Commerce Clause because it regulates extraterritorially by curbing commerce in shark fins between California and out-of-state destinations").

### C. The Fur Products Ordinance Does Not Substantially Burden Interstate Commerce—And Even If It Did, That Burden Would Not Exceed The Benefits To San Francisco.

Instead, Plaintiff argues that under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, the Fur Products Ordinance's "substantial burden" on interstate commerce exceeds its putative local benefits and that these local benefits are illusory. FAC ¶¶ 53-76. Plaintiff's Second, Third, and Fourth Causes of Action are all variations of this argument. *Id.* But these causes of action all fail as a matter of law. Plaintiff does not allege a substantial burden on interstate commerce, as necessary to trigger *Pike*'s balancing analysis. Thus, an inquiry into the Ordinance's putative benefits is neither required nor appropriate. But even if *Pike* balancing were warranted, the Ordinance is valid because any potential burdens on interstate commerce caused by the Fur Products Ordinance are not "clearly excessive" when compared to its putative benefits.

1

   **1.**  **Because Plaintiff Has Failed To Allege A Substantial Burden On Interstate Commerce, *Pike* Balancing Is Not Required.**

2

  Plaintiff's *Pike*-related causes of action all fail at the threshold because Plaintiff is not entitled

3

to balancing under *Pike*. *Pike* balancing only comes into play after a plaintiff has first shown a

4

substantial burden on interstate commerce. *See, e.g., Ass'n des Eleveurs*, 729 F.3d at 952; *Chinatown*

5

*Neighborhood Ass'n*, 794 F.3d at 1147. Plaintiff has not done so here. The mere fact that a state or

6

local law touches upon interstate commerce is not enough for a plaintiff to invoke *Pike*. As the Ninth

7

Circuit has held, a "state regulation does not become vulnerable to invalidation under the dormant

8

Commerce Clause merely because it affects interstate commerce." *Nat'l Ass'n of Optometrists*, 682

9

F.3d at 1148. Rather, "[a] critical requirement for proving a violation of the dormant Commerce

10

Clause is that there must be a *substantial burden* on *interstate commerce*." *Id.* (emphasis in original).

11

Where a substantial burden is not shown, it is inappropriate for a court to assess the putative benefits

12

of a challenged law. *Id.*; *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 ("Our precedents,

13

however, preclude any judicial 'assessment of the benefits of [a state] law[] and the . . . wisdom in

14

adopting' it unless the statute either discriminates in favor of in-state commerce or imposes a

15

'significant burden on interstate commerce.'") (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1156)

16

(alterations in original).

17

  The Ninth Circuit has also identified two ways that plaintiffs may demonstrate that a law

18

imposes a substantial burden: (1) by showing that the law is discriminatory, or (2) by demonstrating

19

that it creates "inconsistent regulation of activities that are inherently national or require a uniform

20

system of regulation," such as transportation or professional sports leagues. *Ass'n des Eleveurs*, 729

21

F.3d at 951-52 (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148); *Chinatown Neighborhood*

22

*Ass'n*, 794 F.3d at 1146-47. Most regulations that have been struck down under *Pike* have been

23

discriminatory. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *Chinatown Neighborhood Ass'n*, 794

24

F.3d at 1146; *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997) (citing cases and

25

concluding that "several cases that have purported to apply the undue burden test (including *Pike*

26

itself) arguably turned in whole or in part on the discriminatory character of the challenged state

27

regulations"). The "small number" of other dormant Commerce Clause cases in which courts have

28

invalidated state or local statutes all involved inherently national activities. *Ass'n des Eleveurs*, 729 F.3d at 952; *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987).

Plaintiff has failed to allege a cognizable "substantial burden" under this framework. The FAC does not allege that the regulation of fur products is "inherently national," and it is not; or that the fur products trade requires a "uniform system of regulation," which it does not. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also Pac. Nw. Venison Producers*, 20 F.3d at 1014. Plaintiff does not even attempt to fit the Fur Products Ordinance into these categories.

