BRUCE A. WAGMAN (CSB No. 159987)
BWagman@rshc-law.com
Riley Safer Holmes & Cancila LLP
456 Montgomery Street
Sixteenth Floor
San Francisco, CA 94104
Telephone:     (415) 275-8540
Facsimile:     (415) 275-8551

*Attorneys for Defendant-Intervenors*
*The Humane Society of the United States and*
*Animal Legal Defense Fund*

Nicholas Arrivo (CSB No. 296173)
narrivo@humanesociety.org
THE HUMANE SOCIETY OF THE UNITED STATES
1255 23RD St. NW, Suite 450
Washington, DC 20037
Telephone:     (202) 676-2339

*Attorney for Defendant-Intervenor The Humane Society of*
*the United States*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNATIONAL FUR TRADE FEDERATION,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, *et al.*<br><br>Defendants,<br><br>and<br><br>THE HUMANE SOCIETY OF THE UNITED STATES and ANIMAL LEGAL DEFENSE FUND,<br><br>Defendant-Intervenors. | Case No. 3:20-cv-00242-RS<br><br>**DEFENDANT-INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>The Honorable Richard Seeborg<br>Date: July 2, 2020<br>Courtroom 3 |

1
2

# **TABLE OF CONTENTS**

3
4
5
6
7
8
9
10
11
12
13
14

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

   I.   LEGAL STANDARD ......................................................................................................... 3

   II.  FACTUAL BACKGROUND ............................................................................................. 3

   III. ARGUMENT .................................................................................................................... 4

      *a.*   *Plaintiff Fails to Allege that the Ordinance Directly Regulates or Discriminates Against Economic Interests Outside San Francisco* ................................. 5

      *b.*   *Plaintiff Fails to Allege that the Ordinance Substantially Burdens Interstate Commerce* .......................................................................................... 6

      *c.*   *The Ordinance Effectuates San Francisco's Legitimate Local Interest in Animal Welfare* ........................................................................... 12

   IV. CONCLUSION ............................................................................................................... 15

15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................... 3

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
729 F.3d 937 (9th Cir. 2013) ....................................................................... *passim*

*Bell Atl. Corp. v. Twombly,*
550 U.S. 554 (2007) ........................................................................................... 3

*Bibb v. Navajo Freight Lines,*
359 U.S. 520 (1959) ........................................................................................ 8, 9

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.,*
476 U.S. 573 (1986) ........................................................................................... 5

*C&A Carbone v. Town of Clarkstown,*
511 U.S. 383 (1994) ........................................................................................... 6

*Cavel Intern. v. Madigan,*
500 F.3d 551 (7th Cir. 2007) ........................................................................... 10

*Chinatown Neighborhood Ass'n v. Brown,*
2013 WL 60919 (N.D. Cal. Jan. 2, 2013) ....................................................... 13

*Chinatown Neighborhood Ass'n v. Harris,*
794 F.3d 1136 (9th Cir. 2015) ..................................................................... *passim*

*Chubb Custom Ins. v. Space Sys./Loral,*
710 F.3d 946 (9th Cir. 2013) ............................................................................ 3

*Church of the Lukumi Babalu Aye v. City of Hialeah,*
508 U.S. 520 (2003) ......................................................................................... 13

*Cresenzi Bird Importers, Inc. v. State of New York,*
658 F. Supp. 1441 (S.D.N.Y. 1987) ................................................................ 14

*CTS Corp. v. Dynamics Corp. of Am.,*
481 U.S. 69 (1987) ............................................................................................. 4

*Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry,*
476 F.3d 326 (5th Cir. 2007) .................................................................. 6, 9, 10

*Exxon Corp. v. Governor of Md.*,
    437 U.S 117 (1978) ........................................................................ 7, 8, 9, 10

*General Motors v. Tracy*,
    519 U.S. 278 (1997) ................................................................................ 8

*Mayfair House v. City of West Hollywood*,
    2014 WL 12599838 (C.D. Cal. 2014) ................................................... 13

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 (2nd Cir. 2001) ............................................................... 10

*National Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ........................................................ *passim*

*National Pork Producers Council v. Ross*,
    No. 19-cv-02324-W-AHG (S.D. Cal. Apr. 27, 2020) ............................. 10

*Pac. Nw. Venison Producers v. Smitch*,
    20 F.3d 1008 (9th Cir. 1994) ......................................................... 4, 9, 12

*Pharm. Research & Mfrs. of Am. v. Walsh*,
    538 U.S. 644 (2003) ................................................................. 6, 9, 11, 12

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ....................................................................... *passim*

*Puppies 'N Love v. City of Phoenix*,
    116 F.Supp.3d 971 (D. Ariz. 2015) .................................................. 10, 14

