Michael Tenenbaum, Esq. (No. 186850)
*mt@post.harvard.edu*
THE OFFICE OF MICHAEL TENENBAUM, ESQ.
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401
Tel    (424) 246-8685
Fax   (424) 203-4285

*Counsel for Plaintiff International Fur Trade Federation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL FUR TRADE FEDERATION, an unincorporated association;<br><br>　　　　　　　　Plaintiff,<br><br>– against –<br><br>CITY AND COUNTY OF SAN FRANCISCO; and<br><br>DR. GRANT COLFAX, an individual, in his official capacity as Director of the San Francisco Department of Public Health;<br><br>　　　　　　　　Defendants. | Case No. 3:20-cv-00242-RS<br><br>**DECLARATION OF MARK OATEN IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　July 2, 2020<br>Time:　　　1:30 p.m.<br>Courtroom:　3<br><br>Hon. Richard Seeborg |

I, Mark Oaten, declare as follows:

1. I am the Chief Executive Officer of the International Fur Trade Federation ("IFF"), the plaintiff in this action. Prior to joining IFF in 2011, I was a member of the United Kingdom's Parliament for 13 years and served for four years as the United Kingdom's representative to the Council of Europe. During my time in Parliament, I was the Liberal Democrat Party Chairman, Shadow Home Secretary, and served on boards relating to healthcare, alcohol abuse, mental health, and prison reform.

2. IFF is an unincorporated association headquartered in the United Kingdom. IFF, established in 1949, represents the international fur industry and regulates its practices and trade. IFF promotes the business of fur by establishing certification and traceability programs on animal welfare and the environment. IFF represents 56 members associations in over 40 countries around the world, including the Fur Commission USA. The members encompass all parts of the fur trade, including farmers, trappers, auction houses, brokers, dressers, designers, manufacturers, and retailers.

3. Each of IFF's members have signed a strict code of conduct committing them to upholding the industry-relevant laws they fall under in their home countries, including laws relating to animal welfare, environmental standards, employment, antitrust, bribery, and corruption, and international conventions, including the Convention on International Trade in Endangered Species, also known as CITES or the Washington Convention of 1975.

4. For example, Europe's fur sector, which produces approximately 50% of all fur globally, voluntarily initiated the launch of the science-based welfare assessment program WelFur in 2009. WelFur is a welfare assessment program developed by independent scientists at seven European universities, who produced welfare assessment protocols for fur farmed species. The protocols serve as "manuals" for third parties by providing guidelines on how to assess the performance of fur farms concerning animal welfare. WelFur's aim is to measure animal welfare at the fur farms

by setting 12 welfare criteria based on scientific research. These criteria reflect the four welfare principles established by the European Commission: Good Housing, Good Feeding, Good Health and Appropriate Behavior.

5. Likewise, over 90 percent of mink from farms in the United States is certified under the "Standard Guidelines for the Operation of Mink Farms." This certification program was among the first of its kind and was begun by IFF-member the Fur Commission USA, the national trade association of the U.S. mink producers. The certified farms undergo regular and mandatory veterinary inspections by accredited U.S. Department of Agriculture veterinarians.

6. In addition to WelFur, IFF utilizes the FurMark program and traceability and certification label, which is a global certification program that overarches WelFur as well as programs governing dressers and dyers, wild fur, and North American mink certification. FurMark certification imposes strict compliance with the Safe Fur Standard, which regulates the chemicals that dressers and dyers of fur may use in processing.

7. I am aware that San Francisco has enacted Health Code § 1D *et seq.* (the "Fur Ban"), which has made it "unlawful to sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute a Fur Product by any means in San Francisco." S.F. Health Code Art. § 1D.4.

8. I understand that the Fur Ban effectively bans all fur products farmed and produced by IFF's members. And because fur products from IFF's members account for nearly 100% of the global fur trade, the Fur Ban prohibits all fur from anywhere, no matter how humanely the animals were treated during their lives.

9. IFF's members whose fur products have been sold in San Francisco face an immediate threat of liability and fines if they sell *any* of their fur products there today. IFF itself is also suffering injury as an association in the form of a continuing drain on its resources as long as the Fur Ban remains in effect and — apart from the litigation of this action — the association must devote its resources to trying to ascertain

1  and educate its members (and its members' members) as to the scope of the Fur Ban's
2  application to them and to their customers.  Moreover, IFF is suffering a direct
3  economic injury as a result of the Fur Ban because IFF receives and relies on a levy or
4  assessment from each fur pelt sold at the auctions conducted by its members.
5  //
6  //
7  //
8  //
9  //
10 //
11 //
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 14, 2020

_____
Mark Oaten