DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
AILEEN M. McGRATH, State Bar # 280846
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:      (415) 554-4691
Facsimile:      (415) 554-4699
E-Mail:         aileen.mcgrath@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; and
DR. GRANT COLFAX, an individual, in his official capacity as
Director of the San Francisco Department of Public Health

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL FUR TRADE FEDERATION, an unincorporated association,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; and DR. GRANT COLFAX, an individual, in his official capacity as Director of the San Francisco Department of Public Health,<br><br>    Defendants.<br><br>───────────────────────<br><br>THE HUMANE SOCIETY OF THE UNITED STATES and ANIMAL LEGAL DEFENSE FUND,<br><br>    Defendant-Intervenors. | Case No. 3:20-cv-00242-RS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF INTERNATIONAL FUR TRADE FEDERATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:   July 23, 2020<br>Time:           1:30 p.m.<br>Place:          Hon. Richard Seeborg<br>                United States District Court<br>                Courtroom 3 – 17th Floor<br>                450 Golden Gate Avenue<br>                San Francisco, CA 94102<br><br>Action Filed:   January 13, 2020<br>Trial Date:     None set.<br><br>Attached documents:<br>--Declaration of Aileen M. McGrath |

1
2

## TABLE OF CONTENTS

3  TABLE OF AUTHORITIES ................................................................................................ ii

4  INTRODUCTION ...........................................................................................................1

5  BACKGROUND ..............................................................................................................2

6      I.     The Fur Products Ordinance And The City's Enforcement Directives. .................2

7           A.    The San Francisco Animal Fur Products Ordinance....................................2

8           B.    The City's Enforcement Directives ............................................................3

    II.    Procedural History ................................................................................................5

9  LEGAL STANDARD........................................................................................................6

10  ARGUMENT ...................................................................................................................6

    I.     Plaintiff Is Not Entitled To Summary Judgment On Its Declaratory Relief Claim
11           Because There Is No Dispute About The Fur Products Ordinance's Scope
12           (Count One). ...........................................................................................................6

13      II.    Plaintiff Is Not Entitled To Summary Judgment On Its Dormant Commerce
         Clause Claims (Counts Two, Three, and Four). ...................................................11

14           A.    Legal Standard ........................................................................................12

15           B.    Plaintiff's Claim That The Fur Products Ordinance Violates The *Pike*
             Balancing Test Fails As A Matter Of Law. ..............................................13

16           C.    To The Extent Facts Are Necessary To Resolve Plaintiff's Claims, The
17               City Requires Discovery ..........................................................................22

18  CONCLUSION................................................................................................................25

19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

*Aetna Life Ins Co. v. Haworth.*
   300 U.S. 227 (1937)..................................................................................11

4

*Antilles Cement Corp. v. Acevedo Vila*
   408 F.3d 41 (1st Cir. 2005)........................................................................13

6

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013) ............................................................. *passim*

8

*Ass'n des Eleveurs de Canards et D'Oies du Quebec v. Harris*
   79 F. Supp. 3d 1136 (C.D. Cal. 2015) ......................................................10

9

*Automated Salvage Transp., Inc. v. Wheelabrator Envt'l Sys., Inc.*
   155 F.3d 59 (2d Cir. 1998) ........................................................................18

11

*Babbitt v. United Farm Workers Nat'l Union*
   442 U.S. 289 (1979).....................................................................................7

13

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
   476 U.S. 573 (1986).............................................................................12, 13

14

*Burlington N. Santa Fe. R.R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*
   323 F.3d 767 (9th Cir. 2003) ...............................................................23, 24

16

*C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*
   511 U.S. 383 (1994)...................................................................................12

18

*Cavel Int'l, Inc. v. Madigan*
   500 F.3d 551 (7th Cir. 2007) ............................................................. *passim*

19

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).............................................................................6, 22

21

*Chinatown Neighborhood Ass'n v. Harris*
   794 F.3d 1136 (9th Cir. 2015) ........................................................... *passim*

22

*Citizens for Honesty and Integrity in Reg'l Planning v. Cty. of San Diego*
   399 F.3d 1067 (9th Cir. 2005) .....................................................................7

24

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983)....................................................................................8, 9

26

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013)...................................................................................10

*Cresenzi Bird Importers, Inc. v. State of N.Y.*
    658 F. Supp. 1441 (S.D.N.Y. 1987) ...............................................................19

*CTS Corp. v. Dynamics Corp. of Am.*
    481 U.S. 69 (1987)...............................................................................15, 17, 21

*Edgar v. MITE Corp.*
    457 U.S. 624 (1982).....................................................................................20

*Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*
    476 F.3d 326 (5th Cir. 2007) ................................................................... *passim*

*Exxon v. Governor of Md.*
    437 U.S. 117 (1978)......................................................................................17

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*
    525 F.3d 822 (9th Cir. 2008) ........................................................................24

*Freedom Holdings, Inc. v. Spitzer*
    357 F.3d 205 (2d Cir. 2004) .........................................................................18

*Furnace v. Sullivan*
    705 F.3d 1021 (9th Cir. 2013) ........................................................................6

*Gen. Motors Corp. v. Tracy*
    519 U.S. 278 (1997)................................................................................15, 17

*Gest v. Bradbury*
    443 F.3d 1177 (9th Cir. 2006) .....................................................................8, 9

*Healy v. Beer Inst.*
    491 U.S. 324 (1989)......................................................................................12

*Hunt v. Washington State Apple Advertising Commission*
    432 U.S. 33 (1977)........................................................................................21

*Jones v. Blanas*
    393 F.3d 918 (9th Cir. 2004) ........................................................................24

*Laird v. Tatum*
    408 U.S. 1 (1972)............................................................................................9

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010) ..........................................................................9

*Maine v. Taylor*
    477 U.S. 131 (1986)......................................................................................12

*Massachusetts v. E.P.A.*
    549 U.S. 497 (2007)......................................................................................19

*Md. Cas. Co. v. Pac. Coal & Oil Co.*
   312 U.S. 270 (1941) ............................................................................................6

*Metabolife Int'l, Inc. v. Wornick*
   264 F.3d 832 (9th Cir. 2001) .............................................................................24

*Nat'l Ass'n of Optometrists & Opticians v. Brown*
   567 F.3d 521 (9th Cir. 2009) .............................................................................13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
   682 F.3d 1144 (9th Cir. 2012) ..................................................................... *passim*

*Nat'l Paint & Coatings Ass'n v. City of Chicago*
   45 F.3d 1124 (7th Cir. 1995) .............................................................................21

*Nat'l Audubon Society, Inc. v. Davis*
   307 F.3d 835 (9th Cir. 2002) .............................................................................10

*Pac. Nw. Venison Producers v. Smitch*
   20 F.3d 1008 (9th Cir. 1994) ..................................................................... *passim*

*Peebler v. Reno*
   965 F. Supp. 28 (D. Or. 1997) .............................................................................7

*Pieczenik v. Comm'r N.J. Dep't of Envt'l Prot.*
   715 F. App'x 205 (3d Cir. 2017) ..........................................................................8

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970) ................................................................................... *passim*

*Pustell v. Lynn Public Sch.*
   18 F.3d 50 (1st Cir. 1994) ...................................................................................8

*Rocky Mountain Farmers Union v. Corey*
   730 F.3d 1070 (9th Cir. 2013) ...............................................................14, 16, 19

*Safari Club Int'l v. Becerra*
   702 F. App'x 607 (9th Cir. 2017) ...................................................................1, 22

*Sam Francis Foundation v. Christies*
   784 F.3d 1320 (9th Cir. 2015) ...........................................................................20

*South Dakota v. Wayfair*
   138 S. Ct. 2080 (2018) .......................................................................................17

*Steffel v. Thompson*
   415 U.S. 452 (1974) .............................................................................................9

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) .......................................................................7, 10

*Torres v. City of Madera*
    648 F.3d 1119 (9th Cir. 2011) ............................................................6

*Union Pac. R.R. Co. v. Sacks*
    309 F. Supp. 3d 908 (W.D. Wa. 2018) ...............................................7

