UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL FUR TRADE FEDERATION,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 20-cv-00242-RS<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

## I. INTRODUCTION

In its Third Amended Complaint ("TAC"), Plaintiff International Fur Trade Federation ("IFF") narrows and reasserts its theory that a San Francisco Ordinance banning the sale, distribution, or manufacture of fur products ("Ordinance" or "Fur Ban") is unenforceable as applied to national retailers maintaining a location within San Francisco. It also purports to resurrect its dormant Commerce Clause challenges to the same Ordinance. Defendants the City and County of San Francisco and its Director of Public Health in his official capacity (together, "the City") as well as Defendant-Intervenors the Humane Society of the United States and the Animal Legal Defense Fund (collectively, "Defendants") move to dismiss under Rule 12(b)(6). For the reasons set forth below, the motions to dismiss are granted.

## II. BACKGROUND[1]

---

[1] The facts and history of this case and the Ordinance were set forth in detail in the previous order granting motions to dismiss.

In 2018, San Francisco amended its Health Code to ban the sale and manufacture of fur products within its boundaries. The Fur Ban makes it unlawful to manufacture, "sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute a Fur Product by any means in San Francisco." S.F. Health Code Article § 1D.4(a). In July 2020, this Court dismissed a complaint in which IFF alleged the Ordinance was unenforceable against retailers who ship fur to San Francisco addresses from outside the city and unconstitutional under the dormant Commerce Clause. Soon after that order was filed, IFF contacted the City to inquire whether it intended to enforce the Ordinance against online or other remote sales of fur products shipped to a San Francisco address from a retailer beyond the city limits that maintains a physical location in the city. In a letter dated July 31, 2020, the City confirmed that intention and explained that it "does not and will not dispute that the Ordinance applies to all fur product sales that a retailer with a physical presence in San Francisco makes, regardless of whether that fur product is shipped from another location." Defendants' Request for Judicial Notice, Dkt. 77, Ex. C at 2. IFF then filed its Second Amended Complaint, which included three new claims for relief related to the subset of retailers described above. After Defendants brought motions to dismiss challenging IFF's standing to bring its new claims, the parties stipulated to the filing of a TAC which alleged more particularized harm and reasserted the new claims.

### III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners*

*LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

### A. Evidence Outside the Pleadings

The parties request judicial notice be taken of many materials. Specifically, the City submits: (1) Article 1D of the San Francisco Health Code (the text of the Ordinance); (2) a copy of the publicly available webpage maintained by the San Francisco Department of Public Health entitled "Animal Fur Products Frequently Asked Questions;" (3) the July 31, 2020 letter from the City to IFF's counsel explaining its position ("July 2020 letter"); and (4) a transcript of the San Francisco Board of Supervisors' Public Safety and Neighborhood Services Committee hearing held on March 14, 2018 ("2018 Committee hearing"). IFF requests notice of: (1) a presentation made at the same 2018 Committee hearing; (2) a specific comment made at the 2018 Committee hearing; (3) the unanimous vote at the 2018 Committee hearing to recommend passage of the Ordinance by the Board of Supervisors; (4) "[t]he fact that, at the hearing of the San Francisco Board of Supervisors on March 20, 2018, no Supervisor ever questioned the Fur Ban's inapplicability to out-of-town or online sales or ever articulated any different interpretation;" (5) the Ordinance's passage by unanimous vote at two San Francisco Board of Supervisor hearings held on March 20, 2018 and April 3, 2018; and (6) the July 2020 letter. Neither party objected to any of the requests. Putting aside whether all these items satisfy the requisites for judicial notice or incorporation by reference, in the absence of any objection the motions will be granted.

### B. Motions to Dismiss

In its TAC, IFF highlights a potential enforcement scenario technically embraced, though not directly contemplated, by the City's previous enforcement guidance. Specifically, under Count Five, IFF requests a declaration that the Fur Ban may not be applied to retailers with a physical

location in San Francisco who offer for sale, whether online or by other remote means, fur products shipped from, or otherwise manufactured and processed, outside San Francisco to a San Francisco address. IFF offers Bloomingdale's, Neiman Marcus and Saks Fifth Avenue as examples of the potentially affected retailers with both local and nationwide locations. Counts Six and Seven allege two different ways the Ordinance, as applied to those retailers, violates the dormant Commerce Clause.[2] In short, IFF once again seeks reassurance that the Ordinance cannot be applied to retailers who do business outside San Francisco.