Instead, Plaintiff repeatedly argues that because the Fur Products Ordinance effects "a total ban" on commerce in fur products in San Francisco, it necessarily "imposes a substantial burden on interstate and foreign commerce." FAC ¶¶ 56, 65, 72. Plaintiff emphasizes the alleged breadth of the Fur Products Ordinance, which Plaintiff complains "lumps together *every* fur product from *every* fur animal" and applies to "fur products from all animals raised or trapped everywhere else in the world." *Id.* ¶¶ 6, 9. But even taken as true, these allegations do not establish a viable dormant Commerce Clause claim. A "blanket prohibition" or "import ban that simply effectuates a complete ban on commerce" does not violate the dormant Commerce Clause where it "does not make distinctions based on the origin of the items." *Pac. Nw. Venison Producers*, 20 F.3d at 1012; *see also Ass'n des Eleveurs*, 729 F.3d at 948. By conceding that the Fur Products Ordinance applies equally to all fur products regardless of where they originate (FAC ¶¶ 6, 9), Plaintiff concedes that the Ordinance does not make such distinctions. As a result, the Ordinance does not substantially burden interstate commerce even by imposing a total ban on the sale or distribution of fur products in San Francisco. The Ninth Circuit, and various other circuits, have made this clear in upholding numerous other laws that impose similar jurisdiction-wide bans on the sale or distribution of particular products. *See, e.g., Ass'n des Eleveurs*, 729 F.3d at 948; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison Producers*, 20 F.3d at 1012; *see also Cavel Int'l, Inc.,* 500 F.3d at 556 (affirming Illinois statute making it illegal to import or export horse meat for human consumption). Even the complete ban on the sale of a product is not enough to suggest a substantial burden on interstate commerce.

Plaintiff's allegations that the Ordinance reaches fur products that originate elsewhere in the world, and therefore impacts companies located outside of San Francisco, does not change the analysis.  FAC ¶¶ 9-10 (alleging that the Fur Products Ordinance reaches fur from animals trapped elsewhere in the world); *id.* ¶ 30 ("For San Francisco to completely ban the sale of fur products . . . all of which come from outside San Francisco and virtually all of which come from outside California, with a large percentage originating outside the United States[,] is for San Francisco to more than substantially burden interstate and foreign commerce.").  San Francisco may seek to regulate products sold within its own market, even if doing so affects upstream out-of-state producers.  *See Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013) (holding that States and localities are "free to regulate commerce and contracts within their boundaries with the goal of influencing the out-of-state choices of market participants").  As the Ninth Circuit has held, laws with such aims are "a traditional use of the State's police power."  *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019).  Indeed, the Ninth Circuit has held that even a *complete ban* that will disproportionately affect *out-of-state* producers does not substantially burden interstate commerce.  *Ass'n des Eleveurs*, 729 F.3d at 942 (upholding California's foie gras ban notwithstanding the plaintiff's assertion that the ban would only affect out-of-state producers).  In doing so, the Ninth Circuit has relied on controlling Supreme Court authority upholding state laws that apply *entirely* to out-of-state conduct because there are no comparable in-state businesses.  *Id.* at 948 (citing *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 119-20 (1978)); *see also CTS Corp.*, 481 U.S. at 88 (rejecting the argument that a statute violates the dormant Commerce Clause where it affects a market composed primarily of out-of-state participants).  Allegations that fur products travel from out-of-state locations to San Francisco do not show that the Fur Products Ordinance substantially burdens interstate commerce.  *See Hyde Park Partners L.P. v. Connolly*, 839 F.2d 837, 844 (1st Cir. 1988) ("A state may impose certain nondiscriminatory regulations on sales of goods within its borders, even if those goods originated out of state."); *see also Pac. Nw. Venison Producers*, 20 F.3d at 1015 ("Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet this burden.").

Nor can Plaintiff show a substantial burden by pointing to the financial impact the Fur Products Ordinance may have on members of the fur industry.  Plaintiff focuses heavily on the loss of profits and income the fur industry will allegedly experience from the Fur Products Ordinance.  FAC ¶¶ 26-27.  But Plaintiff appears to confuse the possible diminution of commerce in fur products with a substantial burden on interstate commerce.  The financial impact, whatever the dollar amount may be, to Plaintiff, its members, and the fur product industry in general (*id.*), does not amount to a *substantial burden* on *interstate commerce* within the meaning of the dormant Commerce Clause.  The point of the dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-state interests—not to protect the economic interests of businesses engaged in interstate commerce.  *See Carbone*, 511 U.S. at 390.  The Supreme Court has made this clear: The dormant Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."  *Exxon Corp.*, 437 U.S. at 127-28; *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1152 & n.11 ("the dormant Commerce Clause does not protect a particular company's profits").  Rather, for "a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce."  *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1148-49.  Put another way, it is not the *amount* of burden on commerce, but the *type* of burden, and specifically whether a statute discriminates against interstate commerce or regulates in an area where national uniformity is required, that is dispositive.  *See Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448 (1960).  Plaintiff does not allege that the Fur Products Ban has these effects.  *See* pp. 14-15, *supra*; *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison Producers*, 20 F.3d at 1015.  Its allegations about the Ordinance's financial impact on the fur industry as a whole are thus insufficient as a matter of law.