*Rocky Mountain Farmers Union v. Corey*,
    730 F.3d 1070 (9th Cir. 2013) ..................................................... 11, 12, 14

*Rosenblatt v. City of Santa Monica*,
    940 F.3d 439 (9th Cir. 2019) .................................................................. 5

*Southern Pac. Co. v. State of Ariz. ex rel. Sullivan*,
    325 U.S. 761 (1945) ............................................................................. 8, 9

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    550 U.S. 330 (2007) ............................................................................ 2, 14

*United States v. Stevens*,
    559 U.S. 460 (2010) .............................................................................. 13

*Valley Bank of Nevada v. Plus System*,
    914 F.2d 1186 (9th Cir. 1990) ................................................................. 8

- iii -

DEFENDANT-INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**State Statutes**

San Francisco Health Code

    Article 1D ........................................................................................... 2, 3

    Article 1D.2 ..................................................................................... 4, 13

    Article 1D.3 .......................................................................................... 3

    Article 1D.4 ................................................................................... 3, 4, 6

Berkeley Municipal Code § 9.22 ................................................................. 3

West Hollywood Municipal Code § 9.51 ...................................................... 3

**Federal Statutes and Court Rules**

28 U.S.C. §§ 2201 *et seq.* ......................................................................... 1

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................ 1, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD,**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on July 2, 2020, or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg in Courtroom 3, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco CA 94102, Defendant-Intervenors the Humane Society of the United States and Animal Legal Defense Fund (collectively, "Defendant-Intervenors") will and hereby do move this Court to dismiss Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief in its entirety and without leave to amend pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, Motion, and Memorandum of Points and Authorities, all pleadings, records, and papers filed in this action, such matters as the Court may judicially notice, and such further evidence or argument as may be presented at or before the hearing of this Motion.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.  Whether Plaintiff has failed to state a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.,* for a declaratory judgment regarding the applicability of the challenged ordinance to fur products that shipped from locations outside San Francisco to persons in San Francisco.

2.  Whether Plaintiff has failed to state a claim that the challenged ordinance violates the federal dormant Commerce Clause.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff invites this Court to scrutinize the San Francisco Board of Supervisors' unanimous decision to prohibit the sale of most fur products in the city. *See* S.F. Health Code Article 1D (the "Ordinance"). But the dormant Commerce Clause is not "a roving license for federal courts to decide what activities are appropriate for state and local government to undertake." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 343 (2007). The doctrine's application is limited to two narrowly circumscribed scenarios: (1) laws that directly regulate extraterritorially or discriminate against interstate commerce, and (2) laws that impose substantial burdens on interstate commerce that are *clearly excessive* in relation to their putative local benefits. Plaintiff does not sufficiently allege the second of these cases, and does not allege the first at all. Plaintiff thus fails to meet its burden, and its First Amended Complaint should be dismissed with prejudice.

This is not first time that a trade association or producer has attempted to wield the dormant Commerce Clause to overturn a state or local government's democratically enacted prohibition on the sale of animal products it deemed inhumane. As addressed in detail *infra*, courts in the Ninth Circuit and across the country have uniformly rejected similar challenges to state and local laws prohibiting the sale of products like foie gras; horsemeat; shark fins; exotic birds; commercially bred puppies; and products from farm animals raised in extreme and cruel confinement. This substantial body of case law recognizes that promoting animal welfare, prohibiting the sale of products of animal cruelty, and regulating local market conditions are legitimate local interests. Courts have overwhelmingly respected the judgment of legislators as to how best to exercise the police power in furtherance of those interests. Plaintiff presents no legal theory that differentiates this case from those prior failed attempts to litigate policy disagreements under the guise of the dormant Commerce Clause. The legislative process, not dormant Commerce Clause review, provides the proper venue for Plaintiff to air its grievances about the Ordinance's wisdom and seek relief from its local economic impacts.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    LEGAL STANDARD

Under Rule 12(b)(6), a reviewing court examines whether the facts alleged in the complaint, assumed to be true, suffice to "support a cause of action…under the theories presented." *Godecke v. Kinetic* Concepts, 937 F.3d 1201, 1208 (9th Cir 2019). Dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Id*. (*citing Balistreri v. Pacifica Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1988)). Where an amendment would be futile, a district court may dismiss a pleading without leave to amend. *Chubb Custom Ins. v. Space Sys./Loral*, 710 F.3d 946, 956 (9th Cir. 2013).