*United Food & Commercial Workers Local Union Nos. 137 et al.*
    *v. Food Empl'rs Council, Inc.*
    827 F.2d 519 (9th Cir. 1987) ............................................................11

*United States v. Stevens*
    559 U.S. 460 (2010) ..........................................................................18

*West Coast Seafood Processors Ass'n v. Natural Res. Def. Council*
    643 F.3d 701 (9th Cir. 2011) ..............................................................8

*White Mountain Apache Tribe v. Williams*
    810 F.2d 844 (9th Cir. 1985) ..............................................................7

**Constitutional Provisions**
U.S. Const., art. I, § 8, cl. 3 [Commerce Clause]................................ *passim*

**State Statutes**
2011 Cal. Legis. Serv.
    ch 524 § 1(d) ....................................................................................19
    ch 524 § 1(f) .....................................................................................19

Cal. Fish & Game Code §§ 2000-2948...................................................3

**Rules**
Fed. R. Civ. Proc.
    26(d)..................................................................................................24
    26(f) ..............................................................................................5, 24
    56(a)....................................................................................................6
    56(d) ........................................................................................ *passim*

**Municipal Ordinances, Resolutions, Codes and Regulations**
S.F. Board of Supervisor Ordinance No. 171317
    [San Francisco Animal Fur Products Ordinance]........................ *passim*

S.F. Health Code
    § 1D.2...................................................................................................2
    § 1D.2.................................................................................................18
    § 1D.2(a) .............................................................................................3
    § 1D.2(c) .............................................................................................3
    § 1D.2(e) .............................................................................................3
    § 1D.2(f) ..............................................................................................3
    § 1D.2(i) .........................................................................................3, 20
    § 1D.3...................................................................................................2
    § 1D.4.............................................................................................2, 4

§ 1D.4(a) ..................................................................................................................4, 6

§ 1D.4(c) ........................................................................................................................3

§ 1D.4(e) ........................................................................................................................3

§ 1D.5(a) ........................................................................................................................3

# INTRODUCTION

Defendants City and County of San Francisco and Dr. Grant Colfax have moved to dismiss Plaintiff's First Amended Complaint in its entirety for failing to state a claim. Dkt. No. 30. If the Court grants Defendants' motion to dismiss, Plaintiff's motion for summary judgment will be moot. If the Court reaches Plaintiff's summary judgment motion on the merits, the Court should deny it because Plaintiff's declaratory judgment cause of action, and its causes of action seeking to strike down the San Francisco Animal Fur Products Ordinance ("Fur Products Ordinance") under the dormant Commerce Clause, all fail as a matter of law.

Plaintiff is not entitled to summary judgment on its request for declaratory relief about the Fur Products Ordinance's scope. The Director of San Francisco's Department of Public Health—who enforces the Ordinance—has stated the City will not enforce the Ordinance against the internet-based (or similar) transactions Plaintiff describes. In light of this directive, Plaintiff cannot show a dispute about the Ordinance's meaning that this Court needs to resolve. Plaintiff's members' subjective fears that the City may enforce the Ordinance against retailers outside San Francisco—notwithstanding the City's express disavowal—do not create a controversy about the Ordinance's meaning. Plaintiff has not satisfied its burden to show that declaratory judgment jurisdiction is appropriate, let alone that it is entitled to summary judgment on this cause of action.

The Court should also deny Plaintiff's request for summary judgment on its dormant Commerce Clause causes of action. The Fur Products Ordinance does not implicate the dormant Commerce Clause, let alone violate it, under controlling Ninth Circuit precedent. The Ordinance is one of many laws that States and localities have passed in recent years prohibiting the sale of products that compromise animal welfare and threaten the environment. Various other jurisdictions have enacted similar laws banning animal products ranging from horsemeat to shark fins to mountain lion parts. The Ninth Circuit and other courts have uniformly upheld these laws against dormant Commerce Clause challenges. *See, e.g.*, *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015) (shark fins); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) (foie gras); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994) ("deleterious exotic wildlife"); *see also Safari Club Int'l v. Becerra*, 702 F. App'x 607 (9th Cir. 2017)

1

(mountain lion parts); *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551 (7th Cir. 2007) (horsemeat); *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326 (5th Cir. 2007) (horsemeat). Plaintiff has no basis to distinguish these cases, which foreclose its summary judgment motion as a matter of law.

If the Court does not deny Plaintiff's summary judgment motion as a matter of law, it should defer consideration of the motion under Federal Rule of Civil Procedure 56(d).  To the extent that facts are necessary to resolve Plaintiff's dormant Commerce Clause causes of action, Plaintiff's request for summary judgment is premature.  Plaintiff has submitted multiple declarations and other evidence in support of its motion despite the fact that discovery has not commenced.  Defendants have not yet had the opportunity to take discovery on the issues raised in this evidence, or on any other potential factual questions in the case.  If the Court concludes that facts are relevant to Plaintiff's dormant Commerce Clause causes of action, Defendants request the Court allow them the opportunity to take discovery on these topics before ruling on Plaintiff's motion.

## BACKGROUND

**I.    The Fur Products Ordinance And The City's Enforcement Directives**

    **A.    The San Francisco Animal Fur Products Ordinance**

In April 2018, the San Francisco Board of Supervisors voted to approve the Fur Products Ordinance, which amended the San Francisco Health Code to ban the sale and manufacture of animal fur products in San Francisco.  S.F. Health Code Article 1D (attached as Exhibit A to the Declaration of Aileen McGrath in support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("McGrath Decl.")).  The Fur Products Ordinance went into effect on January 1, 2019, and made it unlawful to manufacture, sell, offer for sale, display for sale, give, donate, or otherwise distribute fur products in San Francisco.  *Id.* § 1D.4.  The Fur Products Ordinance defines "fur" as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state."  *Id.* § 1D.3.  The Ordinance applies to "any article of clothing or covering for any part of the body, or any fashion accessory" made of fur.  *Id.*

Although the Fur Products Ordinance went into effect in January 2019, it gave entities engaged in the business of selling fur products an additional year to come into full compliance.  Specifically,

entities that purchased or obtained fur products before March 20, 2018 could sell or distribute those products until December 31, 2019.  S.F. Health Code § 1D.4(e).  The Ordinance also contains exemptions for certain fur products and certain fur distributors.  For instance, the Ordinance does not apply to used fur products sold or distributed by non-profit organizations, second-hand stores, or people not normally engaged in the business of selling fur products.  *Id.* § 1D.4(c).  It also exempts products made from the fur of animals obtained through certain California Fish and Game Code trapping licenses, as well as products made exclusively from used fur products.  *Id.*

As the findings cited in support of the Fur Products Ordinance demonstrate, the Board of Supervisors enacted the law to further a number of objectives related to public health, animal welfare, and the environment.  The findings state that while fur products were at one point necessary to "provide protective clothing" and "warmth," "civilizations and technology have developed such that fur is less of a necessity and more of a luxury."  S.F. Health Code § 1D.2(a).  "More than 50 million animals are violently killed for their fur every year," with "[m]ore than 85 [percent] of the pelts in the world's fur trade com[ing] from fur farms."  *Id.* § 1D.2(c).  The findings note that "[f]ur farming can be damaging to the environment and contributes to water and air pollution," in part because "[f]ur processing often involves use of harmful chemicals including chromium and formaldehyde."  *Id.* § 1D.2(e).  Further, the findings determine that "[f]ur farming also consumes significant quantities of energy.  The amount of energy required to produce a coat made of real fur from ranch-raised animal skins is over 15 times that needed to produce a fake fur garment."  *Id.* § 1D.2(f).  The findings thus conclude that:

> The sale of fur products in San Francisco is inconsistent with the City's ethos of treating all living beings, humans and animals alike, with kindness.  In light of the wide array of faux fur and other alternatives for fashion and apparel, the demand for fur products does not justify the unnecessary killing and cruel treatment of animals.  Eliminating the sale of fur products in San Francisco will promote community awareness of animal welfare, bolster the City's stance against animal cruelty, and, in turn, foster a more humane environment in San Francisco.

*Id.* § 1D.2(i).