Counts Six and Seven should be dismissed at the outset. In its opposition, IFF specifically disavows any intention to litigate its dormant Commerce Clause challenges to the Ordinance. Should it succeed in showing that it is entitled to declaratory relief under Count Five, IFF believes its constitutional arguments become irrelevant and seeks the entry of judgment in its favor.[3] If, on the other hand, the Ordinance is found to be properly applied to retailers maintaining a physical location in the City, " in light of the Court's view of the Ninth Circuit's dormant Commerce Clause jurisprudence," as set forth in the previous order, "IFF would not oppose the dismissal of its [constitutional claims] provided that such dismissal is *without* prejudice." Opposition ("Opp.") at 20 (emphasis in original). Because nothing in Counts Six or Seven rectify the flaws previously identified, IFF's constitutional claims are dismissed without further leave to amend.

Count Five, on the other hand, merits substantive discussion. IFF requests a declaratory judgment that the Fur Ban does not apply to products sold online and shipped by a retailer outside San Francisco even if the retailer maintains a "physical presence" in San Francisco. Opp. at 11. Initially, Defendant-Intervenors insist IFF's request for declaratory relief must be denied as a

---

[2] The parties agree that only IFF's fifth, sixth, and seventh claims for relief remain viable because the first four were previously dismissed. IFF alleges it retains its first four claims for relief in its TAC "solely for purposes of facilitating review on appeal and for their support of IFF's additional causes of action." TAC at 13 n.1.

[3] After these motions to dismiss were filed, IFF brought a motion for partial summary judgment on Count Five. Defendants and Defendant-Intervenors filed oppositions. Two days after its reply was due, IFF purported to withdraw the motion. Though untimely, the motion was deemed withdrawn over Defendants' and Defendant-Intervenors' objections.

result of its abandonment of its constitutional claims, but this argument misconstrues the foundation on which IFF rests its claim that the Ordinance is unenforceable. In addition to challenging the constitutionality of the Fur Ban, IFF contends that it may not be applied to the relevant retailers because the text and legislative history of the Ordinance do not allow it. The question becomes therefore whether the terms of the Ordinance preclude its application to the retailers described above.

First, IFF argues the text of the Ordinance does not support the distinction between online sales from out-of-town retailers and retailers located outside of San Francisco that maintain a physical presence in San Francisco. It emphasizes the phrase "in San Francisco"[4] and relies on the dictionary definition of "sale" ("the transfer of ownership of and title to property from one person to another for a price")[5] to read the broader phrase "sell . . in San Francisco" as a geographic constraint on enforcement. Explaining the Ordinance does not include a more expansive definition of "sell," nor of "distribute," IFF concludes the Fur Ban only bars transfers of ownership which take place in San Francisco.[6] For further support on this point, IFF turns to California's Commercial Code, which instructs that title passes to a buyer once a seller completes its performance. Cal. Com. Code § 2401(2). If the seller is not required to deliver goods to their destination, "title passes to the buyer at the time and place of shipment." *Id.* at § 2401(2)(a). Lastly, IFF compares the Ordinance to other local laws to show that the City is capable of clearly prohibiting the receipt or delivery of products sold over the internet to consumers in San Francisco

---

[4] The full text reads: "[I]t shall be unlawful to sell, offer for sale, display for sale, trade, give, donate, or otherwise distribute a Fur Product by any means in San Francisco." S.F. Health Code Article § 1D.4(a).

[5] *Sale*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993).

[6] Relatedly, IFF makes the argument that an FAQ confirming that shipping a fur product displayed for sale at a retailer in the city to an address in the city would violate the Ordinance is in tension with its enforcement of the Ordinance against national retailers with a location in San Francisco. This argument makes no sense. The FAQ simply reinforces the proposition that the City would enforce the Fur Ban against a retailer within and without the City. It does not purport to make those enforcements mutually exclusive.

but did not do so here.

IFF's textual arguments are infused with the assumption that each storefront possesses a separate legal identity, meaning that a consumer's purchase of a product from a retailer's website will be in some way attributed to the storefront or warehouse from which it is shipped rather than to the retailer as a whole and thus would not occur "in" the city. IFF does not, however, allege facts suggesting that any of the retailers against which the Ordinance might be enforced are indeed organized in that way.[7] Nor can § 2401 shift the focus of the inquiry from the location of the store to the location of the fur products before they were sold – it does not apply "in cases where the applicability of 'public' regulation depends upon a 'sale' or upon location of 'title' without further definition." *Cal. State Elecs. Ass'n v. Zeos Int'l Ltd.*, 41 Cal. App. 4th 1270, 1276 (1996) (quoting an official comment to § 2401).