The Court should also disregard Plaintiff's allegation that the Fur Products Ordinance will "place a dam in the stream of interstate and foreign commerce."  FAC ¶ 10.  Plaintiff asserts that the Director of DPH has taken the position that fur products "may not even be transported through the city, whether through the Port of San Francisco or even on a UPS truck."  *Id.* ¶ 29.  This is a baseless assertion.  Despite Plaintiff's misleading citation of the DPH Fur Ordinance FAQs, those FAQs do not

remotely suggest that the City will enforce the Fur Products Ordinance to prevent the mere transport of fur products within the City.  RJN Exh. B.  In any event, the Ordinance would be no less constitutional even if it applied in this manner.  The Ninth Circuit has long made clear that a statute is not "invalid merely because it affects in some way the flow of commerce between the States." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)); *see also Nat'l Paint Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[T]he ordinance affects interstate shipments, but it does not discriminate against interstate commerce in either terms or effect.").  And specifically, the Ninth Circuit has recognized that animal product bans like the Fur Products Ordinance do not substantially burden interstate commerce even if they affect the "flow" of a product through a particular jurisdiction.  *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1145-46 (rejecting argument that California's shark fin ban violates the dormant Commerce Clause "by preventing the flow of shark fins through California from one out-of-state destination to another").  Plaintiff's allegations about the Ordinance placing a "dam in the stream" of commerce do not show a substantial burden on interstate commerce.

> **2.    The Fur Products Ordinance Serves Important Local Interests And Its Putative Benefits Outweigh Any Burden On Interstate Commerce.**

Because Plaintiff has not alleged and cannot allege any facts to establish a cognizable burden on interstate commerce, *Pike* balancing is not warranted and Plaintiff's dormant Commerce Clause claim fails.  *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155-56; *see also Safari Club Int'l*, 702 F. App'x at 608 ("Only after determining that the state law is discriminatory and there is an undue burden on interstate commerce do we need to undertake a full *Pike* analysis.")  But even if the Court were to engage in the *Pike* balancing analysis, Plaintiff's FAC would still fail to state a claim.  The allegations in Plaintiff's FAC do not show that the Fur Products Ordinance's incidental burdens on interstate commerce, if any, would clearly outweigh its considerable benefits.

"A facially neutral statute may violate the Commerce Clause if 'the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational.'" *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (citation omitted).  A statute is unreasonable

or irrational when "the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." *Id.*

Plaintiff's conclusory allegations do not satisfy this standard. The Fur Products Ordinance was enacted to conserve and protect populations of fur-producing animals in the United States and elsewhere. S.F. Health Code § 1D.2(a)-(d). The Ordinance reflects the Board of Supervisors' considered judgment that the harm to animals from being "violently killed" for their pelts, as well as the negative impact on the environment that fur farming and fur processing cause, outweighed any societal benefits from the use of fur products for "fashion and apparel." *Id.* § 1D.2. It is well-settled that protecting wildlife and the environment, preventing animal cruelty, and enhancing animal welfare are legitimate state interests. *See United States v. Stevens*, 559 U.S. 460, 469 (2010) ("[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies."); *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Ass'n des Eleveurs*, 729 F.3d at 952; *Pac. Nw. Venison Producers*, 20 F.3d at 1013; *N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 850 F.3d 79, 92 (2d Cir. 2017); *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336-37.

Plaintiff does not suggest otherwise, but instead alleges that these interests are not sufficiently "*local*" in this case because the Ordinance reaches products "from animals raised or trapped entirely in other states and countries." FAC ¶¶ 31-37 (alleging that the Ordinance's findings all "pertain to fur farming that does not even take place anywhere in San Francisco"); *id.* ¶ 59 ("Improving the welfare of fur animals in Wisconsin or Denmark, for example, is certainly a legitimate local purpose of the people and their governments *in Wisconsin or Denmark*. But it is not one as to which San Francisco—which does not even have any fur farming or commercial trapping operations within its own jurisdiction—can legislate."). But even accepting these allegations as true, they do not undermine the legitimacy or the locality of San Francisco's interests. States and local governments may target a harmful practice that occurs elsewhere by reducing the local market for the fruits of that practice. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1140 (California could seek to decrease shark finning elsewhere based on the finding "that 'California is a market for shark fin' that 'helps drive the practice of shark finning'") (citation omitted); *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at

336 (concluding that a state ban on selling horsemeat for human consumption may preserve horses because it "remov[es] the significant monetary incentives in the horsemeat market"). And they may "constitutionally conserve wildlife elsewhere by refusing to accept local complicity in its destruction." *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987); *see also Cavel Int'l*, 500 F.3d at 557 ("States have a legitimate interest in prolonging the lives of animals that their population happens to like."); *cf. Viva! Int'l Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal. 4th 929, 952 (2007) (upholding California's ban on import of kangaroo pelts and products, based on the State's desire to protect the species from harm). Here, San Francisco can constitutionally decide to reduce or eliminate the local market for a product it believes contributes to the unnecessary death of animals and environmental degradation. S.F. Health Code § 1D.2.