To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## II.    FACTUAL BACKGROUND

On March 20, 2018, the San Francisco Board of Supervisors voted to enact Ordinance 55-18 (the "Ordinance"), an "Ordinance amending the Health Code to ban the sale and manufacture in San Francisco of animal fur products."[1] The Ordinance was codified as Article 1D of the San Francisco Health Code. The Ordinance prohibits the sale and manufacture of "fur products," defined as "any article of clothing or covering for any part of the body, or any fashion accessory….that is made in whole or in part of fur" in the City of San Francisco. S.F. Health Code Art. 1D.3, 1D.4. The Ordinance became effective on January 1, 2019, but included a provision allowing retailers to sell off any remaining inventory of fur products through December 31, 2019. *Id.* Art. 1D.4(a)-(b), (e). Upon passing the Ordinance, San Francisco became the third California city to prohibit the sale of fur products, following West Hollywood and Berkeley. West Hollywood Muni. Code § 9.51; Berkeley Muni. Code § 9.22.

---

[1] In order to avoid duplication and conserve this Court's resources, Defendant-Intervenors join and incorporate by reference the Background section of Defendants' Motion to Dismiss First Amended Complaint. Dkt. 30, at 10-11 (page numbers refer to ECF-stamped numbering).

1
2
3
4
5
6
7
8

The fur products industry is global in scale, and subject to a range of economic forces beyond the conditions of the San Francisco market. The Ordinance neither directly regulates nor otherwise interferes with the operation of the fur products market outside of San Francisco. The Ordinance prohibits only conduct occurring "in San Francisco," and does so even-handedly, applying equally to all participants in the local market (and *only* participants in the local market). *Id.* Art. 1D.4. The Ordinance's strictly local reach accords with its express purpose to "promote community awareness of animal welfare, bolster the City's stance against animal cruelty, and, in turn, foster a more humane environment in San Francisco." *Id.* Art. 1D.2(i).

9

## III.    ARGUMENT

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff's Second, Third, and Fourth claims for relief do not state viable dormant Commerce Clause claims.[2] These claims amount to little more than policy disagreements with the Ordinance based on speculative injuries to individual market participants; they fail entirely to show a burden on *interstate commerce* cognizable under the dormant Commerce Clause.  Plaintiff argues relief is warranted based on the unsupported argument that "[t]here can be no greater burden on [] commerce in a particular market than to altogether prohibit it," and the Ordinance's regulation of fur products, regardless of point of origin, within San Francisco somehow burdens interstate commerce. First Amended Complaint, Dkt. 25, ¶¶ 28, 30, 56, 65, 72 ("FAC"). But the dormant Commerce Clause does not prohibit any effect a state or locality imposes on commerce; it safeguards against state and local economic *protectionism. See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987) ("The principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce."); *see also National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). Despite Plaintiff's characterization, the dormant Commerce Clause does not prohibit municipal regulation of local markets in interstate goods, or provide a vehicle for courts to adjudicate businesses' unhappiness with duly enacted legislation. *See Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1017 (9th Cir.

27
28

[2] Plaintiff's First claim for relief seeks a declaratory judgment regarding the applicability of the Ordinance to sales by out-of-city entities to in-city buyers. In an effort to avoid burdening the Court with duplicative arguments, Defendant-Intervenors adopt and incorporate by reference Section I of Defendant's Argument. Dkt. 30, at 14-19.

1    1994).

2         Courts apply the dormant Commerce Clause using a two-tiered approach. First, the

3    reviewing court must determine if the law at issue "directly regulates or discriminates against

4    interstate commerce" or if "its effect is to favor in-state economic interests over out-of-state

5    interests." *Brown-Forman Distillers Corp. v. New York State Liquor Auth*., 476 U.S. 573, 579

6    (1986). If so, a reviewing court will "generally [strike] down the statute without further inquiry."

7    *Id*. But if the law regulates in-state and out-of-state activities equally, and only indirectly affects

8    interstate commerce, the Court must then determine whether the law nevertheless imposes a

9    "substantial burden" on interstate commerce, and will uphold the law unless such burden is

10   "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S.

11   137, 142 (1970).

12        Plaintiff does not allege that the Ordinance regulates extraterritorially, discriminates

13   against interstate commerce, or favors in-city economic interests over out-of-state interests. Nor

14   does it adequately allege that the Ordinance imposes a substantial burden on interstate commerce

15   within the meaning of controlling dormant Commerce Clause precedent. For these reasons, the

16   Court need not even look to the Ordinance's local benefits before dismissing Plaintiff's

17   Complaint. *See* Optometrists, 682 F.3d at 1155 (9th Cir. 2012).[3]

18              **a.  Plaintiff Fails to Allege that the Ordinance Directly Regulates or**
19                   **Discriminates Against Economic Interests Outside San Francisco**

20        Plaintiff does not allege facts sufficient to state a claim under the first part of the dormant

21   Commerce Clause test, which assesses whether a local law "directly regulates or discriminates

22   against interstate commerce" or if "its effect is to favor in-state economic interests over out-of-

23   state interests." *Brown-Forman Distillers Corp.*, 476 U.S. at 579. In fact, Plaintiff does not allege

24   that the Ordinance "directly regulates or discriminates against interstate commerce" at all. *Id*.