## B.  The City's Enforcement Directives

The Fur Products Ordinance gives the Director of the San Francisco Department of Public Health ("DPH") authority to enforce the Ordinance.  S.F. Health Code § 1D.5(a).  The Ordinance

empowers the Director to issue rules, regulations, or guidelines "necessary or appropriate for the implementation and enforcement" of the Fur Products Ordinance.  *Id.*  Consistent with this authority, the Director has published a page on the official DPH website titled "Animal Fur Products Frequently Asked Questions" ("FAQs"), which is designed "to address some of the most common questions about its enforcement of the Ordinance."  Tenenbaum Decl. Exh. C.

After the Fur Products Ordinance went into effect, but before Plaintiff filed its lawsuit, DPH published an FAQ indicating that it would enforce the Fur Products Ordinance against retailers not physically located in the City, if they sold a fur product through the retailer's website and shipped the product to a location in the City.  Tenenbaum Decl. Exh. B.  The relevant portion of the earlier version of the FAQs read as follows:

> **5.  Would a retailer that is not physically located in the City violate the Ordinance if a customer purchases a fur product through the retailer's website and the fur product is physically distributed to the City?**
>
> Yes.  Article 1D section 1D.4(a) prohibits the distribution of a fur product by any means in the City.  A retailer that sells a fur product and arranges for a fur product to be distributed to or from the City, violates section 1D.4(a) for distributing a fur product in the City.

*Id.*  Plaintiff does not allege or otherwise demonstrate that the City ever enforced the Ordinance against any retailers located outside of San Francisco.

Earlier this year, DPH modified the Fur Products Ordinance FAQs to clarify its enforcement position and to resolve uncertainties about its interpretation of the Ordinance.  Tenenbaum Decl. Exh. C.  The revised FAQ regarding out-of-state retailers states that DPH will not enforce the Ordinance against retailers with no physical presence in the City.  Thus, when a person or entity purchases a fur product over the internet—or through a similar means of communication—from a retailer based outside the City, DPH will not enforce the Ordinance against them or the retailer itself, even if the fur product is shipped to a San Francisco address.  The revised FAQ states as follows:

> **5.  Does the Ordinance prohibit the sale of fur products purchased through a retailer's website and physically distributed to a location in San Francisco?**
>
> Article 1D section 1D.4(a) prohibits the sale or distribution of a fur product by any means in the City, directly or indirectly, including through a retailer's website.  A retailer with a physical location in the City that sells or distributes a fur product to any location, including to an address in the City, violates section 1D.4(a) for selling or distributing a fur product in the City.  The Department is

> not enforcing the ordinance against retailers with no physical presence in the City. If the Department decides in the future to pursue enforcement against retailers with no physical presence in the City, the Department will provide the public with advance notice regarding the Department's change in enforcement policy.

*Id.*

## II.   Procedural History

On January 13, 2020, Plaintiff filed this lawsuit. Dkt. No. 1. Defendants[1] filed a motion to dismiss on March 16, 2020. Dkt. No. 15. In response, Plaintiff elected to amend its complaint. Dkt. No. 25 (First Amended Complaint ("FAC")). This Court denied Defendants' initial motion to dismiss without prejudice due to the filing of an amended complaint. Dkt. No. 26.

The FAC contains four causes of action. Count One seeks a declaratory judgment that San Francisco may not enforce the Fur Products Ordinance against parties to a transaction in which a fur product is shipped to a San Francisco address from a location outside San Francisco. FAC ¶¶ 38-52. Count One relies on the former version of DPH's FAQs, and argues that DPH might someday enforce the Ordinance in this manner. *Id.* ¶ 43. Counts Two through Four all assert claims under the dormant Commerce Clause to the U.S. Constitution. *Id.* ¶¶ 53-76. Count Two asserts that the Fur Products Ordinance violates the dormant Commerce Clause because it creates a substantial burden on interstate and foreign commerce without a "legitimate local purpose." *Id.* ¶¶ 53-62. Count Three alleges that the Fur Products Ordinance imposes a burden on interstate commerce that exceeds any "putative local benefits." *Id.* ¶¶ 63-69. And Count Four asserts that the Ordinance creates a substantial burden on foreign commerce that exceeds any "putative local benefits." *Id.* ¶¶ 70-76. Plaintiff seeks a declaration that the Fur Products Ordinance violates the dormant Commerce Clause and a permanent injunction prohibiting Defendants from enforcing the Ordinance. *Id.* at 21-22.

Defendants filed a motion to dismiss the FAC on May 4, 2020. Dkt. No. 30. Plaintiff filed this motion for summary judgment on May 22, 2020, Dkt. No. 35, and the parties agreed that the two motions could be heard on the same date, Dkt. No. 37. The Court approved this agreement and also scheduled an Initial Case Management Conference for August 6, 2020. Dkt. No. 38. The parties have not yet held a conference under Federal Rule of Civil Procedure 26(f), and no discovery has occurred.

---

[1] This brief uses "Defendants" to refer to the named defendants in the case and "San Francisco" or "the City" to refer to the City and County of San Francisco more generally.

**LEGAL STANDARD**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**ARGUMENT**

**I.    Plaintiff Is Not Entitled To Summary Judgment On Its Declaratory Relief Claim Because There Is No Dispute About The Fur Products Ordinance's Scope (Count One).**

Although the heart of Plaintiff's case concerns the Fur Products Ordinance's constitutionality, Plaintiff also seeks, in the alternative, a declaration that the Fur Products Ordinance does not apply to internet-based (or similar) transactions between San Francisco residents and retailers located outside the City. FAC ¶¶ 38-52. But declaratory jurisdiction is only appropriate when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941).

But here the parties *agree* about the Ordinance's reach. As Plaintiff acknowledges, DPH has clarified that it will not enforce the Ordinance against retailers located outside San Francisco who sell fur products—via the internet or telephone—to customers located in San Francisco. Tenenbaum Decl. Exh. C; *see also* Dkt. No. 35 (Plaintiff's Motion for Summary Judgment ("Mot.")) at 10. This interpretation is consistent with the Ordinance's language, which applies only to fur products that are sold or otherwise distributed in San Francisco. S.F. Health Code § 1D.4(a) (making it unlawful "to sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute a Fur Product by any means in San Francisco"). And this directive is also consistent with the views of other City departments. Tenenbaum Decl. Exh. A. Plaintiff agrees with this interpretation, and seeks a declaration that the Ordinance in fact operates in this way. FAC ¶¶ 41, 52; *see also* Mot. at 11-13.

Plaintiff's request for declaratory relief is not justiciable in circumstances like this, where the Defendants' interpretation of the Ordinance is consistent with Plaintiff's, and the City has disavowed the intent to enforce the Ordinance in the way Plaintiff alleges.  The Ninth Circuit and other courts have recognized that declaratory relief is improper in this context.  *See, e.g., Citizens for Honesty and Integrity in Reg'l Planning v. Cty. of San Diego*, 399 F.3d 1067 (9th Cir. 2005) (finding there to be "no case or controversy" where plaintiff did not allege that "County intends to employ" a challenged provision); *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 856 (9th Cir. 1985) (finding declaratory judgment improper where State had made clear "that it did not intend to impose any of the disputed taxes on" the plaintiff); *Union Pac. R.R. Co. v. Sacks*, 309 F. Supp. 3d 908, 919-22 (W.D. Wa. 2018) (granting motion to dismiss declaratory judgment claim regarding interpretation of state break-time law where defendant had explained it will "not enforce its break rule" in the challenged manner).  This is because a plaintiff has the burden to show a "specific threat . . . of future enforcement or prosecution" to invoke a court's declaratory jurisdiction.  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139-40 (9th Cir. 2000).  That burden is typically not satisfied where, as here, the government has disavowed the intent to enforce the law as alleged.  *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

Plaintiff does not dispute that it has the burden to show the likelihood of future enforcement; nor does it deny that the government's disavowal of intent to enforce typically negates that showing.  Mot. at 10-11.  Instead Plaintiff argues that the form of the City's disavowal is insufficient (*id.* at 11); that the City could begin enforcing the Fur Products Ordinance against retailers located outside San Francisco at any time (*id.* at 10); and that other reasons, such as Plaintiff's members' desire for certainty, show that declaratory relief is warranted (*id.* at 10-11).  All of these arguments are incorrect.