Furthermore, a plain reading of the Ordinance does not support IFF's interpretation. It has selectively, and misleadingly, quoted the Ordinance as if it bars only the sale of fur products when, in fact, it also makes it unlawful to "offer for sale, display for sale, trade, give, donate, or otherwise distribute" fur products. S.F. Health Code § 1D.4(a). Together with the correspondingly broad prohibition on conducting any of the prohibited activities "by any means," the list of banned activities must be read to apply to the broadest range of sales, which necessarily includes internet sales where both the buyer and seller are located in San Francisco. Adding words from other statutes like "purchase," "buy," or "deliver" would shift the point of enforcement from seller to buyer and forbid a wider range of conduct than was originally intended. Moreover, even if the addition of those words clarified the meaning of other statutes, they need not be used here, where the meaning is sufficiently clear in text and structure. *See Niles Freeman Equip. v. Joseph*, 161 Cal. App. 4th 765, 783 (2008) ("The Legislature is not required to use the same language to

---

[7] It is worth noting that if a national retailer were to insulate, legally and organizationally, each of its stores from all its other stores in other locations, an enforcement action against the San Francisco branch of that retailer as a consequence of a consumer's purchase of a fur product from a different branch might be inappropriate.

accomplish the same ends."). IFF's textual arguments are therefore unpersuasive.[8]

Second, IFF contends the legislative history of the Ordinance compels the conclusion that it was intended to exclude all online sales and sales from retailers outside San Francisco. IFF first highlights the absence of discussion about the Ordinance's application to online sales or any "physical presence" condition at the various hearings and in the legislative digests. It then underscores two comments at the 2018 Committee hearing, one by San Francisco's Controller Dr. Ted Egan that "there is no explicit ban of out of town sales or online sales either," and the other by Supervisor Aaron Peskin that the city could expect "an economic shift from brick and mortar retailers to the internet . . . [b]ecause there's nothing that we can do, nor does this legislation, it's very clear, impact internet sales of fur." Defendants' Request for Judicial Notice, Dkt. 93, Ex. A at 6, 32. A presentation at the 2018 Committee hearing by the City's Office of Economic Analysis echoes Supervisor Peskin's statements, noting on its introductory slide that "[t]he possession of fur products is not banned; nor are out-of-town or online sales explicitly prohibited." IFF's Request for Judicial Notice, Ex. A at 2.

Again, IFF recounts the record out of context. Soon after Supervisor Peskin's statement, the sponsor of the Ordinance, Supervisor Katy Tang, clarified: "[S]ales that take place online and that would actually be delivered to a San Francisco zip code or San Francisco in general would actually be impacted by this legislation." *Id.* at 35 (filler words omitted). Another Supervisor, Hillary Ronen, accentuated the clarification by deeming it "great news" and asking how an application to online sales would be enforced. *Id.* at 36. Supervisor Tang responded by confirming the City had been in contact with some of the large, online retailers that indicated they had a "mechanism" to "put kind of a blocker" on sales to San Francisco zip codes. *Id*. Far from avoiding

---

[8] IFF also argues that two canons of interpretation – the presumption against extraterritoriality and the doctrine of constitutional avoidance – counsel against application of the Ordinance to the relevant retailers. It presses the former only gently and, by ceding its dormant Commerce Clause arguments, essentially admits the latter is inapplicable because the canon only requires courts to adopt an alternative interpretation where "an otherwise acceptable construction of a statute would raise *serious* constitutional problems." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (emphasis added).

discussion of the Ordinance's effect on online sales, the 2018 Committee hearing suggests a fulsome, practical discussion of the Fur Ban's application to online sales.

Third, IFF contends the City's interpretation leads to absurd results. It forecasts broad and punitive implementation of the "physical presence" condition that will exceed even the substantial discretion afforded to agencies tasked with enforcement. By way of example, IFF worries that the City would enforce the Ordinance against both a national retailer which "employs two accounting assistants at a WeWork space in the City" and an "eclectic retailer that sells and ships fur products from a store in Napa . . . if it chooses to open up a doughnut shop in San Francisco." Opp. at 17.

In response, the City persuasively explains that its enforcement policy is sensible and reflects an intent to treat physical and online retailers similarly. IFF's approach would allow a retailer, after declining to sell a fur in its store, to direct the customer to its website. This workaround would obviously frustrate the very purpose of the Ordinance. Enforcing the Fur Ban against sales or distributions "by any means" by retailers in San Francisco aligns with the text of the statute and the above-mentioned discussion at the 2018 Committee hearing. Moreover, the City clarifies that the Ordinance applies to retailers with a physical "location" in San Francisco, rather than any physical "presence." Defendants' Reply at 10. It also reaffirms it "would not enforce the Ordinance against retailers engaged in the types of attenuated activities IFF describes." *Id.* (emphasis omitted). Because IFF has not produced any evidence that the City might enforce the Ordinance against unsuspecting accountants or pastry enthusiasts, its predictions of absurdity ring hollow.

None of IFF's arguments are persuasive. The text, structure, and legislative history of the Fur Ban support the City's practical decision to enforce it against both local retailers and national retailers who maintain a location in the City.

## V. CONCLUSION

For the reasons set forth above, the motions to dismiss are granted without leave to amend. The Clerk of the Court shall close the case.

**IT IS SO ORDERED**.

Dated: March 30, 2021

_____
RICHARD SEEBORG
Chief United States District Judge