These benefits outweigh any minor burdens on interstate commerce. As described above, the Ninth Circuit has routinely concluded that complete bans on products are not clearly excessive in relation to the government's interests. *See, e.g., Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Ass'n des Eleveurs*, 729 F.3d at 953; *Pac. Nw. Venison Producers*, 20 F.3d at 1015. Other district courts in this Circuit have done the same. *See, e.g., N. Am. Meat Inst. v. Becerra*, No. 2-19-CV-08569, 2019 WL 6253701, at *11 (C.D. Cal. Nov. 22, 2019), appeal docketed, No. 19-56408 (9th Cir., Dec. 3, 2019) (upholding California law prohibiting the sale in California of meat from an animal not housed in compliance with certain confinement standards). Other circuits have also held that the benefits from laws banning the sale of certain animal products exceed any burdens those laws impose. *See, e.g., Cavel Int'l*, 500 F.3d at 555-59; *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336-37.

None of Plaintiff's additional allegations state a plausible claim that the Fur Products Ordinance fails the *Pike* balancing test. Plaintiff repeatedly asserts that San Francisco's interests in wildlife, animal welfare, and the environment are illusory and irrational (FAC ¶¶ 32-36); that the Ordinance will be ineffective because consumers will be unaware of its message (*id.* ¶ 66); and that other San Francisco policies undermine the Ordinance's proffered "ethos of treating all living beings, humans and animals alike, with kindness," (*id.* ¶¶ 32-33). Plaintiff's repeated, unsupported legal conclusions about the irrationality of the Fur Products Ordinance are insufficient to meet its pleading burden. *Iqbal*, 556 U.S. at 678. And its contentions that the Ordinance is unwise, ineffective, or

inconsistent with other City policies reflect political concerns that are immaterial to Plaintiff's constitutional claims.  When conducting the *Pike* analysis, courts disregard a law's *actual* effectiveness and instead consider only its *putative* benefits.  *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (noting that *Pike* "does not mention actual benefits as part of the test for determining when a regulation violates the dormant Commerce Clause").  Whether legislation will effectively further those benefits is a question for the San Francisco Board of Supervisors, not a court, to decide.  *CTS Corp.*, 481 U.S. at 92 (courts reviewing dormant Commerce Clause challenges should not "second guess the empirical judgments of lawmakers concerning the utility of legislation"); *Pac. Nw. Venison Producers*, 20 F.3d at 1016 (similar).

Finally, Plaintiff's allegations that San Francisco's interests in promoting animal welfare and protecting the environment could be achieved through means that would have a "lesser impact"—such as "passing a resolution expressing whatever feelings the Board of Supervisors has about fur," "offer[ing] public education about fur products that would reflect its dislike of them," or "requir[ing] sellers of fur products to make certain disclosures as to whether their products have obtained certification . . . of their compliance with animal welfare standards" (FAC ¶¶ 68, 75)—are legally irrelevant.  Where, as here, a law is not discriminatory and places no significant burden on interstate commerce, the Ninth Circuit has instructed that courts should "not consider any evidence regarding alternative means for the State to achieve its goals."  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157. This is because "it is inappropriate for [a court] to set [such a law] aside based on a conclusion that the State's purposes could be served as well with alternative laws."  *Id.*; *see also Ass'n des Eleveurs*, 729 F.3d at 953.

The FAC contains no allegations plausibly suggesting that San Francisco's interests are illegitimate or that any burden from the Fur Products Ordinance's impact on interstate commerce clearly exceeds its local benefits.  *See Pike*, 397 U.S. at 142.  Accordingly, Plaintiff has not stated, and cannot state, a claim for relief under the dormant Commerce Clause, and its Second, Third, and Fourth Causes of Action should be dismissed without leave to further amend.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiff's

First Amended Complaint without leave to amend.


Dated:  May 4, 2020

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
AILEEN M. MCGRATH
Deputy City Attorneys


By:   /s/Aileen M. McGrath

AILEEN M. MCGRATH
Attorneys for Defendants

CITY AND COUNTY OF SAN FRANCISCO; and
DR. GRANT COLFAX, an individual, in his official
capacity as Director of the San Francisco Department of
Public Health