25   ───────────────

26   [3] As Plaintiff cannot meet the high bar of showing that "no set of circumstances exists under
     which the ordinance would be valid," required in order to succeed in a facial challenge to a
27   statute, leave to amend should be denied. *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444
     (9th Cir. 2019). Amendment would be futile because Plaintiff cannot plausibly allege that the
28   Ordinance imposes a burden on interstate commerce of the type that is cognizable under the
     relevant precedent.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In fact, the Ordinance does not "directly regulate" interstate commerce, but simply prohibits the sale, offer for sale, trade, and donation of fur products "in San Francisco," so it exclusively and directly only regulates conduct *occurring within San Francisco*. S.F. Health Code Art. 1D.4. A statute cannot "directly regulate" interstate commerce "merely because it affects in some way the flow of commerce between the States." *Optometrists*, 682 F.3d at 1148 (internal citation omitted). Rather, it must dictate the terms of transactions that occur in other jurisdictions by its "express terms" or "inevitable effect." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003). Where a local law prohibits only the local sale of a product, it does not "directly regulate" interstate commerce even when the product is produced outside the locality. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948-49 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 398 (2014) (California foie gras law "does not directly regulate interstate commerce" because it "precludes sales within California of products produced by force feeding birds regardless of where the force feeding occurred.").

Nor does the Ordinance discriminate against interstate commerce in intent or effect. The dormant Commerce Clause's prohibition on discriminatory laws operates to "invalidate local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of State." *C&A Carbone v. Town of Clarkstown*, 511 U.S. 383, 390 (1994). Plaintiff does not allege that the Ordinance is discriminatory; such an allegation would necessarily fail as a matter of law because the Ordinance evenhandedly prohibits the sale of fur products in San Francisco regardless of the seller's locale. *See Eleveurs*, 729 F.3d at 948 (foie gras law is not discriminatory because it "treats all private companies exactly the same"); *see also Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 335 (5th Cir. 2007) (upholding a horse meat sales prohibition and holding that a statute that "treats both intrastate and interstate trade of horsemeat equally by way of a blanket prohibition" cannot be "considered economic protectionism").

   **b.  Plaintiff Fails to Allege that the Ordinance Substantially Burdens Interstate Commerce**

Unable to plead direct discrimination, Plaintiff rests its entire dormant Commerce Clause

theory on the second prong of the dormant Commerce Clause analysis, set out by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Under *Pike*, where a law applies even-handedly to in-state and out-of-state interests on its face, the court is asked to determine if the law nonetheless effectuates an unconstitutional invasion into the regulation of interstate commerce. *Id.* at 142. A challenged law is presumptively valid and "will be upheld unless the burden imposed on [interstate] commerce is *clearly excessive* in relation to the putative local benefit." *Id.* (emphasis added). "[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory," *Eleveurs*, 729 F.3d at 952, and invalidation of non-discriminatory laws like the Ordinance under the *Pike* analysis is rare. *See Optometrists*, 682 F.3d at 1148, 1150 (*citing General Motors v. Tracy*, 519 U.S. 278, 298 n.12 (1997)).

In the Ninth Circuit, applying *Pike* entails a two-part analysis. "[A] plaintiff must first show that the statute imposes a substantial burden before the court will 'determine whether the benefits of the challenged laws are illusory.'" *Eleveurs*, 729 F.3d at 951–52 (*quoting Optometrists*, 682 F.3d at 1155). This "substantial burden" must affect the interstate market as a whole, rather than participants in the market. *Exxon Corp. v. Governor of Md.*, 437 U.S 117, 127-28 (1978) (dormant Commerce Clause "protects the *interstate market*, not particular interstate firms, from prohibitive or burdensome regulations") (emphasis added). Where a plaintiff fails to make this showing, the inquiry ends and the Court need not proceed to assess the challenged law's local benefits. *Eleveurs*, 729 F.3d at 951-52. With no sufficient allegation that the fur ban imposes *any* burden on interstate commerce, let alone the substantial burden required to move to the second step of the *Pike* test, Plaintiff's claims fail as a matter of law.