<u>First</u>, Plaintiff argues that the City has not done enough to disavow a broader interpretation of the Ordinance.  Mot. at 11.  Plaintiff complains that the City would not agree to a stipulation or an injunction precluding future enforcement against retailers located outside of San Francisco.  *Id.*; *see also* Tenenbaum Decl. ¶ 6.  But there is no requirement the City stipulate to Plaintiff's interpretation.  To the contrary, other courts have endorsed similar clarifications to the City's in this case.  *See Peebler v. Reno*, 965 F. Supp. 28, 31 (D. Or. 1997) (holding that plaintiff could not show imminent

injury where government had represented "in its motion to dismiss" that it would not enforce ordinance against her); *see also Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (government's codification of initiative signature collection requirements defeated plaintiff's standing to challenge previous use of unwritten requirements); *Pustell v. Lynn Public Sch.*, 18 F.3d 50, 52 (1st Cir. 1994) (finding case justiciable because plaintiff "face[d] possible sanctions" under state law, but contrasting circumstance in which "the town . . . never planned to take action against the Pustells, and had never taken enforcement action against other parents in a similar situation," which would put the court "in the position of issuing an advisory opinion"); *Pieczenik v. Comm'r N.J. Dep't of Envt'l Prot.*, 715 F. App'x 205, 207 (3d Cir. 2017) (holding that plaintiff could not seek declaratory relief where "defendants expressly disavowed that any enforcement action would be taken against Pieczenik based on the provisions of the [challenged administrative consent order]"). Here, the City has represented to the Court, and to the public, that it will not enforce the Fur Products Ordinance against internet-based, or similar, transactions with retailers with no physical presence in San Francisco.  FAC ¶ 47; Tenenbaum Decl. Exh. C; *see also* Dkt. No. 30 ("MTD") at 8-9.  The City does not need to agree to a stipulation or court order to disavow a broader interpretation of the Ordinance.

Second, Plaintiff argues that even if the City has effectively disavowed the Ordinance's application to internet sales with non-resident retailers, Plaintiff is still injured because the City could "flip flop" and change its mind at any point.  Mot. at 10.  This argument, too, is wrong.  Plaintiff appears to attempt to invoke the "capable of repetition" exception to the actual controversy requirement.  *West Coast Seafood Processors Ass'n v. Natural Res. Def. Council*, 643 F.3d 701, 704 (9th Cir. 2011).  But the Supreme Court has said that "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the *named plaintiff can make a reasonable showing* that he will again be subjected to the alleged illegality."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (emphasis added); *see also West Coast Seafood Processors*, 643 F.3d at 704 (doctrine applies only in "extraordinary cases" (internal citations and quotation marks omitted)).  Plaintiff has no evidence—or even allegations—that the City will ever seek to enforce the Ordinance against retailers located outside of San Francisco.  That the City took this position in the past does not show a

1  realistic possibility of future enforcement. *Lyons*, 461 U.S. at 106-07, 123 (allegations of past conduct

2  alone do not show a likelihood of future injury).

3     The Ninth Circuit's decision in *Gest v. Bradbury* makes this clear.  There, the plaintiff wished

4  to challenge the State's earlier, allegedly unlawful use of unwritten rules regarding initiative signature

5  collection.  443 F.3d at 1179.  The Ninth Circuit held the plaintiff lacked standing to do so because the

6  State had since codified its signature collection standards into administrative law.  *Id.* at 1182.  The

7  Court rejected the argument that the "capable of repetition" doctrine applied because the State had

8  previously used unwritten rules and could resume doing so at some future point.  *Id.* at 1180.  Even

9  though the State had used such rules in the past, the "possibility that the Secretary of State will, in the

10  future, apply unwritten rules . . . is hypothetical and too speculative to confer standing."  *Id.* at 1182.

11  The same is true here.  Indeed, the likelihood the City will adopt the challenged interpretation of the

12  Ordinance is even more speculative here, because Plaintiff does not—and could not—show the City

13  has ever enforced that interpretation.  *See* p. 4, *supra*.

14     Third, Plaintiff claims that declaratory relief is necessary because Plaintiff's members still

15  subjectively "fear prosecution from Defendants" for shipping out-of-state products to San Francisco

16  residents.  Mot. at 10.  Plaintiff claims certain of its members "continue to lose sales" as a result of

17  these unsubstantiated fears.  *Id.*  But even if these members are declining to sell fur products because

18  they fear that San Francisco may enforce the Fur Products Ordinance against them, they still may not

19  seek the declaratory relief they want.  A person's "subjective belief that he may now or in the future be

20  prosecuted" under a particular law does not "authoriz[e] the invocation of federal declaratory

21  judgment jurisdiction."  *Steffel v. Thompson*, 415 U.S. 452, 476 (1974) (Stewart, J., concurring).  Even

22  in the First Amendment context, the Supreme Court has held that "[a]llegations of a subjective 'chill'

23  are not an adequate substitute for a claim of specific present objective harm or a threat of specific

24  future harm."  *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Lopez v. Candaele*, 630 F.3d 775,

25  792 (9th Cir. 2010) (plaintiff's allegation that his "speech was chilled by the existence of [a] sexual

26  harassment policy" was insufficient to allow him to challenge that policy, where the defendant "had

27  not taken any steps to enforce the sexual harassment policy against" him).  Plaintiff's members'

28  subjective belief that DPH will enforce the Ordinance in a way the City has expressly disavowed does

not create a justiciable controversy.  Absent some evidence showing a "credible" threat the City will enforce the Fur Products Ordinance against out-of-state retailers, Plaintiff cannot invoke this Court's declaratory jurisdiction.  *See Thomas*, 220 F.3d at 1140.

*Association des Eleveurs de Canards et D'Oies du Quebec v. Harris*, 79 F. Supp. 3d 1136 (C.D. Cal. 2015), is inapposite.  Mot. at 11.  The question in that case was whether the plaintiff had stated a declaratory judgment claim against the Attorney General *rather than some other defendant*, where the Attorney General had never threatened to enforce the law but various district attorneys had. *Ass'n des Eleveurs*, 79 F. Supp. 3d at 1141-42.  In the face of this "threatened prosecution" from district attorneys, the court found the plaintiffs had standing to challenge the statute's constitutionality. Here, there is no similar argument that "Plaintiffs' claims are not justiciable because they sued the wrong defendant," or any similar pattern of threatened enforcement activity.  *Id.* at 1141, 1143. Indeed, there is no evidence that the City has enforced Plaintiff's challenged interpretation against anyone at all.

*National Audubon Society, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002), also has no bearing on this case.  Mot. at 10-11.  The Ninth Circuit there held that trappers did not need to await enforcement of a statute that "explicitly forbids the trapping they would otherwise do."  *Nat'l Audubon Society*, 307 F.3d at 856.  There was no question that the statute prohibited the conduct the trappers engaged in, thereby causing them an economic injury.  *Id.* at 855-56.  The very opposite is true here: the City has stated it will *not* enforce the Ordinance against out-of-jurisdiction internet sales, so any alleged economic injuries are not due to the Ordinance itself and do not create a cognizable controversy.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) (holding that "self-inflicted" injuries do not create standing).