Plaintiff's focus on the purported burden the Ordinance imposes on the fur industry within and outside of California demonstrates its fundamental misunderstanding of the purpose and role the dormant Commerce Clause plays in protecting interstate commerce. *See e.g.*, FAC ¶¶ 26-27. The Clause "protects the *interstate market*, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon*, 437 U.S. at 127-28 (emphasis added). Consequently, the only burdens considered under *Pike* are those imposed on the operation of an interstate market itself –

in other words, the "interstate flow of goods, not the share of profits obtained by…interstate corporations." *Optometrists*, 682 F.3d at 1154 n.14.

Accordingly, nondiscriminatory statutes are only found to impose substantial burdens on interstate commerce where they regulate "activities that are inherently national or require a uniform system of regulation." *Id*. at 1148. These rare cases arise where "a lack of national uniformity would impede the flow of interstate goods," such as state laws regulating trucking and rail transportation. *Exxon*, 437 U.S. at 128; *see also Tracy*, 519 U.S. at 298 n.12. For example, in *Bibb v. Navajo Freight Lines*, 359 U.S. 520 (1959), the Supreme Court held that an Illinois statute requiring all trucks and trailers operating in the state to have a particular type of rear mudguard burdened interstate commerce because it deviated from the mudguard requirements of nearly every other state; compliance would require carriers to shift cargo to a trailer with Illinois-specified mudguards even to pass through the state, imposing a "heavy burden...on the interstate movement of trucks and trailers" that was not outweighed by local benefits. *Id.* at 522-24. And in *Southern Pac. Co. v. State of Ariz. ex rel. Sullivan*, 325 U.S. 761 (1945), the Court held that an Arizona law limiting the maximum length of freight trains within the state burdened interstate commerce because its "[e]nforcement of the law in Arizona, while train lengths remain unregulated or are regulated by varying standards in other states, must inevitably result in an impairment of uniformity of efficient railroad operation" by forcing "interstate trains of a length lawful in other states to be broken up and reconstituted" as they cross state boundaries. *Id*. at 773.

*Bibb* and *Southern Pacific* involved statewide laws governing the means of interstate transport of all goods traveling in that modality, and which functioned to impair the operation of the interstate market. Plaintiff can make no analogous showing of substantial burden on the "interstate market" flowing from the Ordinance's prohibition on production and sale of a specific product in a single city. *Exxon*, 437 U.S. at 127-28; *see also Valley Bank of Nevada v. Plus System*, 914 F.2d 1186, 1192 (9th Cir. 1990) ("The transportation cases are distinguishable from the one before us. State transportation laws pose different obstacles to entities engaged in interstate commerce than [the challenged state ATM transaction fee regulation].") Plaintiff does

not—and could not credibly—contend that the sale of fur garments is "inherently national," *Optometrists*, 682 F.3d at 1148, that the sales ban in San Francisco would require any alteration in otherwise uniform national practices, nor that "a lack of national uniformity" in fur product regulation threatens to "impede the flow of interstate goods." *Exxon*, 437 U.S. at 128. Unlike the mudguard law found unconstitutional in *Bibb* or the train length limitation overturned in *Southern Pac. Co.*, the Ordinance does nothing to prevent the operation of an interstate market in fur outside the city limits, or interfere with other jurisdictions' capacity to regulate (or choose not to regulate) that market. San Francisco's local prohibition neither bans the interstate market in fur products nor creates any barrier, let alone a "substantial" one, to the operation of that interstate market.  *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1147 (9th Cir. 2015) (affirming grant of motion to dismiss where the "Shark Fin Law does not interfere with activity that is inherently national or that requires a uniform system of regulation"); *see also Eleveurs*, 729 F.3d at 952 ("Plaintiffs have failed to show that the foie gras market is inherently national or that it requires a uniform system of regulation.").

Plaintiff contends that the Ordinance substantially burdens interstate commerce because it effectuates a "total ban" on the sale of fur products in San Francisco. FAC ¶¶ 56, 65, 72. But the courts consistently reject this absolutist claim, holding that even a "complete ban on commerce in certain items" does not violate the dormant Commerce Clause. *Pac. Nw. Venison Producers*, 20 F.3d at 1012 (9th Cir. 1994); *see also Empacadora*, 476 F.3d at 335 (upholding "blanket prohibition" on trade in horsemeat against dormant Commerce Clause challenge). Absent an allegation that it imposes a cognizable burden on the interstate market, the mere fact that the Ordinance prohibits the sale of fur products within the city cannot give rise to a claim under the dormant Commerce Clause. *See Pharm. Research*, 768 F.3d at 1045 ("Without any evidence that the Ordinance will affect the interstate flow of goods, we cannot say that the Ordinance substantially burdens interstate commerce."). This is because the dormant Commerce Clause is concerned with preventing regulations that appear to focus on local conduct but are, in effect, actually regulations of the interstate market.  Restrictions on local market activity—even total