Fourth, Plaintiff asserts that declaratory jurisdiction is appropriate for other reasons.  Plaintiff claims that the Court must decide whether the Ordinance encompasses sales from retailers outside San Francisco "to properly assess the full scope of the burden that the Fur Ban imposes on interstate and foreign commerce."  Mot. at 9.  But Plaintiff does not point to any evidence—or even allegations— about the dollar value of internet- or telephone-based sales from out-of-state retailers.  Even if the dollar amount of lost commerce were relevant to assessing the burden on interstate commerce—and it

is not, *see* pp. 17-18, *infra*—there is no evidence of the extent of those sales.  Relatedly, Plaintiff claims that constitutional avoidance supports its request for declaratory relief.  Mot. at 13.  But Plaintiff does not suggest a declaratory judgment would obviate its constitutional challenge to the Ordinance itself, so there is no "prudential" reason for the Court to consider its declaratory relief claim.  *Id.*

Indeed, it is noteworthy that Plaintiff never suggests the City lacks the constitutional power to regulate or prohibit sales between San Francisco residents and retailers outside of San Francisco.  Instead, Plaintiff only argues that the Board of Supervisors did not intend to reach those sales here.  Mot. at 12-13.  The City does not address those arguments in this opposition for the same reason that this Court should not: these arguments concern a hypothetical controversy.  San Francisco does not concede that the City could not, consistent with the dormant Commerce Clause, attempt to regulate transactions between San Francisco customers and retailers outside San Francisco if it chose to do so.  But questions about the scope of a local jurisdiction's regulatory authority, whether it "def[ies] logic" for a legislature to regulate transactions between its residents and out-of-state entities, the meaning of various dictionary terms, and the role of any state-law interpretive presumptions (Mot. at 12-13), are not the subject of an actual controversy between the parties, as the Declaratory Judgment Act requires.  *See Aetna Life Ins Co. v. Haworth.*, 300 U.S. 227, 241 (1937); *see also United Food & Commercial Workers Local Union Nos. 137 et al. v. Food Empl'rs Council, Inc.*, 827 F.2d 519, 524 (9th Cir. 1987) (declaratory jurisdiction extends to "actual controversies").  Those issues should be addressed in the context of a live dispute.  The Court should decline Plaintiff's invitation to issue an advisory opinion and deny Plaintiff's request for summary judgment on Count One.

## II.   Plaintiff Is Not Entitled To Summary Judgment On Its Dormant Commerce Clause Claims (Counts Two, Three, and Four).

Plaintiff's remaining causes of action collectively assert the Fur Products Ordinance facially violates the dormant Commerce Clause.  Plaintiff claims that because the Ordinance effects a "complete ban" on fur products commerce in San Francisco, it necessarily imposes a substantial burden on interstate commerce.  Mot. at 14.  Plaintiff also claims this burden is excessive because San Francisco's interest in animal cruelty and the environment is insufficiently "local," for dormant

Commerce Clause purposes, because no fur trapping or processing occurs in San Francisco.  Mot. at 18-19, 21-22.  Plaintiff further claims the Ordinance is not "legitimate" because Plaintiff's members already do enough to protect the environment and further animal welfare.

Plaintiff's dormant Commerce Clause claims are foreclosed as a matter of law by the controlling case law upholding product bans like the Fur Products Ordinance.  *Chinatown Neighborhood Ass'n*, 793 F.3d at 1147; *Ass'n des Eleveurs*, 729 F.3d at 948; *Pac. Nw. Venison Producers*, 20 F.3d at 1012.  And even if Plaintiff's claims were viable, summary judgment would still be inappropriate because Plaintiff's claims are predicated on evidence that demands discovery.  For these reasons, Plaintiff's request for summary judgment on these counts should be denied.

### A.    Legal Standard

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It includes an implied limitation on the regulatory authority of the States and localities, often referred to as the dormant Commerce Clause. *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989).  The purpose of the dormant Commerce Clause is to "prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent."  *C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994).  Its restrictions are "by no means absolute" and "States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected."  *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citations and quotation marks omitted).  "As long as a State does not needlessly obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources."  *Id.* at 151 (citations and quotation marks omitted).

The Supreme Court has adopted a two-tiered approach to determine whether a law violates the dormant Commerce Clause.  *Ass'n des Eleveurs*, 729 F.3d at 948 (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986)).  A statute is essentially per se invalid if it directly regulates or discriminates against interstate commerce or if its effect is to favor in-state economic interests over out-of-state interests.  *Id.*; *see also Nat'l Ass'n of Optometrists & Opticians v.*

*Brown*, 567 F.3d 521, 524 (9th Cir. 2009).  But if a statute has neither of those effects, a different test applies.  The court must first assess whether the statute imposes a "substantial burden on interstate commerce."  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). If so, the court must apply the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  That test examines "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."  *Brown-Forman*, 476 U.S. at 578-79; *see also Pike*, 397 U.S. at 142 ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").[2]

**B.      Plaintiff's Claim That The Fur Products Ordinance Violates The *Pike* Balancing Test Fails As A Matter Of Law.**

Plaintiff elsewhere has conceded that the Fur Products Ordinance does not discriminate against interstate commerce or operate extraterritorially.  Dkt. No. 39 (Opposition to Motion to Dismiss) at 17 n.4.  Plaintiff's sole dormant Commerce Clause theory relies on *Pike*, and asserts that the Ordinance's "substantial burden" on interstate commerce exceeds its putative local benefits and that these local benefits are illusory.  Mot. at 13-24.  Plaintiff's Second, Third, and Fourth Causes of Action are all variations on this argument.  FAC ¶¶ 53-76.  But these causes of action all fail as a matter of law. Plaintiff has not shown a substantial burden on interstate commerce, as necessary to trigger *Pike*'s balancing analysis.  Thus, an inquiry into the Ordinance's benefits is neither required nor appropriate. And even if *Pike* balancing were warranted, the Ordinance is valid because any potential burdens on interstate commerce are not "clearly excessive" when compared to the law's putative benefits.

---

[2] Plaintiff's Foreign Commerce Clause allegations do not change this analysis.  FAC ¶¶ 54, 70-76.  Courts in other circuits have held that product bans like the Fur Products Ordinance do not implicate the Foreign Commerce Clause at all.  *See, e.g., Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 335 (holding that state law prohibiting the sale of horsemeat for human consumption "does not implicate the Foreign Commerce Clause as statutes placing import and export restrictions do").  To the extent the Foreign Commerce Clause is relevant, this Court should analyze Plaintiff's Foreign Commerce Clause claims under the same framework as the dormant domestic Commerce Clause claims.  *See Antilles Cement Corp. v. Acevedo Vila*, 408 F.3d 41, 46 (1st Cir. 2005) ("Although the language of dormant Commerce Clause jurisprudence most often concerns interstate commerce, essentially the same doctrine applies to international commerce.").

1.     **The Fur Products Ordinance Is Not Subject to *Pike* Balancing.**

   a.     ***Pike* Balancing Only Applies To Laws That Impose A Substantial Burden On Interstate Commerce.**

Plaintiff's *Pike*-related causes of action all fail at the threshold because Plaintiff is not entitled to balancing under *Pike*.  *Pike* balancing only comes into play after a plaintiff has first shown a substantial burden on interstate commerce.  *See, e.g., Ass'n des Eleveurs*, 729 F.3d at 952; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147.  Plaintiff has not done so here.  The mere fact that a state or local law touches upon interstate commerce is not enough for a plaintiff to invoke *Pike*.  As the Ninth Circuit has held, a "state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148.  Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*." *Id.*  Where a substantial burden is not shown, it is inappropriate for a court to assess the putative benefits of a challenged law. *Id.*; *see also Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 ("Our precedents, however, preclude any judicial 'assessment of the benefits of [a state] law[] and the . . . wisdom in adopting' it unless the statute either discriminates in favor of in-state commerce or imposes a 'significant burden on interstate commerce.'") (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1156)  (alterations in original).[3]

The Ninth Circuit has also identified two ways that plaintiffs may demonstrate that a law imposes a substantial burden: (1) by showing that the law is discriminatory, or (2) by demonstrating that it creates "inconsistent regulation of activities that are inherently national or require a uniform system of regulation," such as transportation or professional sports leagues. *Ass'n des Eleveurs*, 729 F.3d at 951-52 (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146-47.  Most regulations that have been struck down under *Pike* have been discriminatory.  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *Chinatown Neighborhood Ass'n*, 794

---

[3] Plaintiff incorrectly implies that in *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1078 (9th Cir. 2013), the Ninth Circuit ordered the district court to conduct *Pike* balancing without first identifying a substantial burden on interstate commerce. Mot. at 16.  This is wrong.  The Ninth Circuit there reversed the district court's determination that California's ethanol regulations discriminated against out-of-state retailers. *Id.*  The Court remanded for further consideration under *Pike*, and specifically directed "the district court to consider whether the 2011 Provisions *placed an undue burden* on interstate commerce under *Pike*." *Id.* at 1100-01 (emphasis added).