bans—are not unconstitutional if their burdens are directed locally and impacts to interstate commerce are incidental. *See Optometrists*, 682 F.3d at 1148 (a statute is not "invalid merely because it affects in some way the flow of commerce between the states"). This is why courts routinely uphold city and state laws imposing complete bans on the sale of particular animal products against dormant Commerce Clause challenges. *See, e.g., National Pork Producers Council v. Ross*, No. 19-cv-02324-W-AHG, Order Granting Defendants' Motion to Dismiss, Dkt. 37 at 3 (S.D. Cal. Apr. 27, 2020) (California ballot initiative prohibiting sale of veal, pork, and eggs produced in extreme confinement)*; Eleveurs*, 729 F.3d at 942 (California ban on foie gras products made by force feeding birds); *Empacadora*, 476 F.3d at 335 ("blanket prohibition" on horsemeat trade in Texas); *Cavel Intern. v. Madigan*, 500 F.3d 551, 553 (7th Cir. 2007) (Illinois prohibition on import, export, and sale of horsemeat); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1136 (California ban on possession, sale, and trade of shark fins); *Puppies 'N Love v. City of Phoenix*, 116 F. Supp. 3d 971, 978-79 (D. Ariz. 2015) (municipal ban on retail sale of commercially bred pets), *vacated on other grounds,* 283 F. Supp. 3d 815.

Nor do the incidental economic impacts alleged by Plaintiff constitute a substantial burden on interstate commerce. FAC ¶¶ 26, 27. Lost revenue from the sale of fur garments in San Francisco, even assuming it is "substantial", is irrelevant to the *Pike* analysis. The dormant Commerce Clause protects "the interstate flow of goods, not the share of profits obtained by…interstate corporations." *Optometrists*, 682 F.3d at 1154 n.14; *see also Exxon*, 437 U.S. at 127-28 (dormant Commerce Clause protects "interstate market, not particular interstate firms"); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 111 (2nd Cir. 2001) ("[T]hat manufacturers must bear some of the costs of the [state] regulation in the form of lower profits does not cause the statute to violate the Commerce Clause. Such a burden is simply attributable to legitimate intrastate regulation. The manufacturers are not required to adhere to the [state law] in other states."). In *National Pork Producers Council v. Ross,* the court dismissed Plaintiffs' dormant Commerce Clause challenge where "pork producers and consumers might be injured economically" by a state ban on pork products, because "that argument relates to the wisdom of

- 10 -

the statute, not its burden on commerce." No. 19-cv-02324-W-AHG, Dkt. 37 at 11-12 (S.D. Cal. Apr. 27, 2020).  Furthermore, even if the impact of the Ordinance on retailers' bottom line were cognizable under *Pike*, Plaintiff fails to situate that loss within the total interstate fur products market, or allege how the loss of the market for fur products in a single city can plausibly constitute a cognizable burden on a global industry subject to many independent market forces.

Plaintiff's contention that the Ordinance burdens interstate commerce because fur products sold in the city typically originate outside the city also fails as a matter of law. *See* FAC ¶¶ 9-10, 30 ("For San Francisco to completely ban the sale of fur products — all of which come from outside San Francisco and virtually all of which come from outside California, with a large percentage originating outside the United States — is for San Francisco to more than substantially burden interstate and foreign commerce."). It is well-settled that a local law "does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce." *Optometrists*, 682 F.3d at 1148. Indeed, "there is nothing unusual or unconstitutional per se about a [locality] regulating the in-state conduct of an out-of-state entity when the out-of-state entity chooses to engage the [locality] through interstate commerce." *Pharm. Research*, 768 F.3d at 1043-44. The Ninth Circuit has held that even local economic regulation enacted for the express purpose of influencing out-of-state market participants does not violate the dormant Commerce Clause. *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013) (localities are "free to regulate commerce and contracts within their boundaries with the goal of influencing the out-of-state choices of market participants"). Absent a showing of discrimination or a particularly extreme burden on interstate commerce as a whole— neither of which Plaintiff alleges—the Ordinance's effects on out-of-state entities seeking to participate in the San Francisco market do not give rise to a dormant Commerce Clause violation.

Because Plaintiff fails to plead facts showing a substantial burden on interstate commerce, its claims fail as a matter of law and this Court need not proceed to assess the significant local benefits identified in the Ordinance itself. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 ("Our precedents…preclude any judicial assessment of the benefits of a state law and the wisdom

1
2
3
4
5

in adopting it unless [it] either discriminates in favor of in-state commerce or imposes a

significant burden on interstate commerce."); *see also Pharm. Research*, 768 F.3d at 1044;

*Eleveurs*, 729 F.3d at 951-52.