F.3d at 1146; *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997) (citing cases and concluding that "several cases that have purported to apply the undue burden test (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the challenged state regulations"). The "small number" of other dormant Commerce Clause cases in which courts have invalidated state or local statutes all involved inherently national activities. *Ass'n des Eleveurs*, 729 F.3d at 952; *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987).

Plaintiff has failed to identify a cognizable "substantial burden" under this framework. Plaintiff does not demonstrate—or even allege—that the regulation of fur products is "inherently national," and it is not; or that the fur products trade requires a "uniform system of regulation," which it does not. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also Pac. Nw. Venison Producers*, 20 F.3d at 1014. Plaintiff does not even attempt to fit the Fur Products Ordinance into these categories. This omission alone forecloses its dormant Commerce Clause claims.

> **b.** **The Ban On The Sale Of A Product Is Not A Substantial Burden On Interstate Commerce.**

Instead, Plaintiff argues that a "categorical ban" on the sale of fur products constitutes a substantial burden as a matter of law. But this argument is wrong under controlling precedent. The Ninth Circuit, and various other circuits, have upheld numerous other laws imposing similar jurisdiction-wide bans on the sale of particular products. *See, e.g., Ass'n des Eleveurs*, 729 F.3d at 948; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison Producers*, 20 F.3d at 1012; *see also Cavel Int'l*, 500 F.3d at 556. The Ninth Circuit has stated that an "import ban that simply effectuates a complete ban on commerce" does not violate the dormant Commerce Clause where it "does not make distinctions based on the origin of the items." *Pac. Nw. Venison Producers*, 20 F.3d at 1012; *see also Ass'n des Eleveurs*, 729 F.3d at 948. Plaintiff admits the Ordinance does not make such distinctions. Mot. at 16; *see also* p. 13, *supra*. Plaintiff's *Pike* claim therefore fails at the threshold as a matter of law.

Plaintiff largely ignores this controlling authority. Plaintiff's only attempt to acknowledge it comes by way of a footnote, in which Plaintiff argues that one of the many cases upholding a product

ban did not actually involve a product ban at all.  Mot. at 16 n.4.  Plaintiff refers to the Ninth Circuit's decision upholding the denial of a preliminary injunction against California's ban on the sale of foie gras products.  *Id.* (citing *Ass'n des Eleveurs*, 729 F.3d 937).  Plaintiff claims that the Court did not answer the question of whether the foie gras law is a "complete ban," so *Eleveurs* does not support the Fur Products Ordinance's constitutionality.  *Id.*  But this argument is both irrelevant and wrong.  It is irrelevant because Plaintiff ignores the long line of other authority upholding product bans.  *See, e.g., Chinatown Neighborhood Ass'n*, 794 F.3d at 1140 (upholding law making it unlawful to "possess, sell, trade, or distribute" shark fins in California); *Pac. Nw. Venison Producers*, 20 F.3d at 1010 (upholding ban on "importation, holding, possession . . . sale, transfer, or release" of certain "exotic wildlife"); *see also Cavel Int'l*, 500 F.3d at 556 (upholding statute banning the sale of horsemeat for human consumption); *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336 (upholding ban on sale of horsemeat where no party could "point to a single burden that [the law] places on interstate commerce that does not equally befall intrastate commerce").  And it is wrong because *Eleveurs* is not to the contrary.  The Ninth Circuit observed in that case that the plaintiffs' evidence left open the possibility that foie gras could be produced by other lawful methods.  729 F.3d at 949-50.  Nevertheless, the Court found it unnecessary to decide this question because the district court's denial of a preliminary injunction was proper regardless.  *Id.* at 950.  The Court never found the foie gras law was *not* a ban, or indicated that it would be any less constitutional if it were.

The fact that the Ordinance reaches fur products that originate elsewhere in the world (Mot. at 15), does not change the analysis.  San Francisco may seek to regulate products sold within its own market, even if doing so affects upstream out-of-state producers.  *See Rocky Mountain Farmers Union*, 730 F.3d at 1103 (holding that States and localities are "free to regulate commerce and contracts within their boundaries with the goal of influencing the out-of-state choices of market participants").  Indeed, the Ninth Circuit has held that even a product ban that will affect out-of-state producers exclusively does not substantially burden interstate commerce.  *Ass'n des Eleveurs*, 729 F.3d at 942 (upholding California's foie gras ban notwithstanding the plaintiff's assertion that the ban would only affect out-of-state producers).  This is consistent with Supreme Court authority, which has upheld

statutes that affect a market composed primarily of out-of-state participants. *CTS Corp.*, 481 U.S. at 88 (rejecting dormant Commerce Clause challenge).

**c.**     **Lost Revenues Do Not Demonstrate A Substantial Burden.**

Alternatively, Plaintiff claims it has demonstrated a substantial burden by pointing to the "dollar value of lost commerce" from the Fur Products Ordinance. Mot. at 16. Plaintiff claims that the loss of upwards of $10 million in annual revenue from fur commerce in San Francisco demonstrates that the Ordinance effects a substantial burden. *Id.* (citing Tenenbaum Decl. ¶ 2 & Exh. A). But diminution of commerce is not one of the types of burdens the Ninth Circuit has found to be substantial for dormant Commerce Clause purposes. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also* pp. 14-15, *supra*. Plaintiff cites no cases endorsing its understanding of a substantial burden. Instead, Plaintiff only cites a single case rejecting arguments about lost commerce. *See* Mot. at 16 & n.4; *see also Ass'n de Eleveurs*, 729 F.3d at 953.[4]

The problem with Plaintiff's argument is it ignores that the dormant Commerce Clause is concerned only with "*substantial burden*[s] on *interstate commerce*." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148. Plaintiff agrees that the dormant Commerce Clause has this focus. *See, e.g.,* Mot. at 23 ("States may not impose undue burdens on *interstate* commerce.") (quoting *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2091 (2018)) (emphasis added). But Plaintiff's assertions and evidence about diminished revenues only show, at most, that the Fur Products Ordinance has some incidental effects on particular commercial activities *in San Francisco*. Mot. at 16 (referring to "the market for fur products in San Francisco"). Plaintiff presents no evidence about the interstate or foreign market for fur products, or about how any effects on commercial activities occurring within San Francisco may impact that market. Only these *interstate market* effects matter for dormant Commerce Clause purposes. *See Exxon v. Governor of Md.*, 437 U.S. 117, 127 (1978) ("the Clause protects the *interstate*

---

[4] Plaintiff compares its allegations of lost revenues to a $200,000 figure from *Pike*. Mot. at 16 (citing *Pike*, 397 U.S. at 146). But *Pike*'s holding was not based on this monetary burden, but instead on the fact that the law at issue burdened interstate commerce by "requiring that certain kinds of processing be done in the home State before shipment to a sister State"—a type of discriminatory law that "ha[s] been consistently invalidated by this Court under the Commerce Clause." *Pike*, 397 U.S. at 141-42; *see also Gen. Motors Corp.*, 519 U.S. at 298 n.12 (stating that "*Pike* itself" "arguably turned in whole or in part on the discriminatory character of the challenged state regulations").

*market*") (emphasis added); *Pac. Nw. Venison Producers*, 20 F.3d at 1015 (examining "certain types of impacts on *interstate commerce*") (emphasis added); *see also Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217-18 (2d Cir. 2004) (holding that to state a claim under *Pike*, "'the minimum showing required is that [the state statute] have a disparate impact on interstate commerce'") (quoting *Automated Salvage Transp., Inc. v. Wheelabrator Envt'l Sys., Inc.*, 155 F.3d 59, 75 (2d Cir. 1998)). Plaintiff does not even attempt to show how a ban on the sale of fur products in a single city, with a population of less than 1 million people, will impact the interstate and foreign market for fur products. Absent undisputed evidence about the effect on interstate commerce, Plaintiff's arguments about lost commerce fail to show a dormant Commerce Clause problem.  *See Cavel Int'l*, 500 F.3d at 558 (dismissing foreign dormant Commerce Clause claim against state ban on the sale of horsemeat where plaintiff failed to allege "what percentage of horse meat consumed by Europeans it supplies and whether its being closed down is likely to have a big effect on the price of horse meat in Europe").