### c. The Ordinance Effectuates San Francisco's Legitimate Local Interest in Animal Welfare

6
7
8
9
10
11
12
13
14
15

Plaintiff's Complaint devotes significantly more space to mocking and second-guessing

San Francisco's local interest in the Ordinance than it does to alleging a cognizable burden on

interstate commerce. As every court reviewing this type of case has held, Plaintiff's opinion

simply does not matter here. Rather, because Plaintiff has failed to meet its burden of showing a

substantial burden on interstate commerce imposed by the Ordinance, this Court need not even

look to its local purposes and benefits. *Chinatown Neighborhood Ass'n.*, 794 F.3d at 1146; *see*

*also Pharm. Research*, 768 F.3d at 1044; *Eleveurs*, 729 F.3d at 951-52. It should therefore decline

Plaintiff's invitation to impermissibly "second-guess the empirical judgments of" the San

Francisco Board of Supervisors "concerning the utility of legislation." *Pac. Nw. Venison*

*Producers*, 20 F.3d at 1017 (*quoting CTS Corp.*, 481 U.S. at 92 (1987)).

16
17
18
19
20
21

But even if scrutiny of the Ordinance's local benefits were warranted here, San

Francisco's Ordinance sets out undeniable and valid support for the law – the kind of support that

courts in the Ninth Circuit have repeatedly upheld. *See Eleveurs*, 729 F.3d at 952-53; *see also*

*Chinatown Neighborhood Ass'n*, 794 F.3d at 1147. And Plaintiff has failed to make the necessary

showing under *Pike* that those benefits are insufficient or "illusory." *Pharm. Research*, 768 F.3d

at 1044.

22
23
24
25
26
27
28

The controlling evidence of the Ordinance's purpose is its own language. *Rocky Mountain*

*Farmers Union*, 730 F.3d at 1097-98 (9th Cir. 2013) (reviewing court must "assume that the

objectives articulated by the legislature are the actual purposes of the statute, unless an

examination of the circumstances forces [the court] to conclude that they could not have been a

goal of the legislation") (*quoting Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 463 n.7

(1981)). The Ordinance's codified legislative findings articulate a concern about the "unnecessary

and cruel treatment of animals" killed for their fur, and an intent to "promote community

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

awareness of animal welfare, bolster the City's stance against animal cruelty, and, in turn, foster a more humane environment in San Francisco" by prohibiting the sale of fur products. S.F. Health Code. § 1D.2(i).

A locality's decision to eliminate the products of animal cruelty from its borders is a legitimate and well-established exercise of the police power. *See, e.g.*, *Eleveurs*, 729 F.3d at 938 (the "State has an interest in preventing animal cruelty in California"); *United States v. Stevens*, 559 U.S. 460, 460 ("The prohibition of animal cruelty…has a long history in American law…"); *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 538 (2003) (recognizing the "legitimate governmental interests in . . . preventing cruelty to animals"). The Ordinance's regulation of local conduct that represents popular opinion about the welfare of animals plainly and expressly serves the legitimate municipal interests of addressing animal cruelty ("bolster[ing] the City's stance against animal cruelty," S.F. Health Code Art. 1D.2(i)) and providing for the public morals ("foster[ing] a more humane environment in San Francisco," *id.*). Indeed, in dismissing a constitutional challenge to West Hollywood's municipal fur prohibition, another court in this Circuit found that the city's stated goals to "promote community awareness of animal welfare, foster the City's goal to be a community that cares about animal welfare, and further the City's reputation as a Cruelty Free Zone for animals" represented a "legitimate interest." *Mayfair House v. City of West Hollywood*, 2014 WL 12599838 at *7 (C.D. Cal. 2014).

It is well-settled that a city or state's interest in animal welfare legitimately extends to legislation intended to remove the products of animal cruelty from its local market. *See, e.g. Eleveurs*, 729 F.3d at 952 ("Plaintiffs give us no reason to doubt that the state believed that the sales ban…may discourage the consumption of products produced by force feeding birds and prevent complicity in a practice that it deemed cruel to animals."); *Chinatown Neighborhood Ass'n v. Brown*, 2013 WL 60919, at *7 (N.D. Cal. Jan. 2, 2013) (upholding shark fin sales law "intended to preserve and conserve sharks and the marine ecosystems dependent on them by means of regulating local *market* conditions, which laws targeting the actual practice of shark finning in domestic waters alone do not address") (emphasis in original); *Puppies 'N Love*, 116 F.