### 2.   Plaintiff Has Not Shown That Any Burden The Ordinance Imposes Clearly Exceeds Its Legitimate Local Purposes.

Even if *Pike*'s threshold requirement of a substantial burden were met in this case, Plaintiff would still not be entitled to summary judgment.  Plaintiff's claim that any such burden is clearly excessive in relation to the Fur Products Ordinance's putative local benefits fails as a matter of law.

#### a.   San Francisco's Interest In Animal Welfare And The Environment Is Constitutionally Valid.

Plaintiff agrees that the San Francisco Board of Supervisors identified a number of objectives related to animal welfare and the environment when it passed the Fur Products Ordinance.  Mot. at 17-18; *see also* S.F. Health Code § 1D.2.  Plaintiff does not dispute that protecting animal welfare and the environment are, in general, quintessential examples of legitimate local interests.  *See United States v. Stevens*, 559 U.S. 460, 469 (2010).  Instead, Plaintiff claims that under the dormant Commerce Clause, San Francisco is limited to protecting animals *in San Francisco* or preventing environmental harms from activities *in San Francisco.*  Mot. at 18 (arguing that the Ordinance does not serve a "local interest" because "no animals are farmed or trapped for their fur in San Francisco" and "no fur farming or processing takes place in San Francisco") (emphases omitted).

San Francisco agrees that no fur trapping or fur processing occurs in San Francisco.  But that does not make San Francisco's interest in animal cruelty or the environment any less "local" for dormant Commerce Clause purposes.  Once again, the Ninth Circuit has foreclosed Plaintiff's arguments as a matter of law:  The dormant Commerce Clause permits localities to regulate products sold locally, with the goal of influencing upstream conduct.  *Rocky Mountain Farmers Union,* 730 F.3d at 1103.  The Constitution does not require that upstream conduct to occur within the jurisdiction. To the contrary, the Ninth Circuit and other courts have upheld product bans that aim to eliminate the local market for a product in order to influence the treatment of animals elsewhere.  *See, e.g.*, *Chinatown Neighborhood Ass'n*, 794 F.3d at 1140 (California's shark fin ban reduced the local "market for shark fin" in order to decrease "the practice of shark finning" and prevent the death of "tens of millions of sharks . . . each year") (citing 2011 Cal. Legis. Serv. ch 524, § 1(d), (f)); *Ass'n des Eleveurs*, 729 F.3d at 952 (California's foie gras ban constitutionally sought to decrease the practice of force-feeding birds outside the State); *see also Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336 (Texas ban on sale of horsemeat constitutionally sought to influence "the *global* horsemeat market") (emphasis added).  As other courts have also recognized, jurisdictions may "constitutionally conserve wildlife elsewhere by refusing to accept local complicity in its destruction."  *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987); *see also Cavel Int'l*, 500 F.3d at 557 ("States have a legitimate interest in prolonging the lives of animals that their population happens to like.").  Localities may likewise target out-of-state conduct that harms the environment. *See, e.g., Chinatown Neighborhood Ass'n*, 794 F.3d at 1147 (shark fin ban could operate as "a means of ocean fishery management").  This reflects the fact that environmental injuries are not truly local, as Plaintiff suggests (Mot. at 21), but instead cause widespread harm, *see Massachusetts v. E.P.A.*, 549 U.S. 497, 519-22 (2007) (characterizing environmental injuries as "widely shared") (internal quotation marks omitted).

In any case, the Fur Products Ordinance is directed to "local harm," notwithstanding Plaintiff's contrary assertions.  Mot. at 21.  San Francisco has concluded that the purchase or sale of fur products

in San Francisco[5] is detrimental to "community awareness of animal welfare . . . [and] the City's stance against animal cruelty." S.F. Health Code § 1D.2(i). San Francisco may legitimately seek to "discourage the consumption of products" in order to "prevent complicity in a practice that it deem[s] cruel to animals," *Ass'n des Eleveurs*, 729 F.3d at 952, or to "express disgust" about the treatment of certain animals, *see Cavel Int'l*, 500 F.3d at 557.

### b.      San Francisco's Interest In Animal Welfare And The Environment Is Legitimate.

Much of Plaintiff's motion attempts to show that the Fur Products Ordinance is unnecessary and San Francisco could protect its interests in other ways. Mot. at 19-24. Plaintiff's main point appears to be that its members have already agreed to "a strict code of conduct" that effectively protects animal welfare and the environment. *Id.* at 20; *see also id.* at 22 (citing declarations claiming that "the trapping of wild fur is strictly regulated in North America by state, provincial, and territorial wild biologists," and that "these regulations are effective" in protecting the environment). Plaintiff thus claims that San Francisco's interest in addressing these issues through the Ordinance is "not legitimate." *Id.* at 21.[6]

These assertions do not entitle Plaintiff to summary judgment. Such evidence is irrelevant in a case like this one, where Plaintiff has failed to show that the Ordinance substantially burdens interstate commerce. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *see also* pp. 14-18, *supra*. And even if it were relevant, Plaintiff ignores that *Pike* does not assess the *actual* benefits of a law, but only its *putative* benefits. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (noting that *Pike* "does not

---

[5] Because the Fur Products Ordinance concerns transactions in San Francisco, neither *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), or *Sam Francis Foundation v. Christies*, 784 F.3d 1320 (9th Cir. 2015), are relevant. Mot. at 15, 18. Both cases struck down statutes regulating out-of-state transactions. *Edgar*, 457 U.S. at 643; *Sam Francis Found.*, 784 F.3d at 1323-24.

[6] The Court should disregard Plaintiff's attempt to show that San Francisco has not acted consistently on these topics. Plaintiff criticizes San Francisco for not prohibiting fur trapping within its borders or forbidding the use of chemicals commonly used in fur processing. Mot. at 21-22. These assertions are curious given that Plaintiff elsewhere points out—and San Francisco does not dispute— that no fur trapping or processing occurs in San Francisco. *Id.* at 8. Regardless, courts routinely disregard assertions like these in dormant Commerce Clause cases. *See, e.g., Cavel Int'l*, 500 F.3d at 557 ("Of course Illinois could do much more for horses than it does . . . [but] it is also permitted to take one step at a time on a road toward the humane treatment of our fellow animals.").

mention actual benefits as part of the test for determining when a regulation violates the dormant Commerce Clause"); *see also Cavel Int'l*, 500 F.3d at 557 (horsemeat ban is constitutional "even if no horses live longer as a result of the new law"). Furthermore, courts have made clear that allegations like Plaintiff's—which do no more than quibble with the legislature's considered judgment—should be disregarded. *See, e.g., CTS Corp.*, 481 U.S. at 92 (courts reviewing dormant Commerce Clause challenges should not "second guess the empirical judgments of lawmakers concerning the utility of legislation"); *Pac. Nw. Venison Producers*, 20 F.3d at 1016 (similar); *see also Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1130 (7th Cir. 1995) ("disapprov[ing]" district court's understanding of *Pike* as allowing a "comprehensive review of the law's benefits, free of any obligation to accept the legislature's judgment").

The Ordinance's benefits outweigh any minor burdens on interstate commerce. As described above, the Ninth Circuit has routinely concluded that complete bans on products are not clearly excessive in relation to the government's interests. *See, e.g., Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Ass'n des Eleveurs*, 729 F.3d at 953; *Pac. Nw. Venison Producers*, 20 F.3d at 1015. Other circuits have also held that the benefits from laws banning the sale of certain animal products exceed any burdens those laws impose. *See, e.g., Cavel Int'l*, 500 F.3d at 555-59; *Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336-37. The Fur Products Ordinance is no different from any of the laws upheld in these other cases.

Plaintiff's request that the Court consider the availability of alternatives is also inappropriate. Mot. at 23-24. Where a law is not discriminatory and places no significant burden on interstate commerce, the Ninth Circuit has instructed that courts should "not consider any evidence regarding alternative means for the State to achieve its goals." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157. This is because "it is inappropriate for [a court] to set [such a law] aside based on a conclusion that the State's purposes could be served as well with alternative laws." *Id.*; *see also Ass'n des Eleveurs*, 729 F.3d at 953. Plaintiff's citation of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 33 (1977) (Mot. at 23), only proves the point. The Court in *Hunt* considered the availability of alternatives because the law at issue was discriminatory. 432 U.S. at 350-51. Because Plaintiff agrees the Fur Products Ordinance is not discriminatory, *Hunt* has no bearing on this case.

**C.    To The Extent Facts Are Necessary To Resolve Plaintiff's Claims, The City Requires Discovery**

Plaintiff's dormant Commerce Clause claims should be denied as a matter of law.  *See* pp. 11-21, *supra*.  But even assuming that facts are relevant, Plaintiff's motion should be denied or deferred as premature under Federal Rule of Civil Procedure 56(d).  Plaintiff's motion relies on various factual assertions that the City has not yet had the opportunity to test, and refers to over a dozen declarations from witnesses that San Francisco has yet to depose.  Plaintiff incorrectly characterizes these facts as "undisputable" (Mot. at 2), ignoring that San Francisco has yet to conduct the discovery necessary to determine whether a dispute of fact exists.  Plaintiff has not carried its burden to show that there is no genuine issue of material fact.  *Celotex*, 477 U.S. at 323 (party seeking summary judgment "always bears the initial responsibility" of demonstrating the absence of a genuine issue of material fact).  Plaintiff cannot do so at this juncture.

Plaintiff's motion relies on various factual assertions that, if relevant, need to be examined through discovery.  For instance, Plaintiff purports to show a substantial burden on interstate commerce by pointing to "the dollar volume of lost commerce" from the Ordinance.  Mot. at 16.  If that dollar volume of lost commerce is relevant, the City is entitled to discovery on this topic.  In support, Plaintiff cites a presentation prepared by the San Francisco Controller's Office referring to various estimates of the size of the fur market in San Francisco.  Tenenbaum Decl. Ex. A (referring to "Impact Estimates" of the proposed Ordinance).  In other contexts, the Ninth Circuit has found estimates like these insufficient to show a substantial burden.  *See Safari Club Int'l*, 702 F. App'x at 608.  Discovery is necessary if Plaintiff is entitled to introduce evidence on this topic.

Plaintiff also relies on a number of factual assertions in support of its claim that the Fur Products Ordinance is not sufficiently local or legitimate.  Regarding the "local" prong of the inquiry, Plaintiff claims that San Francisco has no environmental interest because its "waters," "air," and overall "environment" are not affected by fur processing outside San Francisco.  Mot. at 21.  If evidence on the "local" aspect of *Pike* is warranted, San Francisco is entitled to seek discovery on these factual assertions.

The same is true regarding the many facts Plaintiff asserts in support of its challenge to the Ordinance's legitimacy.  Plaintiff claims the Fur Products Ordinance's benefits are illusory because various "industry-relevant laws" already protect fur-bearing animals from mistreatment.  *Id.* at 20.  For instance, Plaintiff introduces declarations stating, *inter alia*, that "Europe's fur sector" employs criteria to "measure animal welfare at fur farms," that many U.S. mink farms follow a certification program requiring them to "undergo regular and mandatory veterinary inspections" (Stockall Decl. ¶¶ 3-5), and that trapping regulations in North America are "effective" at preserving animal populations (Herscovici Decl. ¶ 2).  *See also* Zimbal Decl. ¶ 2 ("Zimbal's mink are raised in compliance" with "legal requirements for humane treatment").  Plaintiff also introduces—but does not cite—testimony apparently offering an expert opinion regarding the treatment of animals on fur farms.  Hildebrandt Decl. ¶ 3 (offering "professional opinion" that fur processors have incentives to ensure a mink receives "proper nutrition" and "an appropriate environment").  Plaintiff attempts to introduce similar evidence about San Francisco's interest in protecting the environment: It cites declarations purporting to dispute the City's identified interest in reducing the use of certain chemicals to process furs by pointing out that formaldehyde is only used "as a preservative" but not in "dressing furs" (Stockall Decl. ¶ 6) and that chromium "is not toxic and does not pose a threat to human health" (Sixt Decl. ¶ 5).  It contends that fur farms contribute to environmental sustainability, rather than to environmental degradation.  Mot. at 22; *see also*, *e.g.*, Stockall Decl. ¶ 9 ("The fur industry, including farmed and wild fur, is conducted in a manner that contributes to the environmental sustainability of our communities."); Zimbal Decl. ¶ 3 ("Zimbal's animal welfare practices also contribute to environmental sustainability in Wisconsin.").  And it claims that fur alternatives actually cause more harm to the environment than fur products themselves.  Mot. at 21 (citing Stockall and Herscovici declarations).

Plaintiff's introduction of this raft of evidence demonstrates why summary judgment is premature at this time.  When a summary judgment motion is filed before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, the district court should grant a Rule 56(d) motion "fairly freely."  *Burlington N. Santa Fe. R.R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003)  "[S]ummary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to

the proof of a viable claim." *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (citation omitted).
Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it
cannot present facts essential to justify its opposition, the court may (1) defer considering the motion
or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other
appropriate order."  To meet the Rule 56(d) standard, the party invoking the Rule must show: "(1) it
has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts
sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home
& Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  Rule 56(d) does
not set a high bar, particularly when "no discovery whatsoever has taken place." *Burlington N. Santa
Fe R.R. Co.*, 323 F.3d at 774.  Although Rule 56(d) gives the Court the "discretion to disallow
discovery when the non-moving party cannot yet submit evidence supporting its opposition, the
Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the
nonmoving party has not had the opportunity to discover information that is essential to its
opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quotation omitted).

In this case, Defendants have not yet answered the First Amended Complaint and have not yet
conferred under Rule 26(f), so the City has not been permitted to "seek discovery from any source."
Fed. R. Civ. P. 26(d); McGrath Decl. ¶ 3.  If the Court does not deny Plaintiff's summary judgment
motion as a matter of law, then Defendants respectfully request that the Court defer consideration of
Plaintiff's motion to permit the City discovery on the following topics:

- The current economic impact of the Fur Products Ordinance on the fur products
  industry in San Francisco;

- The extent to which any regulations or industry standards specific to the fur industry
  protect animal welfare and/or the environment;

- The harm to people and/or the environment from chemicals used in fur processing,
  including formaldehyde and chromium;

- The extent to which the fur industry "contributes to the environmental sustainability of
  our communities" (Stockall Decl. ¶ 6);

- The impact on San Francisco's water, air, and environment from fur farming and processing outside of San Francisco;
- The basis for the assertion that "there is a direct relationship between the quality of a mink's pelt and the care with which it is raised" (Hildebrandt Decl. ¶ 3).

McGrath Decl. ¶¶ 4-5.

To the extent the Court determines it is necessary to evaluate facts and evidence regarding whether the Fur Products Ordinance furthers a legitimate local interest, these issues of fact are essential to Defendants' opposition to summary judgment on those causes of action. McGrath Decl. ¶ 6. The City would seek discovery of the facts set forth above from Plaintiff through various means, including document requests, interrogatories, and requests for admission; depositions of the witnesses Plaintiff has identified and Plaintiff's purported experts; discovery involving other sources, such as experts; and third-party subpoenas, if necessary. *Id.*

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment or, in the alternative, defer consideration of that Motion under Rule 56(d).

Dated: June 25, 2020

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
AILEEN M. MCGRATH
Deputy City Attorneys


By: /s/Aileen M. McGrath


AILEEN M. MCGRATH
Attorneys for Defendants

CITY AND COUNTY OF SAN FRANCISCO; and
DR. GRANT COLFAX, an individual, in his official
capacity as Director of the San Francisco Department of
Public Health