Supp. 3d at 996 (ordinance prohibiting retail sale of commercially bred puppies "is a legitimate attempt to curb the problems associated with the inhumane treatment of animals and local dog homelessness and euthanasia"); *Cresenzi Bird Importers, Inc. v. State of New York*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987), *affirmed sub. nom.* 831 F.2d 410 (2nd Cir. 1987) ("New York has a legitimate interest in regulating its local market conditions which lead, in a short causal chain, to the unjustifiable and senseless suffering and death of thousands of captured wild birds . . . The State has an interest in cleansing its markets of commerce which the Legislature finds to be unethical.").

Plaintiff's complaint rests on a series of misplaced attacks on San Francisco's decision to rid the City of the products of cruelty. FAC ¶¶ 31-37. But Plaintiff's policy critiques of this decision are not relevant to the dormant Commerce Clause analysis, and do nothing to substantiate a claim that the purposes and intended effects of the law are illegitimate. By example, there is no place in a dormant Commerce Clause claim for Plaintiff's conjured inconsistency between San Francisco's humane ethos toward furbearing animals and the City's treatment of its homeless population. *Id.* ¶ 34. The dormant Commerce Clause is not "a roving license for federal courts to decide what activities are appropriate for state and local government to undertake." *United Haulers Ass'n,* 550 U.S. at 343. Nor is it a stage upon which to air disagreements with social policy.

Plaintiff's one-sided and personal critique of the City's motivation should be rejected for three reasons. First, a reviewing court must give considerable deference to a legislature's stated purposes for promulgating a statute. *Rocky Mountain Farmers Union*, 730 F.3d at 1097 (9th Cir. 2013) (reviewing court must "assume that the objectives articulated by the legislature are the actual purposes of the statute, unless an examination of the circumstances forces [the court] to conclude that they could not have been a goal of the legislation.") As argued above, San Francisco's stated purposes squarely align with the legitimate and well-established local interest in reducing the presence of the products of animal cruelty within its borders, including by prohibiting the sale of cruelly produced products in the local market. Second, the *Pike* analysis is

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

concerned with a law's "*putative* local benefits," not its "actual benefits." *Optometrists*, 682 F.3d at 1155 (*quoting Pike*, 397 U.S. at 142) (emphasis in original). Accordingly, Plaintiff's alleged concerns about the Ordinance's efficacy, FAC ⁋ 35, are irrelevant to a dormant Commerce Clause analysis. Finally, even if Plaintiff's criticisms of the Ordinance's purpose were given weight, they do not meet the high bar of showing that the burdens imposed by the Ordinance are "*clearly excessive* in relation to the putative local benefit," *Pike*, 397 U.S. at 142 (emphasis added), such that "the burdens of the statute so outweigh the putative benefits as to make the statute unreasonable or irrational." *Chinatown Neighborhood Ass'n.*, 794 F.3d at 1145.[4]

The Ordinance represents a considered legislative judgment that removing fur products from the local marketplace furthers the legitimate municipal purposes of keeping certain products of animal cruelty out of San Francisco and promoting the City's moral values. Plaintiff fails to allege facts sufficient to overcome the considerable deference that this judgment receives as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss the First Amended Complaint with prejudice.

---

[4] Plaintiff's contention that the Ordinance's goals could be better accomplished through a narrower prohibition, FAC ⁋ 68, is irrelevant where, as here, no significant burden on interstate commerce has been shown. *See Eleveurs*, 729 F.3d at 953 ("Plaintiffs argue that less burdensome alternatives [to the challenged statute] exist… For us to invalidate a statute based on the availability of less burdensome alternatives, the statute would have to impose a significant burden on interstate commerce, which is not the case here.") (*citing Optometrists*, 682 F.3d at 1157).

1     Dated: May 11, 2020                    RILEY SAFER HOLMES & CANCILA LLP

2
                                             */s/ Bruce A. Wagman*
3                                            Bruce A. Wagman (CSB No. 159987)
                                             BWagman@rshc-law.com
4                                            RILEY SAFER HOLMES & CANCILA LLP

5                                            *Attorneys for Defendant-Intervenors The*
                                             *Humane Society of the United States and*
6                                            *Animal Legal Defense Fund*

7                                            Nicholas Arrivo (CSB No. 296173)
                                             narrivo@humanesociety.org
8                                            THE HUMANE SOCIETY OF THE UNITED
                                             STATES
9
                                             *Attorney for Defendant-Intervenor The*
10                                           *Humane Society of the United States*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2020, I electronically filed the foregoing document and all attachments thereto with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

/s/ Bruce A. Wagman

Bruce A. Wagman

Case No. 3:20-cv-00242-RS

DEFENDANT-INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF